

JACUZZI ROOM

Page 16

SET PEACOCK CANDLE HOLDER 11" STONEWARE
12 ½" WEDDING CANDLE
PAIR 5 ½ INCH CANDLES
4" CERAMIC A AHKEPH BOWL
24 X 18 PICTURE OF ARIZONA
5 X 5 ½ CLOTH TISSUE BOX
BOTTLE 9oz SPA AND BATH FRAGRANCE
CERAMIC FAIRY GIRL 16" TALL
CERAMIC BENCH FOR FAIRY GIRL 17 ½" X 5 ½"
CERAMIC PLATES PES 11 ½ X 11 ½
GLASS HEART CANDLE-CANDLE ESCENTS 4 ½ X 3 ½
GLASS CANDLE 8 ½" TALL
WALL CLOCKS 1' X 9"
EXTENSION CORD
VHS CHRISTMAS 1999
ALICE IN WONDERLAND AUDIO BOOK-UNOPEN
NORA ROBERTS DOLPHINS & DREAM AUDIO BOOK
14-VHS TAPES
CAULKING GUN
FLASH LIGHT
TROLL 7/32 X 532
ANTIQUE METAL IRON W/HOLDER COLEBROOKDALE IRON
HOMEDICS COMBINATION CANDLE AND FOUNTAIN SET (STILL IN BOX)
9 SCREWDRIVERS
3 SCRAPERS
2 BITS
SCISSORS
NOOTIGEDAGH 5/8" TILE
DREMEL TOOL PIECE

AM385

KITCHEN    Page 17

SILVER BOWL 10 ½ X 8
PAMPERED CHEF BAKING IH 11 ½ X 10 ½
9" PIE PATE PAMPERED CHEF (STILL IN BOX)
SILVER DISH -NAMBEXX 668 10" X 15"
11-GLASS GOBLETS
4 SM CERAMIC PLATES (HANDPAINTED)
SM CERAMIC BOWL
3 TEA CUPS (HANDPAINTED)
1 SM CREAMER CUP (HANDPAINTED)
2 SM CERAMIC PLATES- THE FUCHSIA FAIRY & MARIGOLD FAIRY
SCHMID JEMIMA PADDLE CLUCK CERAMIC MUSIC BOX
PRECIOUS MOMENTS SM LORDS BLESSING PLAQUE
APC BATTERY BACKUP 700V STILL IN BOX (NEVER USED)
PAMPERED CHEF- LOAF PAN (STILL IN BOX)
20-CDS (NEVER OPENED)
19-CDS (CASES CAN BE CLEANED)
7 GLASS GOBLETS
PRESSER VALUE-9327E 16" LONG
TEA CUP W/SAUCER (ROYAL ALBERT)
GLASS CUP
CERAMIC FISH PLATTER (MACKENZIE CHILDS)
GLASS PLATE (SEATI PAUER SIGNED)
LG CERMAIC PITCHER (MYTLE)
GLASS FLOWER VASE
METAL PICTURE FRAME
BOWL MESA INTERNATIONAL UTENSIL HOLDER
SILVER MARIPOSA BOWL W/MATCHING SALAD FORK AND SPOON
IN VELVET POUCH
HEDGE SHEARS
KEY
CERAMIC BOWL
31 ½" FIREPLACE DSS.
20 ½" DOUBLE LIGHT WITH STAND
CERAMIC TEA POT WITH LID
GLASS PLATE
CERAMIC SUGAR BOWL WITH LID



Page 18

KITCHEN CONTINUED:

GLASS GOBLET
2-CERAMIC PLATTER-JOHNSON BROS.
6-CUPS
CERAMIC BOWL VILLEROY & BOCH
CERAMIC BOWL WILLIAMS-SONOMA
HANDPAINTED CERAMIC PLATE BY ANCORA
3-PETER RABBIT BOWLS W/ CUP AND PLATE
LG PITCHER
4-SAUCER PLATES
3-GODINGER 1855 PLATE
CERAMIC CASSEROLE DISH
BORTNER DESIGN CHIP AND DIP CERAMIC DISH
13-GLASS GOBLETS
VILLEROY AND BOCH TEA POT W/LID
SM VASE
3-VILLEROY & BOCH SAUCER PLATES
SHOFU SAUCER PLATE
YESTERYEAR HONEY CERAMIC BOWL W/LID



AM387

Visions Corp.                                    Page 19

BIG HALL CLOSET

GYMBAG
TIME WORKS CLOCK ROUND
WOODEN JEWLERY BOX WOMANS FACE 5 X 6 ½
3 PICTURE FRAMES ON CHAINS
BLACK UMBRELLA
CHRISTMAS TAPESTRY
SET OF 5 PRINTS 20 ½ X 16 FLOWERTREE FLORENTINE FRAMES
PICTURE FRAME WITH PICTURE 14 X 11
MOTHER OF TWINS PICTURE FRAME 13 X 15 ½
RAGWOOD PICTURE IN FRAME 13 X 11
2 RELIGIOUS STATUES 12" MUSEUM COMPANY
CHRISTMAS TREE CANDLE HOLDER 8" BRASS
LARK SHOE ORGANIZER

