Plaintiffs' Exhibit 3
(Part 1 of 3)

# Claim Activity

**Claim # F300301218 - Borden, Jonathan (Insured)**

From - Earliest
To - Latest
Type - All
Contact - All
Status - Billable or Not Billable, Complete or Not Complete

---

### February 17, 2003 (Monday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 1 Hours | | | Entry<br>Rec. a call from David Bennett at the Amica office in Pittsburg in reference to a large fire loss assignment. Mr. Bennett provided the coverage and loss information to me during that conversation and I contacted the customer immediately. As I was completing an assignment in New Jersey, I requested that I arrive on Wednesday morning and meet with the customer at the loss location. This was acceptable to the customer as the dwelling had been boarded up by Visions Corporation. | None |

---

### February 18, 2003 (Tuesday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 0.5 Hours | | | Entry<br>Called Dr. Borden and advised him of my location somewhere in Pennsylvania at 8:00 PM. Assured him that I would arrive the next morning in Erie and explained the claims process and my function while in Erie. Answered questions pertaining to the ALE, Contents and Cov. A. issues. Appointment for Wednesday at approximately 12:00 PM. | None |

---

### February 19, 2003 (Wednesday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 6.5 Hours | | | Entry<br>Met with Mrs. Borden at the loss location and discussed my function and how I could offer assistance. Location of a house for lease is a priority as I suggested we would address that concern first as she was anxious to have her three very young children return to Erie instead of leaving them with realitives in Pittsburg. Answered questions and arranged to meet with her husband later this evening as Dr. Borden had prior committments to which he could not avoid. Called Brian Seifert of Visions Corporation and requested a copy of all emergency repair invoices. Mr. Seifert agreed to stop by the loss location and present these to me. We discussed the basic condition of the dwelling and contents and agreed to work together, with the customer's approval, to complete an estimate to repair the dwelling and manage the contents pack-out, cleaning, dry cleaning, etc. Completed an initial walk-through with the contractor. Requested temporary electrical for tomorrow morning at 8:00 AM. Called Mr. Bennett and suggested reserves for Cov. A. and C. | None |

PENGAD 800-631-6989
PLAINTIFF'S EXHIBIT
3-1

AM476

# Claim Activity

**Claim # F300301218 - Borden, Jonathan (Insured)**

From -   Earliest
To -     Latest
Type -   All
Contact - All
Status -  Billable or Not Billable, Complete or Not Complete

$250,000 and $100,000 respectively.
Set up file into MSB and Xactimate. Began initial
diagrams of dwelling perimeter and elevations.
Completed short Emergency Repairs report and
mailed to Pittsburg office for direct payment.
Met with Dr. Borden and his wife and discussed
the plan to repair the house, the contents
inventory and ALE issues. Dr. Borden and his wife
have serious concerns pertaining to hiring the
correct contractor to complete the repairs to the
house. Plans to pursue the Ale issue tomorrow as
a house has been located to lease that will
accommodate both Mr. and Mrs. Borden and their
three small children which is located in the
neighborhood close to the loss location property.

## February 20, 2003 (Thursday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 14.5 Hours | | | Entry<br>Began with scope of damage to the interior upstair area of the dwelling due to heavy smoke damage. Requested Itel packet from Pittsburg office. Met with cause and origin investigator to discuss possible cause of loss.<br>Not yet determined. Met with drycleaning company at the loss location and packed out clothing to be drycleaned.<br>Discussed ALE with real estate company. Talked with Michelle Furman. Waiting for agreement from owner to lease for 6 months.<br>Downloaded, lableled and printed photos from today's scope of damage. | None |

## February 21, 2003 (Friday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 11.5 Hours | | | Entry<br>Continued with scope of damage to the dwelling. Met with Brian of Visions to assist with contents(clean out basement and shore up floor system above basement scheduled for Saturday morning.<br>Downloaded, labeled and printed photos from today's scope.<br>Worked on estimate to repair the dwelling.<br>Met with Mrs. Borden and stopped into real estate office and picked up copy of lease agreement negotiated with Michelle.<br>Stopped by VIP drycleaners and introduced customer to manager.<br>Completed partial ALE report and attached lease and mailed to Pittsburg. | None |

## February 22, 2003 (Saturday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|

AM.477

# Claim Activity

Claim # F300301218 - Borden, Jonathan (Insured)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 9.5 Hours | | | Entry<br>Continued with scope of damage to the dwelling.<br>Met with Visions to have support system<br>constructed in the basement to prevent the main<br>level den and kitchen floors from collapsing into<br>the basement.<br>Downloaded, labeled and printed photos from<br>today's scope of damage.<br>Worked on estimate. | None |

## February 23, 2003 (Sunday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 12 Hours | | | Entry<br>Continued with scope of damage at the loss<br>location. As weather conditions were difficult, I<br>took scope notes at the loss site and made<br>decisions concerning the probability of cleaning vs<br>replacment of specific items such as tile floors,<br>cabinetry, etc. due to the extreme nature of the<br>smoke and soot damage found.<br>Entered line items and dimensioning into Xacitmate<br>following scope of damage today.<br>Downloaded, labeled and printed photos from<br>scope of inspection. | None |

## February 24, 2003 (Monday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 9 Hours | | | Entry<br>Continued with scope of damage to dwelling.<br>Met with Contractor with Visions, a fire restoration<br>contractor.<br>Began contents pack-out, boxing up small items to<br>be cleaned. Called heating contractor to give me a<br>quote to replace the exchanger for the thermo<br>heating system.<br>Spent time talking to the electrician concerning the<br>necessary elements to accommodate electrical<br>repair and replacment in the basement in which the<br>main disconnect and service panel are located.<br>Downloaded, labeled and printed photos from<br>today's scope. | None |

## February 25, 2003 (Tuesday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 11.5 Hours | | | Entry<br>Completed scope of damage to the dwelling today.<br>Met with Mr. Rindfuss, a geo-thermal heating<br>system contractor at the loss location and<br>discussed the specifics towards replacement of<br>both the 5 ton and 3.5 ton unit destroyed by the<br>fire. These units located in the basement.<br>Downloaded Itel carpet sample results and<br>submitted a report to David Bennett concerning<br>the Itel invoices and temporary electrical and shore | None |

AM478

# Claim Activity

Claim # F300301218 - Borden, Jonathan (Insured)

up of fallen flooring systems at the loss location by Visions Corporation.

Met briefly with Dr. Borden as he was back in Erie to conduct an interview with a prospective doctor. Discussed may aspects of the claim and I assured him that the contents pack-out was being organized and monitored by me.

Worked with Brian and Debbie Seifert of Visions as well as three guys that assisted with the moving of boxed contents items to be cleaned as well as furniture that can be cleaned.

Downloaded, labeled and printed dwelling and contents photos taken today during remaining scope of damage to dwelling and contents pack out items.

Worked on estimate making necessary adjustments and applying Itel costs for carpet throughout the dwelling.

## February 26, 2003 (Wednesday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 7.5 Hours | | | Entry | None |

Completed contents inventory for those items considered a total loss. Downloaded, labeled and printed photos from contents inventory.

Met with Mrs. Borden, Dr. John Borden's mother to arrange occuppancy of dwelling rented. Received quote from Geo-Thermal contractor and entered into xacitmate to complete estimate. Reviewed scope and estimate with Brian Seifort of Visions, Inc. a fire restoration contractor. Reached an agreed cost and scope of repairs to the dwelling. Printed three copies of estimate, one for file, one for contractor and one for customer

## February 27, 2003 (Thursday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 8 Hours | | | Entry | None |

Worked with Mrs. Borden towards rental of contents to furnish rental house for six months. Talked with her son, Richard Borden concerning estimate and met with some resistence conerning cleaning vs removal and replacement of drywall throught interior of dwelling. Talked with Dr. John Borden about his concerns pertaiining to cleaning furniture that is not totaled. Mr. Borden mentioned the possibility of hiring a public adjuster. Discussed with David Bennett.
Completed Coverage A. report and assembled file.

AM479

# Claim Activity

**Claim # F300301218 - Borden, Jonathan (Insured)**

From -  Earliest
To -  Latest
Type -  All
Contact -  All
Status -  Billable or Not Billable, Complete or Not Complete

MAY 1 4 2003

Ans. _____

### February 28, 2003 (Friday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 1.5 Hours | | | Entry | None |
| | | | | Met with David Bennett in Pittsburg. Completed direct pay "rent to own" report for Seifert's furniture as arranged by customer's mother. | |

### March 1, 2003 (Saturday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 0.75 Hours | | | Entry | Borden, Jonathan (Insured) |
| | | | | Completed RCT and faxed to Pittsburg Office | |

### March 7, 2003 (Friday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 5.5 Hours | | | Entry | None |
| | | | | Data entry for contents inventory | |

### March 10, 2003 (Monday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 2.5 Hours | | | Entry | None |
| | | | | Completed Contents report and assembled file with supporting documentation and photos | |

### March 15, 2003 (Saturday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 2 Hours | | | Entry | None |
| | | | | Received letter of representation from public adjuster. Faxed a copy of letter to David Bennett. Received VIP dry cleaning inventory and listing. Completed payment request for direct payment to VIP. Mailed to Pittsburg office. | |

### April 14, 2003 (Monday)

| Time | Duration | Billable | Complete | Description | Contact |
|------|----------|----------|----------|-------------|---------|
| N/A | 6.5 Hours | | | Entry | None |
| | | | | Met with David Bennett and Public Adjuster at the loss location to attempt to resolve differences with Cov. A. estimate. Discussed contents inventory with Public Adjuster. | |



PLAINTIFF'S
EXHIBIT
3-2
PENGAD 800-631-6989

AM617

## LOSS TELEPHONE REPORT
**FILE NUMBER: F300301218    INSURED POLICY NUMBER: 6308371183**
**INSURED NAME: JONATHAN & AMY BORDEN**

File # F300301218                Policy # 6308371183
Loss Exp. Pulled? Yes
================================================================