AM388

Visions Corp.                                    Page 20

LIVING ROOM

14 X 17½ -GIRL
18 X 15- NUDE GIRL
18 X 15-LADY W/UMBRELLA
16 X 24½ -WOMAN WITH FLOWERS
16 X 24- HORES AND 2 FEMALES
315-CDS
2-BROWN LAMPSHADES ✓
11 ½ X 10 LEATHER PHOTO ALBUM
10 ½ X 12 LEATHER PHOTO ALBUM
13 ½ X 8 ½ PIERRE RENOIR SOMERSET
9 X 8 ½ PHOTO ALBUM LOVING THOUGHTS
9 X 7 ½ PHOTO ALBUM (NO NAME)
6 ½ X 4 ½ PHOTO ALBUM (NO NAME)
2-5 ½ X 7 PHOTO ALBUM METAL AND VELVET
5 X 6 ½ PHOTO ALBUM (NO NAME)
12 X 10 ½ PHOTO ALBUM HIGH SCHOOL MEMORIES
12 X 10 PHOTO ALBUM (NO NAME)
9 X 8 ½ PHOTO ALBUM C.R. GIBSON
9 X 8 PHOTO ALBUM N.Y.C
250-DVDS
19-DOUBLE SET DVDS
GATE LARGE 7 PANEL CHILDRENS GATE
WATER PURIFIER KENMORE #4234481
13" PORCELIN DOLL
13" PORCELIN CHINA DOLL
1 PAIR GLASSES
GLASS CANDLE HOLDER 12"
GLASS VASE 12"
GLASS BOWL
CERAMIC AUSTIN SCULPTURE MOTHER AND CHILD 10"
CERAMIC TRINKET BOX 8"
CERAMIC CANDLE HOLDER 13"
CERAMIC PLATE DECORATIVE 12" x 12"
GLASS ANGEL 4"
METAL WALL HANGING 23½" X 23½"
GLASS VASE HEAVY DOUBLE
4" GLASS PAPER WEIGHTS
CERAMIC BOWL
2 GLASS BOWLS
HAND PAINTED GRANADA GOLD CERAMIC DISH
GLASS VASE
2 TRINKET BOXES
VIDEO CABLE IN BOX (RECOTON)

Visions Corp.

Page 21



LIVING ROOM CONTINUED:

MASDKA GIRAFFE STATUE
CABLES FOR VCR OR TV
PAIR SPEAKERS-MIRAGE 12" X 7 ½"
CORRICK WOOD PICTURE FRAME
30- VHS TAPES
3-DVD
STAINED GLASS CANDLE HOLDER
2-REMOTES
9-WOODEN HOUSES (ST. FRANCIS COLLEGE COLLECTION)
CASE WITH PICTURES



AM390

Visions Corp.

Page 24

FAMILY_ROOM

PICTURE FRAMES- 9 X 7 WOOD, 7 X 9 METAL, 14 ½ X 11 ½
6 ½ X 8 ½, 13 X 16, 7 ½ X 5 ½, STARBUCKS PICTURE FRAME SET
MAKER "THE HOLE IN THE WALL" BOOK STAND SET 8 ½
TOM GROWTH "GOOSE ON GOLDEN EGG"
RADIOSHACK SPEAKER MOUNT BRACKETS
RADIOSHACK GROUNDING ADAPTER
RADIOSHACK SPEAKER CABLE CLIPS
RADIOSHACK ROSIN CORE SOLDER
RADIOSHACK SOLDERING GUN
RCA JACKS
SET OF TRINKET HEAD DOLLS
JEWLERY BOX WITH FLOWER DESIGN ON TOP
9 DVDS
29 VHS TAPES
PEACOCK CARVED MIRROR 18 X 16
BATHROOM PRINT 10 X 19 C. WINTELE & SON
PRINT OF GUY AND GIRL DANCING 8 X 10
BATH AND BODY WORKS CANDLES
CERAMIC CUP SARAH AND MOM
CUS PRO DRYER
PICTURE FRAME 4 X 6
GOD SAVE THE QUEEN T-SHIRT IN PLASTIC WRAP
"VILLEROY & COCK" DECORATIVE PLATES
8 MINI LAMP SHADES
CHRISTMAS PLATE
SET OF "VILLEROY & BOCK" FRUIT BASKET DISHES
METAL PLATE
MINI CHINA PLATES
PASTA SCOOP
"HARRY & DAVID" BOWL
SILVER WARE "RE & BARTON"
MAGNETIC FARM BOOK
"HARRY & DAVID" PLATTER
SET OF PLATES
CHRISTMAS TREE BOWL
"THE GIVING TREE" BY SHEL SILVERSTEIN