### INSURED

Policy #: 6308371183
Insurer: Amica
Name: JONATHAN & AMY BORDEN
Address: 4838 WOLF RD.
         ERIE, PA 16505
                              Mobile Phone: 814-392-7500
Bus. Phone: 814-455-4868

**Auto description:**


**Operator:**

Name:
------------------------------------------------------------
Survey Status: Print/Complete Type of Survey:
================================================================

### ACCIDENT INFORMATION

Loss Date: 2/16/2003 Time: 1:00 PM EST
Location: 4838 WOLF RD.    ERIE ,   PA.
Description: FIRE BROKE OUT IN THE WEST PART OF THE HOME IN THE
             BASEMENT. **************************************** I
             THEN CONTACTED DISASTER KLEENUP INTERNATIONAL
             888-735-0800 AT 5:24 PM EST AND SPOKE WITH DALE SAILOR
             HE STATED THAT THEY DON T SERVICE THE ERIE AREA . I
             ASKED DALE IF HE COULD RECOMMEND SOMEONE IN THE ERIE
             AREA . HE COULDN T . I THEN SEARCHED THE ULTIMATES FOR
             BOARD UP OR CONTRACTORS . THERE WAS NO ONE TO SERVICE
             ERIE . I THEN BROUGHT THIS TO THE ATTENTION OF MY
             SUPERVISOR. (ALVARO PAREDES)-- @ 6:16PM EST CALLED DOUG
             OLSHENSKE, CELL 412-480-4757. EXPLAINED FIRE LOSS AND
             SUGGESTED HIM TO PLACE SOME CALLS TO DKI TO GET SOMEONE
             OUT TO BOARD UP THE HOME. DOUG SAID THAT HE WILL MAKE
             SOME CALLS AND ALSO WILL TRY CALLING INSD TO INTRODUCE
             HIMSELF. PROVIDED DOUG WITH INSD PH# S PLEASE NOTE THAT
             THIS HOME WAS F/I 8/30/2002. DOUG WILL CALL ME BACK. @
             7:00PM EST DOUG CALLED ME BACK AND SAID THAT HE WAS NOT
             ABLE TO GET IN TOUCH WITH INSD VIA CELL PHONE BUT HE
             WAS ABLE TO PAGE HIM, ALSO DOUG SAID THAT HE CALLED
             FIRE TEC AND THEY WERE TRYING TO GET SOMEONE UP NORTH
             TO BOARD UP THE HOME, DOUG WILL CALL BACK WITH ADDTL
             DETAILS. @ 8:10PM EST DOUG CALLED AND ADVISE THAT AN
             INDEPENDENT ADJUSTER BY THE NAME OF JOHN LEVANDOWSKI
             WILL TAKE OVER THE LOSS, ALSO AT THE SAME TIME WE RECD
             A CALL FROM BOB WHO IS THE FIRE MARSHALL AND REQUESTED
             TO SPEAK WITH THE ADJUSTER HANDLING CLAIM, WE INFORMED



PLAINTIFF'S
EXHIBIT
3-3

PENGAD 800-631-6989

AM395

**LOSS TELEPHONE REPORT (Continued)**
**FILE NUMBER:** F300301218    **INSURED POLICY NUMBER:** 6308371183
**INSURED NAME:** JONATHAN & AMY BORDEN

BOB THAT WE WOULD HAVE ADJUSTER CALL HIM BACK, BOB S #
IS 814-873-1611, ALSO BOB INFORMED THAT THERE WAS A
BOARD UP COMPANY ON HAND BY THE NAME OF VISIONS (NO
OTHER INFO), PASSED THIS INFO OVER TO DOUG AND HE SAID
THAT HIS WIFE AND 3 KIDS WILL BE STAYING WITH
GRANDMOTHER AND HE WILL BE STAYING IN A HOTEL. ALSO BOB
THE FIRE MARSHALL ASKED FOR PERMISSION TO CALL A
DEMOLITION COMPANY SINCE THE WEST PART OF THE STRUCTURE
IS A HAZARD. REFER BOB THE FIRE MARSHALL TO DOUG.
DISCUSSED LOSS WITH SCOTT JENSEN (SPV) AND WE BOTH WERE
TOLD THAT DOUG WILL AUTHORIZE TO START THE DEMOLITION

**Police:** MILLCREEK FIRE DEPT.
**Report Made?** No
**Comments:** THE INSRD STATED THE FIRE STARTED IN THE WEST PART OF THE
HOUSE IN THE BASEMENT AT APPROX 1 PM EST, HE WAS ALONE AND
SMELLED SMOKE. THE SMOKE WAS SO THICK HE LEFT THE HOME AND
CALLED THE FIRE DEPT . THE SMOKE DAMAGE SEEMS TO BE VERY
EXTENSIVE. THE HOME IS NOT HABITABLE AND HE WAS TOLD THAT
HE WILL NOT EVEN BE ABLE TO ENTER THE HOUSE TODAY . THE
TOTAL HOUSE HAS BEEN AFFECTED BY THE FIRE AND SMOKE DAMAGE
THE HOUSE IS 15 RMS , 2 STORIES WITH BRICK/ SIDING
EXTERIOR. THE LIVING AREA IS APPROX 5500 SQ FT. THE INSRD
HAS BEEN TOLD BY THE FIRE DEPT THAT ALL THE FLOORS IN THE
HOME ARE BOWED. THE INSRD STATED THAT THE FIRE DEPT HAD TO
CUT A LARGE HOLE IN THE ROOF OF THE HOME AND THE GARAGE
THAT IS ATTACHED TO THE HOME WAS AFFECTED ALSO. THE
NEIGHBORS THE LIONS HAD WITNESSED THE FIRE AND THAT IS
WHERE THE INSRD WAS WHEN HE CALLED IN TO MAKE THE CLAIM.
THE INSRD STATED THAT HE WILL BE STAYING AT A HOTEL
TONIGHT. I INFORMED THE INSRD OF HIS COVERAGE ,DWELLING
577,000,PERSONAL PROPERTY 432,750, LOSS OF USE 173,100 ALL
SUBJECT TO A 1,000 DEDUCTIBLE . I INFORMED THE INSRD OF
HIS FILE # AND I TOLD HIM MY DIRECT EXT . SO HE COULD CALL
IN WITH THE ADDRESS OF THE HOTEL HE WILL BE STAYING AT AND
THE DIRECT ROOM # . I TOLD THE INSRD THAT I WILL BE IN
CONTACT WITH HIM AS SOON AS WE GET IN TOUCH WITH THE ON
CALL ADJUSTER . I ASKED THE INSRD IF THERE WAS ANYTHING
AMICA COULD DO FOR HIM AT THIS TIME AND HE STATED THAT
SOMEONE SHOULD COME DOWN TO BOARD UP THE PROPERTY . THE
INSRD GAVE ME SEVERAL CONTACT # S OFFICE # IS 814-455-4868
HIS CELL PHONE # IS 814-392-7500 AND HIS PAGER IS
814-878-6021 I CONTACTED DISASTER SPECIALIST AT 5:13 PM
EST 724-853-7001 ALT #800-441-9339 I SPOKE WITH TERRY
BURKET HE STATED THAT ERIE IS APPROX 2 1/2 HRS AWAY AND
THEY DON T SERVICE THE ERIE AREA. I THEN CONTACTED
DISASTER KLEENUP INTERNATIONAL 888-735-0800 AT 5:24 PM EST
AND SPOKE WITH DALE SAILOR HE STATE ******PLEASE SEE LOSS
DESCRIPTION****

**Reported by:** JONATHAN BORDEN
**Taken by:** a12755
**Date:** 2/16/2003        **Time:** 5:06PM EST        **Office:** 30
**Written report requested:** No

Page: 2

AM396

LOSS TELEPHONE REPORT (Continued)
FILE NUMBER: F300301218    INSURED POLICY NUMBER: 6308371183
INSURED NAME: JONATHAN & AMY BORDEN

INSURED INVOLVED PARTIES

Name:

Passenger/Pedestrian/Driver: Other
Injured? No          Admitted? No          Doctor: No
Doctor:

**BENNETT, DAVID J**

| | |
|---|---|
| **From:** | OLSHENSKE, DOUGLAS J. |
| **Sent:** | Sunday, February 16, 2003 9:23 PM |
| **To:** | BENNETT, DAVID J |
| **Subject:** | Fire Loss / Borden |

Hi Dave. I'm sure you have something from NCSC but let me fill you in. Jonathan Borden (Police # 630837-1 183) called in a large fire loss on Sun. He lives up in Erie. House is insured for about $500K.

I have spoken with 'A'. He will be in a hotel and has mentioned a neighbor may have a home to rent in the future. No Injuries. Three kids are with their grandmother. He is pleased with the service.

I contacted John Levandowski @ Crawford (pager - 814-453-8649). He will contact 'A' and attempt to meet with him tonight. I explained he will handle contents and ALE and given the cope of loss, John Schumann or another national adjuster will most likely handle dwelling.

I took several hours to get a board-up but Visions Restoration is handling (about 4-5 companies either don't service area or never called back). Contact at Visions is Brian 814-838-4236. They will be at home for several hours doing extensive board-up. I have authorized them to do whatever necessary.

I spoke with Fire Marshall, Bob Mitchell (814-873-1611). They were going to demolish west wing of brick home but have decided against it for the time. They would like to wait for daylight to assess. There is heavy damage to this portion of home including some roof collapse. There is 5' of water in basement. There are safety issues at this time which is why they want to wait for daylight to do anymore work. Police units will watch the home tonight (house is barricaded).

I'm not in today (mon) and it looks like we'll have a foot of snow tomorrow. I'll probably get you on your cell in the early AM. I didn;t think it was necessary to contact you Sun. Everything is under control. Thanks.