AM391

Visions Corp.　　　　　　　　　　　　　　　　　　　　　Page 2B

ENTRY WAY/CLOSET HALLWAY

BIKE HELMET
SM WICKER BASKET
G.B. FLORENCE CASE
METAL CANDLESTICK HOLDER
CHILDS UMBRELLA
BOX OF RED CANDLES
VACUUM ATTACHMENT
STANLEY SCREWDRIVERS
LIGHT GREEN CANDLE
4 PACK OF BOX TAPE W/MASKING TAPE ROLLS
A TRIBUTE TO MOTHER BOX AND BOOK WITH BOOK MARK
DISH WITH LID
BRASS DOORKNOCKER
FORGET ME NOT CANDLES
FLOWERED UMBRELLA
2-OFF CANDLE
BOX OF VOTIVE CANDLES
TOTE BOX: SCHLAGE DOORHANDLE, MAGNETIC HOUSE, MAGNET SET,
3M SPRAY ADHESIVE, DOOR LATCH
PHILLIPS LIGHTBULBS
ALAMBRE HOOKS & EYES
SMALL SQUEEGE
SHIMANO BIKE PETAL BOX
LEVEL
CABINET SLIDE LOCK
BOLT
DOOR LOCK
RAZOR BLADE



Visions Corp.

Page 22

### SPARE BEDROOM 1ST FLOOR

CERAMIC FLOWER POT- 5" TALL
LS CERAMIC BOWL- 12"X6"
5-CERAMIC CHERUB 6"
PAIR CANDLE STICK HOLDER METAL-6"
4½ " CERAMIC GIRAFFE S.T.B 1-23-03
4-10" CANDLE STICKS
EVEREADY FLASHLIGHT 7" LONG
9½ " PEACE ON EARTH 3D PIECE IN PLASTIC FRAME W/GLASS
TIN BOX 6½ X5 W/SEWING THREAD SPOOLS INSIDE
6" CANDLE STICK HOLDER METAL
BLUE EYE GLASS CASE (PEARL VISION)
METAL BOWL W/BUNNY DESIGN 7 ½ x 7 ½
WALL CLOCK METAL (HELIO) 11 ½ x 11 ½
WOODEN TRAY 17½ X 13
GLASS CANDLE HOLDER 3½"
ADVANCE ALARM CLOCK
BODUM DRINK MIXER CUP 6"
DESK LIGHT MODEL 4400 UV FILTER-001
TABLE LAMP WITH SHADE 14"
PAIR GLASSES
PAIR SUNGLASSES
3 FILM PACKS STILL IN PLASTIC
METAL FRAME W/STAND 14X18 IN PLASTIC WRAP
METAL FRAME IN PLASTIC 17X11½
4 BOLTS IN PLASTIC
3-600 ML PYREX NO. 100 5" GLASS MEASURING CUPS
SMALL MFG CORP MOTOR MODEL MOA-V113-AE VOLTS 110/115
6- PYREX KJELDAHL FLASKS 100ML NO. 5420
CORNING PC-353 STIRRER 7"X8"
6- PYREX CORNING FLASK 50ML
STEREO ANTENNA WIRE
RCA JACK WIRES
COMPUTER WIRES
VACU-BULB DESOLDERING TOOL CAT NO. 64-2086
RADIO SHACK AUTO RINGING DIGITAL MULTIMETER POCKET SIZE
2 1000G-295G ACT WEIGHTS
HARD DRIVE CABLE INTERNAL FLAT RIBBON 2"
MAGNETIC SCALE MAGNIFER NO. 552
ACCURA MAGNIFIER LENS- 3 LENS
TITANIUM PRO 35 HEAD SET



AM393

PITTSBURGH-(
FEB 2 6 2003
Ans. _____

**Property Claims Services**
117 Arbor Crest Lane
Lillington, North Carolina 27546
Telephone: (910) 797-3327
Fax: (800) 933-1175
Schumannjcs@aol.com

# Additional Living Expense
(Lease Agreement)

February 21st. 2003

Amica Mutual Insurance Company
Pittsburg Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

**Attention: Mr. David J. Bennett, Claims Manger**

**Refernece:**
Customer: John & Amy Borden
Date of Loss: 02/16/03
Cause of Loss: Fire
Claim #: F300301218

Mr. Bennett:
Attached, please find a copy of a signed lease agreement between Amy Borden and Michelle Firman (agent employed by Coldwell Banker, acting on the behalf of Too Much Stuff, LLC), owner of the house located at 5011 Wolf Road, Erie, Pennsylvania.
Initially, the owner wanted $1,600.00 per month for this unfurnished house and would not accept less than a one year lease. Because the interior of the dwelling required some painting and replacement of carpeting to make it suitable for occupancy by our customer and the three small children, an agreement was reached to pay $1,800.00 per month for six months up front (the minimum time necessary for completion of repairs to the insured dwelling), and following would be a month-to-month agreement that $2,000.00 per month would be paid should the customer require use of the rental house for more that the initial six months.

Mrs. Borden's concerns pertaining to the interior of the dwelling and the necessity to paint the interior relates to the age of the rental house and related concerns that perhaps some lead paint which was pealing required attention in the way of painting. The owner agreed to incur the cost to address these concerns with the simultaneous understanding that the cost per month would increase from $1,600.00 to $1,800.00. This work is being completed immediately so as to allow the customers to occupy the rental house as soon as possible.

Several circumstances contribute to the necessity to focus on providing adequate housing for the customers as soon as possible.
First, in addition to Mr. and Mrs. Borden being devastated by the recent fire and their lives being fragmented, the three small children are currently with Mrs. Borden's family in Pittsburg.