Doug Olshenske, AIC
Amica Mutual Insurance Company
1500 Corporate Drive, Suite 2500
Canonsburg, PA 15317-8547

Tel. 1-888-796-6824 x 32043

*Assigned C+O Investigation to Crawford & Co. 2/18/02. their officer was closed 2/17/02. Due to weather*

PLAINTIFF'S
EXHIBIT
3-4

PENGAD 800-631-6989

1

AM427

**BENNETT, DAVID J**

**From:** BENNETT, DAVID J

**Sent:** Wednesday, February 19, 2003 3:54 PM

**To:** ST. ONGE, LISA C.

**Subject:** F30200301218, Borden

Spoke with John Schumann today. Damage is extensive. He guesses Coverage A damages of $250,000 and Coverage C of $100,000.

House according to insured has 5,500sf of heated space. There were 2 additions to the original house. House is repairable but looks like they will need to demo an entire section of the house. Living room and kitchen have fallen into the basement. He is working with the board up company to reestablish heat. John is working with the insured on selecting a contractor. PA has made contact with the insured but they are working directly with Schumann.

Insured is looking at two possible homes for ALE. Insureds have 3 children staying with relatives. Age 3, 2 and 6 months. They are currently in a hotel. Claim Card has been sent overnight. He is working with Action Restoration for a partial contents pack out.

David J. Bennett, CPCU
Branch Manager
Amica Insurance Company
Pittsburgh Regional Office
888-796-6824 Ext. 32014
Fax: 724-745-2133
dbennett@amica.com



PLAINTIFF'S
EXHIBIT
3-5

2/19/2003

AM432

PITTSBURGH-(
FEB 2 6 2003
Ans. _____

## Property Claims Services

117 Arbor Crest Lane
Lillington, North Carolina 27546
Telephone: (910) 797-3327
Fax: (800) 933-1175
Schumannjcs@aol.com

# Additional Living Expense
### (Lease Agreement)

February 21st. 2003

Amica Mutual Insurance Company
Pittsburg Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

**Attention: Mr. David J. Bennett, Claims Manger**

**Refernece:**
Customer: John & Amy Borden
Date of Loss: 02/16/03
Cause of Loss: Fire
Claim #: F300301218

Mr. Bennett:
Attached, please find a copy of a signed lease agreement between Amy Borden and Michelle Firman (agent employed by Coldwell Banker, acting on the behalf of Too Much Stuff, LLC), owner of the house located at 5011 Wolf Road, Erie, Pennsylvania.
Initially, the owner wanted $1,600.00 per month for this unfurnished house and would not accept less than a one year lease. Because the interior of the dwelling required some painting and replacement of carpeting to make it suitable for occupancy by our customer and the three small children, an agreement was reached to pay $1,800.00 per month for six months up front (the minimum time necessary for completion of repairs to the insured dwelling), and following would be a month-to-month agreement that $2,000.00 per month would be paid should the customer require use of the rental house for more that the initial six months.

Mrs. Borden's concerns pertaining to the interior of the dwelling and the necessity to paint the interior relates to the age of the rental house and related concerns that perhaps some lead paint which was pealing required attention in the way of painting. The owner agreed to incur the cost to address these concerns with the simultaneous understanding that the cost per month would increase from $1,600.00 to $1,800.00. This work is being completed immediately so as to allow the customers to occupy the rental house as soon as possible.

Several circumstances contribute to the necessity to focus on providing adequate housing for the customers as soon as possible.
First, in addition to Mr. and Mrs. Borden being devastated by the recent fire and their lives being fragmented, the three small children are currently with Mrs. Borden's family in Pittsburg.

**PLAINTIFF'S EXHIBIT**
3-6

PENGAD 800-631-6989

AM445

Mrs. Borden has had a very difficult time dealing with the absence of her children as well as addressing the "special needs educational arrangements" she had undertaken as one of her children requires this type of attention.

Secondly, Dr. Borden moved to Erie with his family six months ago to undertake and manage a new program related to his expertise. Dr. Borden is a Neurologist at the local hospital and is feeling stress due to his enormous responsibilities and this new position. Understandably, he feels added pressure and confusion given his focus on family responsibilities.

For these reasons as well as the obvious, I wanted to focus on and be available to the customers to acquire housing that would be suitable. Having accomplished this, some similar state of organization can be regained once the family is reunited at the 5011 Wolf Road location and consequently, something resembling their prior routine and responsibilities can be more easily managed.

**Initial ALE Concerns:**
Currently, and since the date of loss, the customer has been located at the Clarion Hotel here in Erie. We will address those expenses once they occupy the Wolf Road rental house and a subsequent report will follow outlining those "additional expenses" incurred with supporting documentation.

**ALE Request for Payment; Lease Agreement:**
It is recommended, based on the narrative above, that a check totaling $10,800.00 be issued and made payable to: Coldwell Banker and mailed to 2100 West 8th. Street, Erie, Pennsylvania 16505. This represents lease payment for six months beginning March 1st. 2003 and ending August 31st. 2003 as outlined per the attached lease agreement.

I would recommend a ▉▉▉▉▉ reserve should repairs require time beyond the initial six months. Following will be a summary of incurred expenses associated with additional living requirements as I expect to gather and summarize this information within the following 5 days.

Thank you for allowing Property Claims Services to be of assistance.

Respectfully Submitted:

John C. Schumann

## BENNETT, DAVID J

**From:**   BENNETT, DAVID J
**Sent:**   Tuesday, February 25, 2003 3:54 PM
**To:**   ST. ONGE, LISA C.
**Subject:**   F30200301218, Borden

Coverage A:

I spoke with Schumann today. He is still on site working the loss. He feels his estimate will be completed by tomorrow. He has been working with Visions, a restoration company who is interested in the work. He should have an agreed figure so I can request ACV authority. The insured has not chosen a contractor. John feels that he will not chose Visions. He is trying to impress on the insured's for their need to select a contractor. House has a thermo Geo exchange furnace. He is meeting with the contractor today to address this heating system.

Coverage C:

Full pack out should be completed by 2/27/03. He is working with Visions. Only items Schumann agrees can be repaired or cleaned are being packed. He is checking with the drycleaner's today on the status of the clothes cleaning.

Coverage D:

The rental house will be available 2/27/03. He is working with Dr. Borden's mother on furnishing this rental.

Insured:

As we discussed, the insureds are not dealing well with the fire. Dr. Borden seems overwhelmed with his work and the loss. Mrs. Borden has 3 children and 1 has special needs. Learning issues. They are with her parents in Pittsburgh. I am told that she is also in Pittsburgh. She is having emotional problems. According to Dr. Borden, she may be hospitalized due to these emotional problems.

No one is expressing any concern with our handling. Issue is stress related to the fire loss to their home.

To assist with the rental house and the claim, Dr. Borden's mother is flying in from Conn. She will work with Schumann on setting up the rental house so her daughter-in-law can move in with the kids when she is able.

David J. Bennett, CPCU
Branch Manager
Amica Insurance Company
Pittsburgh Regional Office
888-796-6824 Ext. 32014
Fax: 724-745-2133
dbennett@amica.com

2/25/2003



PLAINTIFF'S
EXHIBIT
3-7

AM459

# Property Claims Services

117 Arbor Crest Lane
Lillington, North Carolina 27546
Telephone: (910) 797-3327
Fax: (800) 933-1175
Schumannics@aol.com

PITT'          CLAIMS
FEB 2 8 2003
Ans

## Coverage A. Summary
### Agreed Cost for Repairs

February 25th. 2003

Amica Mutual Insurance Company
Pittsburg Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania  15317-8574

**Attention:  Mr. David J. Bennett, Claims Manager**

**Reference:**
Customer: John & Amy Borden
Date of Loss: 02/16/03
Cause of Loss: Fire
Claim #: F300301218
Loss Location: 4838 Wolf Road, Erie, Pennsylvania  16505
Claims Representative: Schumann

**Coverage:**
A. $577,000.00
B. $  57,700
C. $342,750.00
D. $173,100.00

Policy Deductible: $1000.00

**Mortgagee:**
Bank of America 133
Post Office Box 1675
Coraopolis, Pennsylvania  15108

**Assignment:**
This assignment was received following a telephone call from Mr. David Bennett at the
Amica Branch Office in Pittsburg, Pennsylvania.  A faxed copy of the declarations page and loss
report was faxed to me immediately following the call.  I contacted the customer immediately and
arranged to meet with the customer on Wednesday, February 17th. at the loss location.
Temporary emergency board up and tarping was completed by fire restoration contractor,
Visions, Inc. a local contractor.



PLAINTIFF'S
EXHIBIT
3-8

PENGAD 800-631-6989

AM455

In an effort to make decisions to correctly repair the house, sample cleaning areas related to the significant ceramic tile floors, counter tops and bathroom fixtures were undertaken with successful results related to cleaning vs. removal and replacement. These decisions were made with the assistance of Visions, Inc. a local fire restoration contractor as a part of reaching an agreed scope and ultimately, cost to repair the damage to this dwelling. Additional damage was addressed in these areas, primarily to fire department activity during the effort to extinguish the fire. Additional concerns pertaining to electrical outlets and switches have been addressed as removal and replacement as corrosive results can develop given the significance of and perhaps supplemental concerns related to electrical components where corrosion is related.

Itel carpet samples were submitted and results obtained. These costs have been applied throughout the attached estimate and copies of the lab analysis are provided in file. Each is identified by descriptions provided to Itel during the process of labeling those samples submitted. General items of concern consistent with necessary repairs are included, such as attic insulation to eliminate the "smoke odor" concerns.

**Estimate Summary:**
Generally, decisions made related to repairs and entries listed within the estimate reflect concerns pertaining to elimination of smoke odor, structural and insulation activities as well as line-of-site and normal matching issues. This estimate was reviewed and discussed on a room-by-room and area-by-area basis with Brian Seifert of Visions, Inc. although a decision as to the choice of a contractor has not been made as yet. Reasons for the delay is discussed later.

The RCV totals $328,999.14 to which $32,900.22 in recoverable depreciation has been applied. The ACV, therefore, totals $296,098.92.