Mrs. Borden has had a very difficult time dealing with the absence of her children as well as addressing the "special needs educational arrangements" she had undertaken as one of her children requires this type of attention.
Secondly, Dr. Borden moved to Erie with his family six months ago to undertake and manage a new program related to his expertise. Dr. Borden is a Neurologist at the local hospital and is feeling stress due to his enormous responsibilities and this new position. Understandably, he feels added pressure and confusion given his focus on family responsibilities.

For these reasons as well as the obvious, I wanted to focus on and be available to the customers to acquire housing that would be suitable. Having accomplished this, some similar state of organization can be regained once the family is reunited at the 5011 Wolf Road location and consequently, something resembling their prior routine and responsibilities can be more easily managed.

**Initial ALE Concerns:**
Currently, and since the date of loss, the customer has been located at the Clarion Hotel here in Erie. We will address those expenses once they occupy the Wolf Road rental house and a subsequent report will follow outlining those "additional expenses" incurred with supporting documentation.

**ALE Request for Payment; Lease Agreement:**
It is recommended, based on the narrative above, that a check totaling $10,800.00 be issued and made payable to: Coldwell Banker and mailed to 2100 West 8th. Street, Erie, Pennsylvania 16505. This represents lease payment for six months beginning March 1st. 2003 and ending August 31st. 2003 as outlined per the attached lease agreement.

I would recommend a ▮▮▮▮▮▮ reserve should repairs require time beyond the initial six months. Following will be a summary of incurred expenses associated with additional living requirements as I expect to gather and summarize this information within the following 5 days.

Thank you for allowing Property Claims Services to be of assistance.

Respectfully Submitted:


John C. Schumann

# LEASE AGREEMENT

This Lease is a legally binding contract. Read it carefully. You will give up certain of your rights as a Tenant. Do not sign it until each tenant understands all of its terms. If you do not meet your Lease responsibilities, you may (1) lose your Security Deposit, (2) be forced to move out of the property, and (3) be sued for money damages.

The Landlord has made every effort to make this lease easy to read and understand. If you do not understand any part of this Lease, please ask Landlord for a written explanation before signing the Lease.

The preprinted portions of this lease have been pre-approved as being in "plain language" by the Pennsylvania Attorney General. The typed or written-in portions and attachments (unless otherwise indicated) have not been reviewed by the Attorney General. In the opinion of the Office of Attorney General, a pre-approved consumer contract meets the Test of Readability under 73 P.S. Section 2205 of the Plain Language Consumer contract Act. Pre-approval of a consumer contract by the Office of Attorney General only means that simple, understandable and easily readable language is used. It is not an approval of the contents or legality of the contract.

## LEASE INFORMATION TABLE

| Landlord Name and Address: | TOO MUCH STUFF, LLC / RIDGEFIELD DEVELOPMENT CORP. (AGENT) |
|---|---|

| Tenant(s) Name(s): | JONATHAN A BORDEN AND AMY BORDEN |
|---|---|

| Rental Unit or Apartment Address / City / State | Maximum Persons |
|---|---|
| 5011 WOLF ROAD, ERIE PA 16505 | 5 |

Lease Term: 6 MONTHS, * WITH THE RIGHT TO EXTEND ON A MONTH-TO-MONTH BASIS
Lease Starting Date  MARCH 1, 2003             Lease Ending Date  AUGUST 31, 2003

| Monthly Rent | Prompt Payment Discount  NONE | Due Date for Rent Each Month |
|---|---|---|
| $1,800.00 | (See paragraph 1(b) below) | 1ST |

Late Charges  $50.00

| Bad Check Charge | Security Deposit | Pet Violation Charge per Day Per Pet |
|---|---|---|
| $50.00 | $1,800.00 | NO PETS ALLOWED |

Landlord Pays for:  ☐ GAS  ☐ ELECTRIC  ☐ WATER  ☐ SEWER  ☐ TRASH  ☒ LAWN CARE
☒ SNOW & ICE REMOVAL  ☐ CONDOMINIUM FEE  ☐                          ☐

Tenant Pays for:  ☒ GAS  ☒ ELECTRIC  ☒ WATER  ☒ SEWER  ☒ TRASH  ☐ LAWN CARE
☐ SNOW & ICE REMOVAL  ☐ CONDOMINIUM FEE  ☒ ADT SECURITY SYSTEM        ☐

1. RENT

(a) Tenant agrees to pay the Monthly Rent in advance on or before the Due Date each month. Landlord does not have to ask Tenant to pay the rent. Tenant agrees to pay rent by first class mail, or in person, to Landlord at Landlord's Address above, or at any future address specified by Landlord.

(b) If Landlord receives the Monthly Rent before the Due Date, and all prior rent and all other charges under this Lease are paid, Tenant may deduct the Prompt Payment Discount in the Lease Information Table above.

(c) If Tenant mails the rent to Landlord, the date of payment is the date the Landlord receives the rent, not the postmark date. If payment is made by check and the check is returned for insufficient funds, or for any other reason, Tenant will pay to Landlord the Bad Check Charge in the Lease Information Table as additional rent.