**Prior Reports: Coverage A. (Emergency Repairs and Temporary Shore-Up)**
Two reports dated February 19th. and February 25th. have been submitted with payment requests for the initial emergency repairs as well as subsequent necessary temporary electrical service and necessary shore-up within the basement to prevent the main level Kitchen and Den floor systems from collapsing into the basement. The amounts requested for direct pay to vendors is not included as a part of the RCV listed above for repairs to the dwelling.

**Customer Overview and Reaction:**
The insured family consists of Dr. and Mrs. Borden and three small children. One of the customer's children was born with serious health issues which requires specific attention to safety, exposure and assistance. Combined with these responsibilities, Dr. Borden, having just moved to Erie from Boston, has undertaken coordination of and responsibilities associated with the implementation of a new neurosurgical team at a local hospital. This, along with family responsibilities is a very demanding schedule. Dr. Borden has been forced to postpone surgeries scheduled as he and his wife have been unable to cope with the fragmented nature in which they find their life following this event. They have been living with Mrs. Borden's family in Pittsburg along with the three small children as, according to Dr. Borden's mother who has arrived in Erie to assist with ALE issues, indicated that Mrs. Borden is struggling with Post Traumatic Stress Disorder to the extent that hospitalization may be necessary.

For this reason, Dr. and Mrs. Borden are unable, at this time, to make positive decisions concerning the use of a contractor. In an effort to respect their current circumstances, I have avoided making any demands on their time or requesting decisions from them. Although I have discussed the status of my activity with Dr. Borden while in Erie, his brother Richard will be taking a lead towards assisting with decisions and moving this claim towards conclusion. Richard Borden is located in Hartford Connecticut and is an attorney working with The Hartford Insurance Company.

**Risk:**
The insured dwelling is a two story dwelling built in 1960. Two additions were undertaken and completed within the past 15 years to the original dwelling. These additions included a large guest suite located on the right main level of the dwelling as a second story three bedroom, two bathroom areas. A second addition pertains to a second story level studio and bedroom located above the attached two-car garage.

A partial basement is located under approximately 50% of the structure on the left side of the dwelling under the Den and Kitchen in which two Geo-Thermal heating exchange units are located along with an 80 gallon hot water heater incorporated with the exchange Geo-Thermal heating system. This basement was partially finished with some interior 2 x 4 wall framing and paneling applied to the block foundation walls via furring strips as well as to the interior walls accommodating sections of the basement to separate utility areas from storage and laundry room areas.

This house contains four bedrooms, a studio, kitchen, formal dining room, den, formal living room, large foyer/entry with second story ceiling and steps leading up to the second story, and a guest suite (bedroom, bathroom, and private entry) as well as a playroom and Jacuzzi room with adjacent bathroom.

A large patio is attached on the main level in the rear of the dwelling as well as a second- level patio adjacent to the Master Bedroom. The Master Bathroom consists of a large dressing area and separate bath area with large garden tub surrounded by ceramic tile.

The dwelling contains approximately 5500 square feet of heated living area with an attached two-car garage. The dwelling is located on a two acre lot in an upscale neighborhood.

**Estimate and Agreed Cost for Repairs:**
Attached, please find a 68 page detailed estimate completed at the loss location on a room-by-room and area-by-area basis.

**EXTERIOR CONSIDERATIONS:**
In an effort to extinguish the fire, the fire department personnel called to the scene broke out several windows on both levels of the structure as well as cut numerous large openings in the lower level roof. In order to repair the dwelling and obtain a match, the entire shingle area is being replaced as the lower level gable roof requires removal and line of site concerns necessitate replacement of shingles to accommodate matching. The vinyl siding located primarily on the front lower and upper elevations is being replaced to again obtain a match as significant damage is apparent both in appearance due to smoke and soot as well as significant damage obvious on the front elevation. The brick veneer covering 50% of the left elevation is being removed and replaced to accommodate a "match" only on this elevation as siding separated this area of brick veneer from the brick that can be cleaned on the front lower elevation, therefore, line-of-site considerations are not relevant.

**INTERIOR CONSIDERATIOS:**
As this fire began in the basement below the main level Kitchen, Den and Formal Dining Room, the floor system, interior walls and ceiling joists require replacement to repair these structural areas of obvious damage. The partially finished basement used as a combination storage/utility and Laundry area also sustained significant damage to the extent that the main thirty-four foot long steel I beam was twisted due to the extreme heat generated in this area during the fire. Consequently, any basement wall framing, furring strips and paneling attached to the exterior block walls was completely destroyed along with the Geo-Thermal exchange units and other mechanical elements. A structural engineer was brought in to evaluate and determine necessary structural considerations pertaining to the repair procedures.

The remaining interior main-level and second level areas sustained significant smoke and soot damage to drywall ceilings and walls and floor coverings.

**Contents:**
An inventory of contents has been completed to the extent that identification of total loss items can be recognized. Also, dry cleaning efforts are underway. Pack-out of some items considered able to be adequately cleaned have been moved from the dwelling following verbal permission from Dr. Borden and his mother. A partial inventory of "total loss" items as well as pack-out costs will be submitted shortly. Conclusion of the contents inventory will require active participation from the customers and I anticipate be undertaken once the family is settled in the rental house beginning this Saturday, February 29th.

**ALE:**
A previous report dated February 21st. has been submitted along with a signed lease agreement for rental of a house located at 5011 Wolf Road, Erie, Pennsylvania. A direct pay arrangement was agreed upon with Coldwell Banker, real estate manager for the owner of the rental house. Furniture rental to accommodate the family is currently being reviewed and a request will be forthcoming shortly.

**Coverage A, Recommendations:**
It is my recommendation that a check be issued totaling $295,098.92 be issued and made payable to the customers and to Bank of America. This amount represents the above referenced ACV based on the attached repair estimate less the $1,000.00 policy deductible.

**Pending:**
1. Initial Contents Inventory (total loss items) with payment request
2. Pack-out costs and contents cleaning invoice with payment request (direct pay)
3. ALE Costs: Hotel following date of loss and furniture rental expense


Thank you for allowing Property Claims Services to be of assistance.

Respectfully Submitted:


John C. Schumann

PITTSBURGH. CLAIMS
MAR 0 3 2003
Ans.

# Property Claims Services

117 Arbor Crest Lane
Lillington, North Carolina 27546
Telephone: (910) 797-3327
Fax: (800) 933-1175
Schumannjcs@aol.com

**Additional Living Expense
(Furniture Rent to Own)
Seifert's Furniture**

February 28th. 2003

Amica Mutual Insurance Company
Pittsburg Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

**Attention: Mr. David J. Bennett, Claims Manager**

**Reference:**
Customer: John & Amy Borden
Date of Loss: 02/16/03
Cause of Loss: Fire
Claim #: F300301218
Loss Location: 4838 Wolf Road, Erie, Pennsylvania 16505
Claims Representative: Schumann

As a part of the Additional Living Expense, some furniture is necessary to accommodate this family of five, including three small children and Mrs. Borden's mother and father.
Amy Borden's parents will be living with our customers for a period of time in Erie as Amy is having extreme difficulty dealing with the events that have occurred. Her husband is extremely busy with the implementation of a new neurosurgical team at a hospital in Erie. One of the children is subject to allergies and reaction from pollutants to an extreme degree.
For this reason, Dr. Borden's mother has been coordinating furnishing the rental house for the family's occupancy. The purpose in allowing a "rent to own" arrangement is to provide new furniture and alleviate concerns the family has pertaining to rental (used) furniture. Given the cost to rent furniture from Rentway in Erie totaling $16,000.00 for a six month period, a decision was reached and reviewed to allow a rent to purchase arrangement with Seifert's furniture.
This arrangement gives ownership to Amica for furniture listed as per the attached inventory and the total cost is $11,967.94.

At the conclusion of use of this furniture by our customers, salvage will be available with the sale of the furniture, thus allowing an anticipated 20% recovery. The total cost for furniture rental, with the exception of TVs will more-than-likely total $9,574.35. This represents a savings of $6,425.65 applied to the ALE exposure.



**PLAINTIFF'S
EXHIBIT
3-9**

PENGAD 800-631-6989

AM484

**Recommendations:**
It is recommended that a check payable to Seifert's Furniture totaling $11,976.94 be issued and made payable to the same. The check should be mailed to Post Office Box 312, North East, Pennsylvania 16428, Attention: Mr. Dale Seifert.

Thank you for allowing Property Claims Services to be of assistance.

Respectfully,


John C. Schumann

# Property Claims Services
117 Arbor Crest Lane
Lillington, North Carolina  27546
Telephone: (910) 797-3327
Fax: (800) 933-1175
Schumannjcs@aol.com

March 1st. 2003

Amica Mutual Insurance Company
Pittsburg Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania  15317-8574

**Attention:  Mr. David J. Bennett, Claims Manager**

**Reference:**
Customer:  John and Amy Borden
Date of Loss: 02/16/2003
Cause of Loss:  Fire
File #:  F300301218
Loss Location:  4838 Wolf Road, Erie, Pennsylvania  16505
Claims Representative:  Schumann

**RCT Evaluation:**
Attached please find a replacement cost evaluation completed for your review.  Based on the area located, the cost to rebuild the dwelling including the attached garage and existing basement area totals $762,913.00.

Thank you for allowing Property Claims Services to be of assistance.