AM447

2. **SECURITY DEPOSIT**

(a) Tenant agrees to pay a Security Deposit in the amount indicated in the **Lease Information Table.**

(b) Tenant agrees to pay the Security Deposit to Landlord before the **Lease Starting Date** and before Tenant moves into the **Rental Unit.**

(c) Landlord can take money from the Security Deposit to pay for any damages caused by Tenant, Tenant's family, and Tenant's guests. Landlord may use the Security Deposit to pay for any unpaid rent or any other charges owed by Tenant to Landlord. Landlord will send Tenant a written list of damages and amounts of money taken from the Security Deposit.

(d) Landlord agrees to send any Security Deposit left over to Tenant within thirty (30) days after Tenant leaves and returns the keys to the Rental Unit to the Landlord.

(e) Tenant agrees to give Landlord a written forwarding address when Tenant leaves.

(f) Tenant may not use the Security Deposit as payment for the last month's rent.

3. **LANDLORD'S AND TENANT'S DUTIES AT THE START OF THE LEASE**

Landlord agrees to give Tenant the Rental Unit on the **Lease Starting Date.** If Landlord cannot give Tenant the Rental Unit because the previous Tenant is still in the Rental Unit or the Rental Unit is damaged, or for any other reason not the fault of the Landlord, then Tenant cannot sue the Landlord. If Tenant does not take the Rental Unit on the **Lease Starting Date,** Landlord can (a) rent the Rental Unit to another Tenant and keep any rent or deposits previously paid to the Landlord or (b) sue the Tenant for money damages.

Tenant agrees that Tenant has personally inspected the Rental Unit and finds it in good repair and in proper working order. Tenant accepts the Rental Unit "AS IS" and fit for residence.

Within five (5) days of taking possession of the Rental Unit, Tenant must provide to Landlord a complete written list of any defects or damages to the Rental Unit which existed before Tenant took possession. If no such list is given to the Landlord, this is evidence that there were no defects or damages. Tenant will pay for all defects and damages not appearing on this list when Tenant moves out.

4. **DAMAGE TO RENTAL UNIT**

Tenant agrees to tell Landlord immediately in writing if the Rental Unit is damaged by fire or any other mishap. Tenant agrees to tell Landlord immediately in writing if there is any condition in the Rental Unit that could damage the Rental Unit or harm Tenant or others. If Tenant cannot live in the whole Rental Unit because it is damaged, Tenant may: (1) live in the undamaged part of the Rental Unit and pay less rent until the Rental Unit is repaired; or (2) end the Lease and leave the Rental Unit.

Landlord has the right to end the Lease and require the Tenant to move out if, in the opinion of the Landlord, necessary to repair damage resulting from a fire or other mishap.

Tenant agrees that if the Rental Unit is damaged and Tenant ends the Lease, Landlord has no further responsibility to Tenant.

5. **INSURANCE**

Landlord agrees to have insurance on the building where the Rental Unit is located. Tenant's personal property is not insured by Landlord's insurance. Tenant is responsible for insuring Tenant's own property located in the Rental Unit.

6. **TRANSFER OF LEASE BY TENANT**

Tenant agrees not to transfer this Lease or the Rental Unit to anyone else without the written permission of the Landlord.

If the written permission of the Landlord is not obtained, any other person then living in the Rental Unit may be removed by the police, Sheriff or constable.

Tenant agrees that if Tenant transfers this Lease or the Rental Unit to anyone else without the written permission of the Landlord, Tenant is breaking this Lease.

7. **RESPONSIBILITY FOR DAMAGE TO PROPERTY OR INJURY TO PEOPLE**

Landlord is responsible for all damages to property or injuries to people caused by Landlord's intentional or negligent acts at the Rental Unit.

Tenant is responsible for all damages to Landlord's property and injuries to people caused by the accident, intentional or negligent acts of the Tenant, Tenant's family, guests, or others.

Tenant agrees that Landlord is not responsible to Tenant, Tenant's family or guests for damages or injuries caused by water, snow or ice that comes into the Rental Unit, or any other reason which is not caused by Landlord.

8. PERSONAL SECURITY                                                                                                               Page 3

Tenant agrees to assume responsibility for the personal security and safety of all persons in the Rental Unit. Any safety or security measures are Tenant's responsibilities.

9. USE OF RENTAL UNIT BY TENANT

Tenant agrees to use the Rental Unit only as a personal residence.

Tenant agrees to obey all federal, state and local laws and regulations when using the Rental Unit.

Tenant agrees not to allow more than the **Maximum Persons** in the **Lease Information Table** to live in the Rental Unit.

No flammable, hazardous or toxic chemicals or substances are allowed in or around the Rental Unit.

No noise or activities are allowed which disturb other Tenants or neighbors.

No pets are allowed. If pets are in or around the **Rental Unit, (1) Tenant** is breaking this **Lease**, (2) **Tenant** will pay the Pet Violation Charge in the **Lease Information Table**, and (3) **Landlord** may remove the pet to an animal shelter or other location at Tenant's expense.