Respectfully,
John C. Schumann



PENGAD 800-631-6989
PLAINTIFF'S
EXHIBIT
3-10

AM486

Name: Borden, Jonathan

Mailing Address. 4838 Wolf Road

Erie, PA 16505
Property Address: 4838 Wolf Road

Erie, PA 16505

Policy Number:
Account Number:
Effective Date:
Current Coverage: $0
Agent Name:
Branch Office:
Cost As Of: 11/2001
Exclude Building
Code Enhancement: No

## Cost Estimate

| | | |
|---|---|---|
| Subtotal | $ | 762,913 |
| Total Insurable Replacement Cost | $ | 762,913 |
| Depreciation | $ | 0 |
| Primary Structure Actual Cash Value | $ | 762,913 |

| Category | Labor | Equipment | Material | Total |
|---|---|---|---|---|
| Sitework | | | | |
| Foundations | 12,439 | 500 | 4,616 | 17,555 |
| Slab on Grade | 29,238 | 494 | 26,832 | 56,564 |
| Framing | 59,748 | | 48,577 | 108,325 |
| Roofing | 18,241 | | 14,185 | 32,426 |
| Exterior Walls | 54,192 | 3,091 | 38,116 | 95,399 |
| Partitions | 16,143 | 91 | 12,323 | 28,557 |
| Wall Finishes | 30,750 | | 29,832 | 60,582 |
| Floor Finishes | 12,115 | 92 | 18,779 | 30,986 |
| Ceiling Finishes | 11,955 | 242 | 3,710 | 15,907 |
| Equipment | 10,397 | 245 | 33,489 | 44,131 |
| Conveying Systems | | | | |
| Plumbing Systems | 17,269 | | 102,397 | 119,666 |
| HVAC Systems | 13,294 | | 11,754 | 25,048 |
| Electrical Systems | 9,683 | | 8,040 | 17,723 |
| Attached Structures | 49,696 | | 60,348 | 110,044 |
| Subtotal | $345,160 | $4,755 | $412,998 | $762,913 |

## Property Description

| | Main Home | Wing1 | Wing2 |
|---|---|---|---|
| Year Built | 1960 | | |
| Predominant Style | 2 Story | | |
| Number of Stories | 2.00 | | |
| Total Living Area | 5,500 | | |
| % Cathedral Ceilings | 10 | | |
| % Slab | 60 | | |
| % Crawl Space | | | |
| % Basement | 40 (Standard) | | |
| % Basement Finished | 40 (Standard) | | |
| % Pier Foundation | | | |
| % Hillside Foundation | | | |
| Slope | | | |
| Shape | | | |
| Site Access | Flat Area/Easy Access Roads | | |

**Exterior Walls**
60% Vinyl Siding
40% Brick Veneer

**Roofing**
90% Asphalt/Fiberglass Shingle
10% Rubber

**Attached Structures**
20 Attached Garage - 2 Car
120 SF Open Porch

**Special Items**
1 Picture Windows
2 Bay Windows
1 Skylights - Small

**Partitions**
90% Drywall
10% Drywall - Textured

**Wall Coverings**
40% Paint
30% Vinyl Wallpaper
20% Ceramic Tile
10% Sheet Paneling

**Ceilings**

80% Drywall
20% Drywall - Textured

**Floor Coverings**
10% Hardwood
60% Wall to Wall Carpet
(acrylic/nylon)
30% Ceramic Tile

**Interior**
1 Kitchen - Designer
4 Full Bath - Designer
1 Half Bath - Basic
2 Fireplace - Single
2 French Doors (count each door)
1 Jacuzzi
1 Wet Bar
3 Vanity (Custom Installed)

**HVAC**
100% Heat & Central Air Cond. - Avg
Cost

AM487

 **Amica Mutual Insurance Company**
**Amica Life Insurance Company**

# Office Memorandum

**March 3, 2003**

**To:**     **PLD – Lisa St. Onge**

**From:**   David J. Bennett – Pittsburgh Regional

**Re:**     F30200301218, Borden

**Cc:**

---

### AUTHORITY REQUEST
### COVERAGE A

Please see the attached report from John Schumann. His RCV estimate agreed with Vision, Inc. in the amount of $328,999.14 is attached. The ACV amounts to $295,098.92. There are no code upgrade issues.

The Replacement cost to rebuild the house is estimated at $762,913. Based on this, the dwelling is repairable.

I would like authority of $295,098.92 based on the Repair ACV less the $1,000 deductible.

Thank you,



PLAINTIFF'S EXHIBIT
3-11

AM494



**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

AUTO  HOME  LIFE

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

March 3, 2003

Dr. Jonathan Borden and
Mrs. Amy Borden
3838 Wolfe Rd.
Erie, PA 16505

Our File No.: F30200301218
Date of Loss: February 16, 2003

Dear Dr. and Mrs. Borden:

I would like to take the opportunity to explain what has transpired during the past two weeks.

We have forwarded a check in the amount of $10,800.00 to Coldwell Banker which represents the house rental for six months through August 31, 2003. In addition, we have sent a check for $11,976.94 payable to Seifert's Furniture for the cost of furniture for the rental house.

Since we issued the Amica claim card, the value load for the card totals $15,500.00. Your current balance on the Amica claim card is $10,352.36. If you have any problems with the use of this claim card, please let me know.

We have paid Visions, Inc. $11,874.20 which represents board-up/water extraction of $8,013.80 and electrical connections and shoring in the amount of $3,860.40.

**John Schumann of Property Claim Services has completing his dwelling estimate. Visions, Inc. has indicated that they are willing to complete the repairs based upon his estimate. If you would like to use another contractor, please make arrangements to have them inspect the house and review Property Claim Services' estimate so repairs can begin as soon as possible.**

Visions, Inc. has packed out the contents which can be cleaned and repaired. It is necessary that you authorize this cleaning to avoid any unnecessary storage charges.

At this time, John Schumann is working on the contents inventory and will need your assistance to finalize this inventory.



PLAINTIFF'S
EXHIBIT
3-12
PENGAD 800-631-6989



**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

AUTO  HOME  LIFE

Dr. Jonathan Borden and
Mrs. Amy Borden
Page Two

We understand this has been a very difficult experience for you and your family.  If there is anything we can do to assist you with this matter, please let me know.

Very truly yours,

David J. Bennett, CPCU, AIC
Amica Mutual Insurance Company
Branch Manager

DJB:dcm1, 2

## BENNETT, DAVID J.

**From:** BENNETT, DAVID J.

**Sent:** Wednesday, March 05, 2003 10:14 AM

**To:** ST. ONGE, LISA C.

**Subject:** F30200201218, Borden

Coverage A:

I have been informed the insured has retained a Public Adjuster/ consulting firm. When asked if he was a Public Adjuster, he said he as a consultant licensed in a number of states. It is not clear that he is licensed in PA. Schumann has requested written confirmation of his representation. He will also determine if he is licensed in PA. On 3/4/03, Schumann telephoned and said he had been contacted by Visions, Inc. (restoration co). They have been in contact with this consultant who they describe as being very difficult. Visions said the consultant says dwelling estimate will be double what he wrote. John feels this is not possible. At that point, Schumann had not spoken with the consultant on this issue.

Insured has a brother who is an attorney for Hartford Insurance. Schumann feels the attorney contacted this consultant. Schumann told me this attorney questioned why we don't total the house. He has expressed concern with smoke in the framing insulation. Feels the house will always smell of smoke. Schumann feels the insured will never move into the house. Mrs. has been traumatized by the event. He feels the insured will want to cut the best deal possible and sell the house as is.

The insureds are not participating in the adjusting process and this has been difficult for Schumann.

Coverage C:

I spoke with Schumann today and he is working on the contents inventory. It should be sent today. He listed and priced the contents he could see. No participation from our insureds. Items he could not identify are not on the list. His list will be about $37,000. This is not agreed with our insureds. In PA, Replacement coverage applies. No ACV.

Schumann feels the insured will not accept any cleaning. Dr. Borden is researching the issue of carcinogens caused by the fire. I have written to the insured requesting they authorize the cleaning to avoid storage charges.

Coverage D:

Rental house is now occupied by Dr. Borden. The children and Mrs. Borden are with her parents in Pittsburgh. There continues to be reference to her being admitted to a Psych Hospital but we don't have confirmation that took place. Dr. Borden's mother up to this point has assisted with the Rental House and furniture. Schumann describes here as very difficult and demanding. She expresses no problem with him. Mrs. Borden wanted to rent 2 TVs and a washer and dryer. I told Schumann to tell her to buy with the Claim Card these items and we would move back to the house after repairs are done. I spoke with Schumann today and she refused. She wants the insured to have the opportunity to select these items. I was told she was screaming at John so he authorized the rental. Schumann will follow up for the hotel and meal receipts prior to 3/1/03 house rental.

Cause and Origin:

I spoke with the C & O expert yesterday. He has asked the insured to check with Home Depot to see if he can identify the Linseed Oil product. I doubt the insured will do so given his participation to this point. I will confirm the need to do so in a letter to the insured.

Intentions:

1. Write to insured on need to address subrogation.
2. Secure the adjuster's content's inventory.

3/5/2003



PLAINTIFF'S
EXHIBIT
3-13

PENGAD 800-631-6989

AM502

3. Obtain written confirmation of the consultant's representation and confirm license.
4. Document file with PA Replacement cost provisions.

David J. Bennett, CPCU
Branch Manager
Amica Insurance Company
Pittsburgh Regional Office
888-796-6824 Ext. 32014
Fax: 724-745-2133
dbennett@amica.com

3/5/2003

**BENNETT, DAVID J.**

| | |
|---|---|
| **From:** | ST. ONGE, LISA C. |
| **Sent:** | Friday, March 07, 2003 11:56 AM |
| **To:** | BENNETT, DAVID J. |
| **Subject:** | Borden F30 03 01218 |

Hi Dave.

OK $296,098.02 ACV Coverage A

A few requests:

1. Complete an EOR given Johns $762,913 RC estimate    *water crack + 2 chan*
2. Are the packed contents soft or hard goods or a combination? Has the "cleanablity" decreased now that we are close to one month post fire?. *no yes.*
3. Were all the clothes dry cleaned? What items have been returned to insured? *no*
4. Let's clarify we agreed to rent the washer/dryer and TVs for a limited period of time so insured can shop for the items. Let's cut the rental of these items to 30 days and confirm in writing.
5. Obtain A's S/S. Why was he using linseed oil? Where were the rags? Etc.
6. Obtain an estimate from Visions or confirmation in writing they agreed to John's scope. Please also obtain more *cum* information on the builder. How large of a company? Do they normally handle this type and size of loss? How many years have they been in business?
7. Let's talk with cleaning company regarding insured's concerns. I'd also recommend we bring in Certified Restoration Dry Cleaning Network. Refer to Dennis' 2/10 memo on this network and contact Amy Speaker #502 327 6844 to determine if they have anyone relatively nearby.