10.   RULES AND REGULATIONS

Tenant   agrees to obey all rules and regulations for the Rental Unit. If Tenant breaks any rules or regulations for the Rental Unit, Tenant breaks this lease

Landlord has the right to impose reasonable rules and regulations from time to time for the proper management of the property by notifying Tenant in writing.

11. HOW LANDLORD'S MORTGAGE AFFECTS THIS LEASE

A mortgage occurs when a person borrows money from a bank or other lender, and pledges property as security for the loan. That means the property is mortgaged. If the borrower does not pay back the loan, the lender can take the property. Usually, the lender will then try to sell the property to get the loan money back. Sometimes it is difficult for the lender to sell a property that is occupied by a Tenant, so lenders usually require Landlords to give them the right to end any leases if they take back a mortgaged property because of the Landlord's nonpayment of the loan.

Tenant agrees that Landlord has the right to mortgage the Rental Unit. The Rental Unit may already be mortgaged now, or in the future. Tenant agrees that if the Rental Unit is taken by Landlord's lender because of nonpayment of a mortgage loan, then Landlord's lender will have the right to end this Lease, and require Tenant to move out.

Tenant gives Landlord the right to sign any document, for and in the name of the Tenant, which is required by Landlord's lender to give the lender the right to end this Lease.

12. CARE OF RENTAL UNIT

Tenant is responsible for, and will take good care of, the Rental Unit and all of the property in and around it. Tenant agrees to shampoo all carpets as needed and keep the entire Rental Unit and all appliances clean and trash free during this Lease. Tenant agrees to pay for any damage caused by Tenant, Tenant's family, or guests as additional rent. Tenant agrees to turn over the Rental Unit and all of Landlord's personal property when the Lease ends in as good condition as when Tenant first took the Rental Unit, except for normal wear. Tenant agrees to shampoo all carpets, clean all appliances, clean the Rental Unit and remove all trash at the end of this Lease.

NAILS. No nails, screws or tacks are allowed in the walls or woodwork without Landlord's permission. Picture or other items are allowed on the walls only by a method approved by Landlord.

CARS. Tenant will not permit any cars or vehicles on the lawn or on areas around the Rental Unit where they are not intended or permitted. No junk, disables cares or cars or vehicles with expired registration or inspection stickers are permitted in, on or around the Rental Unit. Tenant will permit Landlord to remove any such cars or vehicles at Tenant's expense. Tenant will not sue Landlord for any liability or for any damages caused by this removal.

HEAT. If Tenant is responsible for or can control the heat, Tenant will keep the Rental Unit heated at all times during the heating season. If Tenant fails to do so, Tenant will pay for any damages.

SNOW. If Tenant is responsible to provide Snow and Ice Removal, as indicated in the Lease Information Table, then Tenant will at all times keep the sidewalks and driveways next to the Rental Unit clear from ice and snow. If Tenant fails to do so, Tenant will pay for any damages and injuries.

LAWN CARE. If Tenant is responsible to provide Lawn Care, as indicated in the Lease Information Table, then Tenant must keep the lawn mowed and edged every week during the growing season. Tenant will keep all shrubs adjoining the Rental Unit neatly trimmed.

### 13. SMOKE DETECTORS & FIRE EXTINGUISHERS

Tenant must inspect and test the operation of all smoke detectors and fire extinguishers in the **Rental Unit** during this Lease and replace and install batteries to keep the smoke detectors working at all times.

### 14. LANDLORD'S RIGHT TO ENTER RENTAL UNIT

**Landlord** and persons allowed by **Landlord** have the right to enter the **Rental Unit** at reasonable times. **Landlord** will try to tell **Tenant** at least twenty-four (24) hours before entering. **Tenant** may not unreasonably stop **Landlord** from entering. No advance notice is required if emergency repairs are required.

**Landlord** and persons allowed by **Landlord** have the right to (1) inspect, (2) make repairs, (3) do maintenance, (4) label for rent or sale, and (5) show the **Rental Unit** during the **Lease Term**.

### 15. UTILITIES AND OTHER SERVICES

**Tenant** agrees to pay the costs for utilities and other services, which are **Tenant's** responsibility in the **Lease Information Table**. Those items, which are indicated as **Landlord's** responsibility will be provided by the **Landlord**.

**Tenant** agrees to pay for all utilities and services not listed in the **Lease Information Table**.

**Landlord** has the right to temporarily turn off any utility or other services to the **Rental Unit** in order to make repairs or to do maintenance.

If the Water and/or Sewer charges are the responsibility of **Tenant**, **Landlord** will pay these charges and bill **Tenant** for the cost. **Tenant** will reimburse **Landlord** for these charges as additional rent within ten (10) days after receiving the bill.

### 16. EMINENT DOMAIN

Eminent domain is the legal name for the right of a government to take private property for public use.

If the government takes all or any part of the Rental Unit, or the building, which contains the Rental Unit, **Landlord** is allowed to end this **Lease**. All money paid by the government belongs to the **Landlord**.

### 17. WHEN TENANT STAYS IN THE RENTAL UNIT AFTER THE END OF THE LEASE

If **Tenant** does not leave and remove their belongings at the **Lease Ending Date** and if **Landlord** accepts any rent payment, then this **Lease** will be renewed for another full **Lease Term** as shown in the **Lease Information Table**.