We need to draft a letter to insured to cover the status of all the outstanding issues and nicely point the need for cooperation while citing the policy language.

It **appears we may be heading towards appraisal** given the outstanding issues with the contents and PA allegation that the Coverage A damage is double what we estimated. Let's identify what we need to do to complete our assessment of the damages.

Let's discuss. I'm in today but out for much of next week.

Thanks Dave.

Lisa St. Onge
Claims Examiner
100 Amica Way
Lincoln, RI 02865
(800) 992 - 6422  x 4354
lst.onge@amica.com



PLAINTIFF'S
EXHIBIT
3-14

1

AM505



AUTO HOME LIFE

**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

March 11, 2003

Dr. Jonathan Borden and
Mrs. Amy Borden
4838 Wolf Road
Erie, PA 16505

Our File No.: F30200301218
Date of Loss: February 16, 2003

Dear Dr. and Mrs. Borden:

Enclosed is our check for $295,098.92 which represents the Actual Cash Value of the dwelling repairs less your $1,000.00 deductible. The dwelling repairs have been agreed by Visions, Incorporated in the amount of $328,999.14. I have enclosed a copy of this agreed estimate. Please note the check includes your mortgagee, Bank of America. Once the repairs are completed, we will issue a check for the balance of the repair cost less your deductible.

As of March 10, 2003, your Amica Claim Card has a balance of $5,357.51.

Mr. Schumann has previously agreed to the rental of a washer, dryer and televisions for the rental property. We will include the rental cost of these items under your Additional Living Expense coverage for a period of 30 days. A replacement washer, dryer and televisions should be purchased within this 30 day period and these costs included in your Contents inventory. When repairs are complete, we will pay under your contents coverage the cost to move these items to your house.

John Schumann is completing the content's inventory on items that he could identify. He will need your assistance to finalize the content's inventory. Please contact Mr. Schumann so he may assist you with the completion of this inventory.

Please refer to Page 14 of 28 of your Homeowners policy, Section I – Conditions, which state as follows:

**B. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an **insured** seeking coverage, or a representative of



PLAINTIFF'S
EXHIBIT
3-15

PENGAD 800-631-6989

**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574



AUTO  HOME  LIFE

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

either:

    4. Protect the property from further damage. If repairs to the property are required, you must:

      a. Make reasonable and necessary repairs to protect the property;

    5. Cooperate with us in the investigation of a claim;

    6. Prepare an inventory of damaged personal property showing the quantify, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory.

I have enclosed a copy of your policy for your review.

As previously explained, Visions Corp. has packed up the contents which can be cleaned. It is necessary that you authorize this cleaning so Visions can begin the cleaning process to prevent further damage and to avoid storage charges. Their telephone number is 814-838-4236.

Please forward the receipts for the hotel and meal expenses for our review under your Additional Living Expense coverage. I have enclosed a self-address stamped envelope for your convenience.

Thank you for your assistance in this matter. If you have any questions or concerns, please let me know.

Very truly yours,

David J. Bennett, CPCU
Branch Manager
Amica Insurance Company
dbennett@amica.com

PITTSBURGH
MAR 2 5 2003
Ans. _____

Dear Mr. Bennett,                     3/17/03
           Thank you for
your attention to our claim.
After consulting with Mr.
Anthony Parise, CPCU, SIC, we
can not accept this check
for our home repair.
We will be working with Mr.
Parise to compile our
claim, and will send it
as soon as it is completed.
     Thank you.
     Sincerely
     Amy & Jonathan Borden

PLAINTIFF'S
EXHIBIT
3-16

AM544

## BENNETT, DAVID J.

| | |
|---|---|
| **From:** | BENNETT, DAVID J. |
| **Sent:** | Friday, March 21, 2003 8:25 AM |
| **To:** | ST. ONGE, LISA C. |
| **Subject:** | F30200301218, Borden |

Insured:

Schumann reports he had a nice conversation with our insured 3/14/03. He requested the ALE receipts. On the subject of cleaning the contents, the insured said we will have to deal with the public adjuster. He did make reference to smoke being in the walls. He told Schumann they would accept the majority of the Dry Cleaning on 3/17/03 when his wife returned to Erie. They report that they are happy with the rental house.

Coverage C:

On 3/18/03, Schumann telephoned reporting that Mrs. Borden would not accept the Dry Cleaning that was delivered to their rental house. She expressed concerns for their child's allergies. Vision's does not have the facilities to store these items so Schumann instructed VIP Cleaners to store the Dry Cleaning in the insured's garage that was not affected by the fire. Schumann is following up with the Public Adjuster on this and the other contents.

I have been in touch with Amy Speaker on the issue of the Dry Cleaning. She directed me to the Fabricare Institute. I telephoned them and I was told they will not release any information unless we are a member. They do have research on this subject. I have contacted Amy Speaker who will request this information.

Coverage A:

I spoke with the owner of Visions Corps and I was told they have been in business as a corporation since 2000. He grew up in the business and originally worked for his father. They handle the city of Erie and Erie County. During their peak season, they have 12 – 20 employees. Currently, they have 7 employees. They do work for State Farm and Farmers Insurance. They specialize in restoration work. They have done work up to $300,000 in the past. He feels more than confident that they can do this work.

Intentions:

1. Obtain the ALE receipts.
2. Follow up with Schumann on the contents inventory and PA's estimate on the dwelling.
3. Follow up with Amy Speaker on the Dry Cleaning research.


David J. Bennett, CPCU
Branch Manager
Amica Insurance Company
Pittsburgh Regional Office
888-796-6824 Ext. 32014
Fax: 724-745-2133
dbennett@amica.com



PENGAD 800-631-6989 • PLAINTIFF'S EXHIBIT 3-17

AM553

PITTSBURGH-CLAIMS

'APR 0 3 2003

Ans. _____

# GIORDANO ASSOCIATES, INC

*Established 1978*

71 High Street    East Haven, Connecticut 06512    (800) 469-7477 FAX (203) 469-6409

Mr. Shuman                                                    March 23, 2003
117 Arbor Crest Lane
Lillington, North Carolina 27546

RE: Dr. & Mrs. Borden

Dear Mr. Schumann:

As you are aware Dr. & Mrs. Borden have retained our consulting services regarding the
fire damage to their home on February 16, 2003. Dr. & Mrs. Borden have serious
concerns as to the extent of damage and the potential health risk associated with the
smoke damage. The smoke damage in the home is extremely heavy. Dr. Borden has been
doing some research on toxicants that are formed when items like plastics burn. I am sure
he will share his findings with us once his research is concluded.

In the report that follows you will find the following:

BUILDING:

- A letter addressing the concerns with the estimate present to the Bordens.
- Our estimate reflecting the reconstruction cost associate with the necessary repairs
  required to return the Bordens to a pre-loss condition.
- A request for a meeting at the location to review the building estimates.

CONTENTS:

- Letter addressing the status of the inventory to date
- A request for written direction on how AMICA would like the Bordens to proceed
  with dry-cleaning and the items in the offsite storage.

1



PLAINTIFF'S
EXHIBIT
3-18

AM556

We look forward to working with you. Please give me a call at (203) 676-3100 or page (877) 303-4597 so we can keep the claim moving ahead. Thank you.

Sincerely,

Anthony N. Parise, CIC, CPCU, AIC

AM557

# *BUILDING*

Upon my arrival at the Borden's home I was presented with your estimate dated. February 19, 2003. I then placed a call to you and discussed the building in some degree. You informed me that Vision Restoration had reviewed the estimate and felt it was accurate. I then proceeded to the loss location. My initial thoughts were to verify your estimate. So I went room by room with your scope and estimate in hand. The next few pages reflect some of the major concerns:

ROOFING:

No skylight allowance in the kitchen

FRONT ELEVATION:

The area under the porch needs to be complete removed. I crawled into the crawlspace and the sill is burnt out of the exterior wall. This will require removal of the brick front.

ALL AREAS IN THE MAIN HOUSE INCLUDING THE SECOND FLOOR:

This was a major concern for the fire was concentrated in the basement and the piping and wiring was all bottom feed from said basement. Upon my inspection I opened several walls on the second floor and found clear cut evidence of smoke damage. I called Vision Restoration to the site and showed them my finding. They agreed that the smoke from the basement traveled up into all walls in the main house including the second floor. I questioned Visions as to why neither they nor Amica took the time to open the walls to verify smoke penetration. It was explained he was not directed to do so. When I questioned him on whether he could repair the home and guarantee a smoke free house at this point he stated not for the estimate as it currently is. **Our recommendation:** The area warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

1

AM558

STAIRWAY:

The landing framing has heavy scorching from the fire in the crawlspace below. I opened the sheetrock below the stairs and it has heavy soot. **Our recommendation:** The floor system and the walls direct above ½ of the room need to be replaced. The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

FOYER:

The floor joist system is heavily damage and warrants replacement. This is easily observed from the crawlspace below. **Our recommendation:** The floor system and the walls direct above ½ of the room need to be replaced. The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

LIVING ROOM:

The floor joist system is heavily damage and warrants replacement. This is easily observed from the crawlspace below. **Our recommendation:** The floor system and the walls direct above ½ of the room need to be replaced. The room warrants total removal of all drywall and finished so the framing can be treated for smoke and potential mold.