**Landlord** may offer to renew or extend this **Lease** for an increased **Monthly Rent** or on different terms and conditions. If **Landlord** does so, and accepts rent after the **Lease Ending Date**, the **Lease** will be renewed at the increased **Monthly Rent** and different terms and conditions. Unless **Landlord** offered a different **Lease Term**, the **Lease** continues for the same **Lease Term** in the **Lease Information Table**.

If **Tenant** stays in the **Rental Unit** after the **Lease Ending Date** and does not sign a new **Lease Agreement**, **Landlord** can end the **Lease** by giving **Tenant** ten (10) days written notice. Death of either the **Landlord** or the **Tenant** does not affect or end this **Lease**.

### 19. LANDLORD'S RIGHT TO END LEASE

**Landlord** may end this **Lease** at any time by giving thirty (30) days written notice to the **Tenant**.

### 20. TENANT'S RIGHT TO END LEASE

If **Tenant** did not violate (break) this **Lease**, **Tenant** has the right to end this **Lease** at the end of any month by giving **Landlord** thirty (30) days written notice. When the notice is given, **Tenant** must pay **Landlord** two (2) additional months rent to end the **Lease**. **Tenant** will comply with all other parts of this **Lease**, including payment of **Monthly Rent**, until the **Lease** ends.

### 21. REPAIRS

**Landlord** is required to perform only the following repairs: (1) roof, (2) foundation, (3) structure, or (4) as otherwise required by law. **Tenant** will immediately tell **Landlord** in writing if any such repairs are needed.

The **Landlord** does not have to make any repairs to the plumbing or electrical fixtures which break or need repairs caused by **Tenant**, **Tenant's** family or guests.
**Tenant** must perform all other repairs.

**Tenant** cannot reduce their **Monthly Rent** because of any inconvenience or discomfort caused by repairs made by **Landlord**, or for **Landlord's** failure to provide any service or utility not through the fault of the **Landlord**.

AM450

## 22. CHANGES MADE BY TENANT

No changes to the **Rental Unit** by **Tenant** are allowed without **Landlord's** written consent. When **Tenant** moves out, **Landlord** may keep, remove or repair any such changes. The cost of removal or repairs and the cost of restoring the **Rental Unit** is the responsibility of the **Tenant**.
**Tenant** will not change the locks in the **Rental Unit** or install any additional locking devices without **Landlord's** written permission. If any locks are changed or installed by **Tenant**, **Tenant** must give **Landlord** a duplicate set of keys.

## 23. VIOLATIONS OF THIS LEASE

If there are two or more **Tenants** to this **Lease**, this is a joint and several **Lease**. That means that all the **Tenants** as a group and each of the **Tenants** as an individual are responsible to **Landlord** for all of the provisions of this **Lease**. For example, if the rent is not paid in full, **Landlord** can sue all of the **Tenants** jointly) for any unpaid rent, or, **Landlord** can sue any one **Tenant** separately (severally), even the **Tenant** who already paid partial rent, for all of the remaining unpaid rent.

**Tenant** violates (breaks) this **Lease** if **Tenant**, **Tenant's** family or guests:

(1)     Lied or made any untruthful statements in their rental application, whether written or verbal; (2) Fails to pay **Monthly Rent** or other charges to **Landlord** on time; (3) Leaves the **Rental Unit** without the **Landlord's** permission before the end of the **Lease**; (4) Does not: (a) leave the **Rental Unit**; (b) remove all of their belongings; and (c) return the keys to the **Rental Unit** to the **Landlord** at the end of the **Lease**; (5) Fails to obey all rules and regulations for the **Rental Unit** as provided from time to time by **Landlord** to **Tenant**; (6) Is convicted for or possesses any drugs, whether in the **Rental Unit** or not, or applies for any Probation Without Verdict" or "Accelerated Rehabilitation Disposition" Program, or (7) Does not obey all the requirements of this **Lease Agreement.**

## 24. NOTICE OF VIOLATION

If **Tenant** violates (breaks) the **Lease** by failing to pay rent or other charges to **Landlord** in full on time, **Landlord** will serve on **Tenant** a five (5) day NOTICE TO QUIT or EVICTION NOTICE. The NOTICE shall be given to the **Tenant**, posted on the Rental Unit, or otherwise served as allowed by law. This NOTICE means that the **Landlord** may file a Complaint in Court for the rent or to remove **Tenant** from the **Rental Unit**, or both. **Landlord** cannot file the Complaint if **Tenant** pays the rent or other charges in full within the five (5) days.

If **Tenant**, **Tenant's** family or guests violate (break) the **Lease** in any other way, **Tenant** gives up the right to receive any NOTICE TO QUIT or EVICTION NOTICE. This means that the **Landlord** may file a Complaint in Court to remove **Tenant**, **Tenant's** family and guests without first telling the **Tenant**.