JACUZZI ROOM:

The walls in this room where exposed near the bathroom piping and outlets. The smoke penetration is extensive and obvious. There is obvious blow up under the tub, which is a rough fiberglass and impossible to treat. **Our recommendation:** The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

GUEST SUITE:

The walls in this room demonstrate obvious smoke penetration. The bedrooms directly above the suite had heavy smoke on the insulation when the walls where exposed. It is obvious since this is a basement fire the smoke traveled through these lower walls first. **Our recommendation:** The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

AM559

PLAY AREA/ROOM:

Please refer to our estimate for recommend repair.


DEN:

Please refer to our estimate for recommend repair.


FORMAL DINING ROOM:

Please refer to our estimate for recommend repair.


KITCHEN:

Areas worth mentioning not on Mr. Schumann's estimate:

The floor in this room was a ceramic tile not a vinyl.
The counter tops are Corian not a plastic laminating.
Built ins not mentioned
Skylight chute not addressed.


PANTRY:

Floor is ceramic not vinyl.


STUDIO:

The stairs leading to the studio are directly above the basement stairs that where heavily damaged. The room took heavy smoke. I pulled some recessed lights fixtures and examined the soffitt system on the outside of the house. It was obvious the ceiling and walls had smoke penetration. **Our recommendation:** The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

AM560

STUDIO BEDROOM:

The back wall in this area adjoins the attic which had heavy fire damage. This wall needs to be rebuilt. The room took heavy smoke. I pulled some recessed lights fixtures and examined the soffitt system on the outside of the house. It was obvious the ceiling and walls had smoke penetration. **Our recommendation:** The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

STAIRS, DOWN:

The framing and stringer system that supports these stairs is complete burnt out. There is no allowance in Mr. Schumann's estimate to reflect the extent of damage. **Our recommendation:** The area warrants reconstruction of all stair and wall framing. The steps will require total reconstruction. All drywall and finishes will need to be removed and replaced.

GARAGE:

The garage was heavily damaged by the fire rescues attempts. The stairs that lead to the studio have a chamber that leads directly into the garage ceiling, which allowed heavy smoke penetration. It appears upon our inspection mold was starting to form from the wetness of the fire rescue attempts. **Our recommendation:** The room warrants total removal of all drywall and finishes so the framing can be treated for smoke and potential mold.

BASEMENT:

This is the area that the fire originated in and the heat was extremely intense. The block foundation walls demonstrate heat stress cracks in several layers of block.

Areas worth mentioning not on Mr. Schumann's estimate:

Cement floor repairs and treatments.
No allowance for domestic water supplies or drains.
No allowance for the coal stove.
No sink allowance.
No Washer/Dryer hookup allowance.
No allowance for half of the room that was finished.
No allowance for the built in cabinets.

4

AM561

**CRAWL SPACE AREAS:**

There are two crawlspace areas under the main section of the house. The fire did penetrate into these areas. There is direct fire damage to several of the joist in these areas. The balance of the crawlspaces has heavy smoke damage. **Our recommendations:** Remove all burnt framing and heat stressed block. Replace said framing and block and properly treat the balance. Please refer to our estimate.

Attached you will find our building estimate to return the Dr. & Mrs. Borden to a pre-loss condition. We would like an opportunity to meet you on site to walk through the loss and examine the areas of concern together.

AM562



**AUTO  HOME  LIFE**

Amica Mutual Insurance Company
Amica Life Insurance Company
Amica General Agency, Inc.

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

March 25, 2003

Anthony M. Parise, CPCU
Giordano and Associates, Inc.
71 High Street
East Haven, CT  06512

Our File No.: F30200301218
Our Insured: Jonathan and Amy Borden
Date of Loss: February 16, 2003

Dear Mr. Parise:

Our check in the amount of $295,098.92 which represents the Actual Cash Value of the repairs estimated by John Schumann has been returned. I would like you to understand that issuance of this check is not a release of the claim. It represents the portion of the dwelling claim that is not in dispute. If you would like to reconsider your position, please let me know and I will resend this check.

As you know, we have issued a check for $39,945.48 based upon the contents inventory prepared by John Schumann. We look forward to your contents inventory and supporting documentation for the remaining contents items.

Currently, contents are being stored by Visions Corporation that they feel can be cleaned and returned. We request that you contact them to authorize the cleaning. We will not be responsible for any unnecessary content's storage charges.

We understand the dry cleaning was completed and delivered to our insureds. However, they refused to accept delivery indicating these items were not cleaned to their satisfaction. According to VIP Cleaners, these items have been cleaned according to industry standards and we disagree with the contention that they were not cleaned satisfactorily.



**PLAINTIFF'S EXHIBIT**
3-19

FENG40 800-631-6989



Amica Mutual Insurance Company
Amica Life Insurance Company
Amica General Agency, Inc.

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

AUTO  HOME  LIFE

Anthony M. Parise, CPCU
Page Two

Since we are now over 5 weeks since the date of this loss, we look forward to your estimate of the dwelling repairs.  Also, please forward the hotel and meal expenses incurred by our insureds prior to their move into the rental house for our review and consideration under the Addition Living Expense coverage.

Your cooperation in this regard will be appreciated.

Very truly yours,

David J. Bennett, CPCU, AIC
Amica Mutual Insurance Company
Branch Manager

DJB:dctl

cc:  Dr. Jonathan and Mrs. Amy Borden

# WEST LAKE FIRE DEPARTMENT
## FIRE REPORT

MAR 2 8 2003

Ans. _____

Report Number: 026_____     Incident Number: 03-0722_____     Date: FEBRUARY 16, 2003_____

Location: 4838 WOLF RD._____

Time Out: 1310_____     Enroute: 313_____     On Scene: 1314 (490)__     Time In: 2304_____

Under Control: 1625_____     Worktime: 7 HOURS_____     Mileage: 1_____

Incident Commander: CHIEF McCASLIN_____

Fire Investigator Requested: YES_____     (If Yes, Date & Time): 2/16/03 2100_____

Type of Fire Incident: HOUSE FIRE_____

Construction Data:   Type of Building: RESIDENTIAL_____

Height: 2 1/2_____ (Stories)   Basement: YES_____     Floor: CONCRETE_____

Outside Walls: BRICK / VINYL SIDING_____     Roof Framing: WOOD_____

Floor Construction: WOOD_____     Roof Covering: SHINGLE_____

Type of Extinguishment: WATER - (3) 1 1/2", (3) 2", (1) 2 1/2"_____

Cause of Fire / Alarm: POSSIBLE ACCUMULATION OF LINSEED OIL SOAKED COTTON RAGS SELF
COMBUSTING_____

Point of Origin: TOP OF OLD UNUSED DRYER IN BASEMENT_____

Fire Extension: ENTIRE BASEMENT, FIRE & STRUCTURAL DAMAGE 1st FLOOR, FIRE DAMAGE IN ATTIC
_____ SMOKE & HEAT DAMAGE THROUGHOUT REMAINDER OF HOME_____

Number of Injuries: _____     EMS Trip Sheet #: _____

Assisting Dept.'s/Agencies: WEST RIDGE (10,11,12,17) / LAKE SHORE (53,55) / FAIRVIEW (539) / McKEAN (63)

Utilities Notified: PENELEC / NFG / ERIE WATER_____     Date & Time: 1331 / 1544 / 2100_____

Weather Conditions: CLEAR_____     Temp.: 15_____   Wind: NW @ 5-10_____

Water Supply: ASBURY & WOLF_____

Salvage Equip. Used: (2) PPV BLOWERS_____

Pump Time:  R-1: _____     T-2: _____     Engine 4: 7 HOURS_____     Engine 9: 7 HOURS_____

Discovered By: JONATHAN BORDEN_____   Address: 4838 WOLF RD._____     Phone: 838-4406

Reported By: S.A.A._____   Address: _____     Phone: _____

## Boats / Vehicles / Aircraft

Model: _____     Year & Make: _____     Plate No.: _____

Operator: _____     Address: _____     Phone: _____

Owner: _____     Address: _____

## Property Owner Information:

Name: AMY BORDEN_____     Address: 4838 WOLF RD.

Phone: 838-4406_____     Business Phone: _____

## Occupant Information:

## Insurance Information:

Insurance Company: AMICA_____     Policy Number: 630837-1183_____

| | Est. Value Loss | Insurance |
|---|---|---|
| Building | 250,000 | 577,000 |
| Contents | 200,000 | 432,750 |
| Other | | 57,700 |
| Total | 450,000 | 1,067,450 |

| | Est. Value Loss | Insurance |
|---|---|---|
| Vehicle | | |
| Contents | | |
| Other | | |
| Total | | |

AM426

PLAINTIFF'S
EXHIBIT
3-20
PENGAD 800-631-6989

REPORT SUBMITTED BY: CHIEF KIRK W. McCASLIN

 Amica Mutual Insurance Company
Amica Life Insurance Company

# Office Memorandum

**April 4, 2003**

**To:**     John Schumann

**From:**  David J. Bennett – Pittsburgh Regional

**Re:**     F30200301218, Borden

**Cc:**

---

As discussed 4/4/03, attached is the Public Adjuster's letter of 3/23/03 and his dwelling estimate. Please review and discuss with issues with the PA. I look forward to you assessment.

Thank you,



PLAINTIFF'S
EXHIBIT
3-21
PENGAD 800-631-6989

AM578

Amica Mutual Insurance Company
Amica Life Insurance Company

# To File

**File:**  F30200301218          **Insured:** Jonathan Borden

**From:**  David J. Bennett        **Date:**  April 4, 2003

Coverage A:

The Public Adjuster's dwelling estimate is in file. The estimate totals $680,492.21. Current Coverage A limit is $577,000.

I spoke with Schumann on 4/4/03. He had not received the PA estimate. I have over nighted the estimate requesting his review, discussion with the PA and his recommendations.

Coverage C:

We have not received the drycleaning research from Amy Speaker. I will follow up.

The PA has not submitted the remaining content's list for our review. I have asked the adjuster to push for this documentation.