## 25. REMEDIES AVAILABLE TO LANDLORD IF TENANT VIOLATES (BREAKS) LEASE

If **Tenant**, **Tenant's** family or guests violate (break) this **Lease**, the **Landlord** may sue:

(1)     To collect past due rent, late charges and any other money owed; (2) To remove the **Tenant** and all others from the **Rental Unit**; (3) To collect for all damages to the **Rental Unit**, including withholding **Tenant's** wages for damages; (4) To collect for unpaid rent until the **Lease Ending Date** or until another person rents the **Rental Unit**; (5) To collect all costs and expenses caused because **Tenant** violated (broke) this **Lease**, including:

(a)     Utilities otherwise payable by **Tenant**; (b) Advertising;
(c)     Attorney's fees; (d) Court costs; (e) A reasonable fee to
**Landlord** (i) to show the **Rental Unit** to new **Tenants**; (ii) to review and approve any new **Tenant**, and (iii) to prepare a new lease.

**Landlord** also has the right to seek any other remedies allowed by law.

## 26. PERSONAL BELONGINGS OF TENANT

If it reasonably appears during the **Lease Term** that **Tenant** permanently left the **Rental Unit**, **Landlord** can throw out any of **Tenant's** belongings left behind. In that case, **Landlord** is not responsible for the value of such belongings.

If **Tenant** is in jail, or in a mental health unit, and fails to make arrangements with **Landlord** to remove their belongings, **Landlord** can throw out their belongings left in the **Rental Unit**. In that case, **Landlord** is not responsible for the value of such belongings.

Any personal property or belongings left in the **Rental Unit** at the **Lease Ending Date** can be thrown out by **Landlord**. In that case, **Landlord** is not responsible for the value of such belongings.

**Tenant** agrees that all personal goods placed in or on the **Rental Unit** belong to the **Tenant**. **Tenant** will protect **Landlord** against any claims made by other people regarding any such personal goods.

27. **LEAD-BASED PAINT DISCLOSURE:**

See Attachment A.

28. **TENANT GIVES UP RIGHTS BY SIGNING THIS LEASE:** Tenant gives up the following legal rights:

(a) In Section 24, the **Tenant** agrees that the **Landlord** must give the **Tenant** either five (5) days notice or no notice to leave the **Rental Unit** for breaking the **Lease**. The **Tenant** gives up the right to receive a longer notice to leave the property for breaking the **Lease**.

(b) In Section 11, the **Tenant** agrees that if the **Rental Unit** property is sold by the bank because **Landlord** did not pay the mortgage, the buyer can end this **Lease**. The **Tenant** gives up the right to have the **Lease** continue if that happens.

29. **ENTIRE AGREEMENT**

Everything **Landlord** and **Tenant** have agreed on is in this **Lease Agreement** and its **Attachment(s)**. The **Landlord** and **Tenant** can change any part of this **Lease** only if they both sign a written agreement to do so.

**THE ATTACHMENTS TO THIS LEASE ARE:**
Attachment A - Lead-based Paint Disclosure

**THE LANDLORD AND THE TENANT ALSO AGREE AS FOLLOWS:**

The Tenant is responsible for the monthly service and alarm system from ADT.

Regarding lawn maintenance, the Landlord will provide a weekly mowing service from Chaffee Landscaping. ~~The Tenant will be responsible for the maintenance around the house.~~ *[initials]*

* The Landlord will extend this Lease Agreement on a month-to-month basis at a rental rate of $2,000.00 per month. Tenant will provide the Landlord with a 30-day notice of their intention to extend the lease on a month-to-month basis.

The Landlord agrees to:
1. install new carpet in the Living Room, Dining Room, 2 Bedrooms & Hallway
2. sand and paint the ceiling and/or walls in 2 bedrooms
3. paint the off-white walls in the Dining Room
4. repair any wallpaper that is peeling
5. clean all curtains
6. clean the carpet in the Master Bedroom, and Family Room
7. replace any light bulbs, repair any locks on windows
8. exterminate ants in the kitchen area

**By signing this Lease, each Tenant has read the entire Agreement and understands all of it. Each Tenant received a copy of this Lease.**

LANDLORD'S SIGNATURE: *Michelle M. Furman, Agent for Too Much Stuff, LLC Agent Ridgefield Dev. Corp.*  DATE: *Feb 26 2003*

TENANT'S SIGNATURE: *[signature]*  DATE: *2/21/2003*

TENANT'S SIGNATURE:  DATE:

AM452

| TENANT'S SIGNATURE: | DATE: |
|---|---|

| TENANT'S SIGNATURE | DATE: |
|---|---|

**DISCLAIMER**

Copyright 1999 by Apartment Association of Northwestern Pennsylvania, Inc.
The use of this lease is exclusively reserved for those having written authorization.
The form and content of this lease may not be reproduced in whole or in part without written permission. All rights reserved.
No liability is assumed for its use.

AM453

# Photo Sheet

**Insured**  Borden, Jonathan

PITTSBURGH-CLAIMS
FEB 2 6 2003
Coverage
Ans.

Claim # F300301218
Policy # 6308271183
Ins Claim # F300301218



**Description**

Lease House arranged through Coldwell Banker, Erie.
5011 Wolf Road, Erie, Pennsylvania
This house is located 1/4 mile down the street from the loss location and is large enough to accommodate the customer and their three small children.

Photo Sheet (MS/B 0470)   - 1 -   Feb 22, 2003

AM454