The PA comments about the completed drycleaning. His comments are inaccurate. I spoke with Heidi at VIP Cleaners on 4/4/03. The cleaning was done and they noticed a smell of smoke returned. The cleaned items were sent for ozone treatment. The insureds then indicated they would accept these items. Heidi's brother and another worker delivered the drycleaned items to Mrs. Borden and while they were unloading the clothing, she said they had a smell of smoke and refused to accept the items.

According to Heidi, her brother agreed that there was a smell of smoke. Heidi said she could not smell the smoke but she says she works in the store 10 – 12 hrs. per day.

The PA writes that he does not feel the contents stored by Visions will clean. If cleaned, it will be done at our peril not affecting the insured's Coverage C limits.

I spoke with Schumann on 4/4/03 and he had received a call from Visions who told him the PA told Visions to clean all the contents presently being stored but the PA guarantees that none of the contents will be acceptable.

Coverage D:

I have again requested Schumann provide his recommendations of the Coldwell Banker invoices.



PLAINTIFF'S
EXHIBIT
3-22
PENGAD 800-631-6989

AM579

Intentions:
1.  Write to PA and request the complete contents' inventory.
2.  Have Schumann review, discuss with the PA and provide his recommendations on the PA dwelling estimate.
3.  Schumann's recommendation on Coldwell Banker's invoices.

AM580

# GIORDANO ASSOCIATES, INC

*Established 1978*

71 High Street   East Haven, Connecticut 06512   (800) 469-7477 FAX (203) 469-6409

Amica Mutual Insurance Company                          April 6, 2003
Mr. David J. Bennett, CPCU, Branch Manager
Pittsburgh Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, PA 15317-8574

RE:   Dr. & Mrs. Borden
      F30200301218

Dear Mr. Bennett,

This is a formal response to your letter dated March 11, 2003, March 17, 2003,
March 25, 2003 and March 31, 2003. I will address your concerns in each letter along
with explaining the concerns of the insured. We appreciate your efforts to date and hope
this letter will help us all proceed to a quick and fair settlement.

BUILDING:

Mr. Schumann presented the insured an estimate with an Actual Cash Value of
$295,098.92. I had a discussion with Mr. Schumann concerning that estimate at which
time he explained that I should contact Mr. Brian Seifert from Vision Corporation with
any questions and concerns during my inspection. Mr. Schumann explained Mr. Seifert
owned a local fire restoration company called Vision Incorporated and that he had
viewed the damages and agreed to repair the home for the price written. I inspected the
home for four days. On the second day I contacted Mr. Seifert and asked him to meet me
at the location.

Upon Mr. Seifert's arrival we inspected the home together. Specifically, we addressed
concerns of the main house and the smoke penetration into the walls and framing. I
proceeded to cut holes in walls, remove outlet covers, expose pipe chases and clearly
showed Mr. Seifert heavy smoke penetration into the main home. We then proceeded to
the heavily damaged section of the house in which I showed him heavy structural damage
within the crawlspace areas, to the floors joist and framing that supports the exterior wall,
foyer and living room of the main house. Your letter dated March 11, 2003 indicated that
Vision Incorporated was in agreement with your estimate. After our joint inspection
Mr. Seifert explained he originally thought Mr. Schumann's estimate was reasonable but
after our joint inspection he couldn't repair the home or guarantee a smoke free home



PLAINTIFF'S EXHIBIT
3-23
PENGAD 800-831-6989

AM583

with the estimate as it is. I explained the Mr. Seibert the scope of repairs that I was proposing and he agreed it was necessary to rid the home of the smoke.

I am sure can understand Dr. & Mrs. Borden's concerns with accepting the actual cash value check. The fact that the repairs are is far excess of the damages estimated by Amica Mutual Insurance and the fact that a local fire restoration company who was called in by Amica Mutual Insurance agreed is enough to raise legitimate concerns. Per the advice of the insured's brother, Mr. Rick Borden, esq. the actual cash value check has been returned. We respectfully request your presents, along with Mr. Seifert at the location to inspect the damages together.


CONTENTS:

Partial Contents list:

The items in the insured's home make this a difficult contents claim to complete without heavy involvement from the insured. There are items on Mr. Schumann's contents list that he estimated to be worth $300 dollars for that the insured paid $3,000 for. Some of the medical books cost upward of $200 each. Please take notice that we are working with the Bordens to complete the list and will leave all items in the house for your review. We will be able to supply you with a partial inventory within 2 weeks and a complete within a month.

We are in receipt of your letter dated March 31, 2003 requesting the items in storage be cleaned. The Bordens and I inspected these items and do not feel they will respond to cleaning. It appears by your letter that Amica is willing to spend the $12,098.40 in an attempt to restore the items. On April 4, 2003 I contacted Mr. Seifert from Vision and explained that it was Amica's request to have the items in storage cleaned. Mr. Seifert explained he did not feel that the items were worth cleaning and he hated to see Amica waste their money. The Bordens do not wish to waste Amica's money either, but also want to cooperate with Amica's request. At this time, per Amica's request, Vision is proceeding with the cleaning of the items in storage. I would suggest an Amica representative contact Vision, who was called in by Amica, to get their opinion before any more expenses are incurred.

Your letter of March 31, 2003 also states that the storage bill will only be paid for two months. Please take notice that the house repairs will take much longer then two months. Also take notice that the insured has requested the items be totaled and disposed of and it is Amica's request the items be cleaned and kept in storage. We strongly disagree with the limitation on storage.

In your letter dated March 25, 2003 you refer to the dry cleaning that was returned to the Bordens. Your letter states that the clothes were cleaned to "Industry Standards" At this time we respectfully request a copy of the industry standards you are referring to. Your letter also indicates that you are in disagreement with the contention that the clothes are not cleaned to satisfactory. Has anyone from Amica or an Amica representative inspected the clothes after they were dry cleaned? I personally did inspected all garments after the cleaning process. Many of the items are clearly smoke stained on the collars and cuffs and still have an odor in the pockets and liners. Before Amica takes such a harsh position of the clothing I would ask that we meet at the location and inspect the cloths together.

I am sure we all agree that the Borden family has suffered a tremendous fire. The damages are very clear and we all have the same common goal and that is to get the claim resolved and restore some peace back into the Borden household. I would suggest that a good faith meeting take place to level set all parties. I would suggest a two day meeting take place starting on Monday April 14, 2003 and ending Tuesday April 15, 2003. Requested attendees Mr. Schumann AIC, Mr. Bennett CPCU, Mr. Seifert from Vision Incorporation, Dr. & Mrs. Borden, Robert A Mayo contents specialist, and myself. On Monday a complete walk through on the building can take place. On the second day we can review the contents at the drycleaners and in the storage unit, along with the items left in the home.

We welcome any other dates that may work better for you Mr. Bennett. Please page me (877) 303-4597 ASAP so we can arrange a meeting.

Thank you for your time and consideration.

Sincerely,

Anthony N. Parise, CPCU, CIC, AIC

**BENNETT, DAVID J.**

| | |
|---|---|
| **From:** | REID, PETER A. |
| **Sent:** | Tuesday, April 15, 2003 1:10 PM |
| **To:** | BENNETT, DAVID J. |
| **Cc:** | ST. ONGE, LISA C. |
| **Subject:** | Borden F30 03 1218 |

Dave

As discussed this afternoon ok to move to Appraisal.            *814-870-2491*
                                                                *x 2491*

We need to immediately ID our Appraiser.  Suggested you talk with Scott Huber at Erie Ins.  If no leads develop, go to your area law firm to see if they have any property oriented attys for discussion.

Pls keep the file moving forward as much as possible.  thxs

Peter Reid
Senior Assistant Vice President
Amica Insurance
1 800 992 6422 x 4591
401 334 0615 fax
preid@amica.com



PLAINTIFF'S
EXHIBIT
3-24

PENGAD 800-631-6989

AM589

Dr. and Mrs. Jonathan Borden
4838 Wolf Road
Erie, PA 16505
(814) 838-4406

RECEIVED BY T.A.T.

APR 24 2003

ANS. _____

RECEIVED BY

APR 25 2003

Ms. M. Diane Koker
Pennsylvania Insurance Department
Room 808 Renaissance Center
10th & State Street
P.O. Box 6142
Erie, PA 16512

*To: J. Toursey*

*Copy of response to me
please.*

*J. Taylor
4/24/03*

April 17, 2003

Dear Ms. Koker:

My family recently had a severe fire in our home in Erie, Pa. We are insured by Amica Mutual Insurance Company. We believe that Amica is acting in bad faith and is trying to defraud us. We do not believe that a company that acts the way Amica has should be allowed to do business in the State of Pennsylvania. As our representative, we are asking that you take action to help us and to prevent this from happening to anyone else.

As a result of Amica's actions, we were forced to hire a consultant to estimate what it would take to repair our home and the consultant's estimate was more than double the amount of the check sent to us from Amica as full payment under our insurance policy for repair of our home. The estimate Amica included with the check didn't even include a provision for plumbing. Our consultant has been doing this work for over fourteen years, and he tells us he's never surer of an estimate. We do not believe that we should be forced to hire a lawyer in order to prevent an insurance company from defrauding us. That is why you are there.

We have three children, including a 3-year old disabled daughter, and we purchased a home that was specifically designed for someone with disabilities. We purchased Amica's highest level of insurance, the Platinum policy. The policy provides full replacement value for our home and its contents. We have made a claim to Amica and we do not believe that they are responding to our claim in good faith.

As I have said, the damage to our house is severe. This was a basement fire, which allowed smoke to bellow through all the piping and electric lines that feed the house and infuse into the walls and insulation. Many volunteer units from the Millcreek, and surrounding area, Fire Departments were wonderful and worked extremely hard to save our home, but they had great difficulty in putting out the fire. This fire burned for close to fours hours with heavy, heavy smoke and soot. At one point a fireman approach me and said they might have to bulldoze down part of the house if the source of the fire could not

PLAINTIFF'S
EXHIBIT
3-25

PENGAD 800-631-6989

AM652