Plaintiffs' Exhibit 3
(Part 2 of 3)

Ms. M. Diane Koker
Pennsylvania Insurance Department
April 17, 2003
Page 2

be located.   My family has not been able to live in our home and we are renting an
alternate dwelling.

On March 11, 2003, Amica sent us a check, which was purported to represent the Actual
Cash Value of our home repairs. Amica sent the estimate upon which the dollar amount
was based as well. There were numerous errors in the estimate. The following are some
examples:

- The estimate did not include a provision for plumbing in the repairs;
- There was no provision for removal of smoke and soot from walls;
- There was no provision for replacement of an existing skylight that was destroyed;
- Our kitchen countertop was mistaken for a much less expensive material;
- Ceramic tile in the kitchen was mistaken for vinyl flooring;
- There were no washer-dryer hookups;
- There was no allowance for a coal stove that we had in the basement;
- There was no allowance for built-in cabinets that we have in the basement.

These are just a few of the problems in the estimate.

This check was sent to us after Amica had already been less then honest to us a number
of times. First, Amica provided us with a credit card that we could use for purchasing
items such as bedding and clothing that we needed right away. When we were getting
close to the limit on the card, the Amica representative told us that an additional amount
had been put on the limit of the card. When we attempted to use the card, it was rejected
– more than once. This caused my family significant embarrassment and distress. The
Amica representative was reminded that an additional amount was to be added to the
card, and after initially denying that he had agreed to add the amount, the amount was
finally added. Additionally, the Amica representative told us that Amica would rent us a
washer and dryer for the duration of our stay in a rental house. We then received a letter
with no explanation telling us that they would only rent the washer-dryer for 30 days –
about two weeks of that time had already expired. As I am new in my job and my wife is
taking care of our three children, we had to scramble to purchase a washer and dryer.

As a result of our discomfort with the manner in which Amica was treating us, we hired a
consultant to look at our house, review Amica's estimate and tell us what else Amica had
missed. When our consultant went into our home and compared the damage to Amica's
estimate, they were appalled. Neither Amica nor the company that they had purported to
be a fire restoration expert had checked to see if smoke damage could be found in the
walls. Our consultant opened a number of the walls and found a significant amount of
soot infused into the insulation and elsewhere. They also found additional structural
damage that the Amica repair estimate did not account for.

We asked that the Amica representatives, including the Branch Manager in their
Pittsburgh Regional Office, Mr. David Bennett, meet with our consultant in order to

AM653

Ms. M. Diane Koker
Pennsylvania Insurance Department
April 17, 2003
Page 3

discuss the discrepancies. That meeting took place on April 15, 2003. To say that it went very badly is a gross understatement. Amica's representatives were shown all of the damage that I have described and more. Amica acknowledged that soot is in the walls. First, they stated that the soot was not a problem because the house would not smell. Our consultant truly believes the house will smell, but be that as it may, under the terms and conditions of the Amica insurance policy, for which we paid a premium, the home should be returned to a pre-loss condition. It is not enough to simply get the house smell free. There is no way to get the harmful soot out of the walls unless they are exposed; Amica has stated that we should just leave it there. When our consultant pointed out that the policy should return our home to its pre-loss state, the Amica representative responded "How do we know the soot wasn't there prior to the fire?" Our consultant pointed out smoke under tubs and within electrical outlets but the Amica representative stated we should not be concerned with soot in those places. This type of treatment continued throughout the day. All of this appears to be clear and explicit bad faith on Amica's part.

As I stated, we recently purchase our home and it was fully inspected. A significant addition had been added to our home not very long ago. The soot was not there before. And, if you could see the amount of soot in the walls, you would also have grave doubts about Amica's contention that simply whitewashing the walls would remove the smell. The smell all over the house is overpowering.

The stress and expense Amica is putting us through is hard enough without their questioning our integrity.

In addition to reviewing the structure, our consultant discussed the contents of our home with the Amica representatives. Here also, Amica is clearly not acting in good faith. We have disagreed with Amica about the manner in which they want to clean many of our possessions. First, they have insisted that we need to accept clothes that they had dry-cleaned. Not only do many of these clothes have smoke and soot stains still on them, but they also still smell like smoke. Amica claims that they have been cleaned to industry standards. I don't know what standards the dry-cleaning industry has, but these clothes could not meet them. Also, when looking at pieces of our furniture, Amica insists that they can also be cleaned, even though some of the furniture has buckled and there are stains that cannot be removed. When shown these problems, Amica's only answer is to question how they can know that the furniture was not in that condition prior to the fire.

As a result of our recent move to Erie to join the Section of Neurological Surgery at Saint Vincent Health System, we had just purchased much of our furniture for our new home. This fire has ruined virtually all of our life's possessions. We are deeply insulted by Amica's insinuations.

There is one more thing that has us extremely concerned. As a result of her disabilities, our three-year old daughter, Emma, has a compromised immune system. I have spoken with the Amica representatives about my concern that carcinogens from the fire would

Ms. M. Diane Koker
Pennsylvania Insurance Department
April 17, 2003
Page 4

remain in our home after the structure is repaired and the possessions are cleaned. This is of great concern to us, as Emma is much more susceptible to these carcinogens. When the Amica representatives met with our consultant, Mr. Bennett told them that all houses have carcinogens in them and the fact that carcinogens may be in the house does not mean that it has anything to do with the fire. As I stated earlier, the fire in our home was very significant. A large number of plastics, oil-based materials and other carcinogens had to have been released into the air and are contained in the smoke and soot. I have told Amica about Emma and our concerns and their casual attitude toward this has us greatly distressed.

Our consultant told us that Amica seems determined to stick to their original estimate even in the face of overwhelming evidence that it is strewn with mistakes and errors. We bought Amica's best, and most expensive, insurance policy based on their advertising and their representatives telling us that Amica is not like other insurance companies and that if we were to ever have a claim that they would treat us with the highest level of professionalism and respect. This has not happened. We have never been through anything like this before. We purchased a promise from Amica to return our home and lives to a pre-loss condition and we truly expected that they would honor this promise. Instead, they are trying to force us to leave soot in walls, carcinogens in our home and to take dirty clothing. We are asking for nothing more than that they live up to the promise that they originally made, the promise for which we paid.

My family was brought from Boston, MA to Erie so that I could perform certain specialized neurosurgical procedures that were not previously available in the Erie community. The fire has made the transition much more difficult for us; Amica's actions have exacerbated this tremendously.

My wife has been extremely upset as a result of the fire and Amica's actions and has had to receive medical treatment as a result. We are appealing to you for help because we do not know where else to turn.

Please call me at 814-455-4868 and let me know what you suggest that we do. I appreciate your help in advance.

Sincerely,

Jonathan A. Borden, MD

Cc: Mr. Thomas Taylor
    Amica Mutual Insurance

AM655

**BENNETT, DAVID J.**

| | |
|---|---|
| **From:** | BENNETT, DAVID J. |
| **Sent:** | Tuesday, April 29, 2003 5:33 PM |
| **To:** | ST. ONGE, LISA C. |
| **Subject:** | F30200301218, Borden |



borden resv of
rghts ltr fo...

roposed R/R and demand for appraisal.  Please advise if my selection of our appraiser is OK.  You should have his resume.  I spoke with Schumann today.  He has not scheduled with the insured's consultant a meeting to review the content's inventory.  Do you want to reassign to our appraiser to handle the contents since he is in Erie?  Thanks,

David J. Bennett, CPCU
Branch Manager
Amica Insurance Company
Pittsburgh Regional Office
888-796-6824 Ext. 32014
Fax: 724-745-2133
dbennett@amica.com



PLAINTIFF'S
EXHIBIT
3-26
PENGAD 800-631-6989

1

AM595



**AUTO   HOME   LIFE**

Amica Mutual Insurance Company
Amica Life Insurance Company
Amica General Agency, Inc.

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

May 2, 2003

Dr. Jonathan Borden and
Mrs. Amy Borden
4838 Wolf Road
Erie, PA 16505

Our File No.: F30200301218
Date of Loss: February 16, 2003

Dear Dr. and Mrs. Borden:

Property Claim Services has written a dwelling repair estimate in the amount of $327,999.14 which was agreed to by Visions Corp. Your consultant, Giordano Associates has written an estimate in the amount of $680,492.21.

At our meeting on April 15, 2003, given the large variation in estimated damage it was our conclusion that it would be more expeditious to proceed with appraisal. You have not provided an estimate from a qualified contractor and we believe your consultant's estimate has overstated the loss. We advised your consultant that we would be demanding an Appraisal as provided in your Homeowners Policy.

Please refer to Page 17 or 26 of your HO-5, edition 4-01, Homeowners Policy, **Section I - Conditions**, which states:

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premise** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. The decision agreed to by any two will set the amount of loss.



PLAINTIFF'S
EXHIBIT
3-27

Web Site: www.amica.com
Offices Countrywide: 800-24-AMICA (800-242-6422)

AM603



**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

**PITTSBURGH REGIONAL OFFICE**
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

AUTO  HOME  LIFE

Dr. Jonathan Borden and
Mrs. Amy Borden
Page Two

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

     We select as our Appraiser, Jack Owens, CPCU of P.O. Box 72, McKean, Pennsylvania 16426. His telephone number is 814-476-9941.

     The basement of your house remains in the same condition it was following the fire.

     Please refer to Page 13 of 26 of your HO-5, Homeowners Policy, **Section I - Exclusions**, which states:

    A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    **5. Neglect**

       Neglect means neglect of an **insured** to use all reasonable means to save and preserve property at and after the time of loss.

     Please refer to Page 14 of 26 of your HO-5, Homeowners Policy, **Section I – Conditions**, which states:

    **B. Duties After Loss**

       In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These

Amica Mutual Insurance Company   PITTSBURGH REGIONAL OFFICE
Amica Life Insurance Company     1500 Corporate Drive, Suite 250
Amica General Agency, Inc.       Canonsburg, Pennsylvania 15317-B574



AUTO  HOME  LIFE

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

Dr. Jonathan Borden and
Mrs. Amy Borden
Page Three

> duties must be performed either by you, or an **insured** seeking coverage, or a representative of either:
>
> 4. Protect the property from further damage. If the repairs to the property are required, you must:
>
>    a. Make reasonable and necessary repairs to protect the property; and
>
>    b. Keep an accurate record of repair expenses;

There may also be other reasons coverage does not apply. We specifically reserve the right to enforce any exclusion, condition, or limitation of coverage stated in the policy which may become evident during our investigation. Attached are copies of the policy pages referenced above.

Our investigation of this claim should not be construed as a waiver of our rights to deny coverage for this instance for the reasons previously mentioned. Also, you are not waiving any of your rights under this policy.

I look forward to your itemized contents inventory and supporting documentation.

In addition, please submit the hotel and meal expense receipts incurred prior to the house rental for our consideration.

If you have any questions, please let me know. I look forward to your selection of an Appraiser.

Very truly yours,

David J. Bennett, CPCU, AIC
Amica Mutual Insurance Company
Branch Manager



**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

AUTO   HOME   LIFE

DJB:dct1, 3
Attachments

cc:  Giordano and Associates, Inc.
     71 High Street
     East Haven, CT  06512



AUTO  HOME  LIFE

**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

May 6, 2003

Mr. Jack Owens, CPCU, AIC
York Claim Service, Inc.
P.O. Box 72
McKean, PA  16426

Our File No.: F30200301218
Our Insured: Dr. Jonathan Borden and
Mrs. Amy Borden
Date of Loss: February 16, 2003

Dear Mr. Ownes:

This will confirm our request for you to act as our appraiser in the above captioned fire loss.

I have enclosed a copy of Property Claims Services estimate prepared by John Schumann who is our General Adjuster. The estimate totals $327,999.14. I will send color photos of the damage under separate cover. I have also enclosed Visions Corp letter of March 7, 2003. This contractor indicates the project can be done for Property Claims Services estimate.

I have also enclosed a copy of our insureds' consultant's estimate of $680,492.21 prepared by Anthony M. Parise of Giordano and Associates, Inc. Address: 71 High Street, East Haven, Ct 06512. Their telephone number is 800-469-7477.

I have also enclosed a copy of Mr. Schumann's partial contents inventory on contents he could identify. We have not received the contents inventory from Giordano and Associates. I would like your services to include adjustment of the contents claim with Giordano and Associates.

Should you have any questions or need any additional information, please let me know.

Very truly yours,

David J. Bennett, CPCU, AIC
Amica Mutual Insurance Company
Branch Manager

PLAINTIFF'S
EXHIBIT
3-28
PENGAD 800-631-6989

Web Site: www.amica.com
Offices Countrywide: 800-24-AMICA (800-242-6422)

AM6 10



**COMMONWEALTH OF PENNSYLVANIA**
**INSURANCE DEPARTMENT**
BUREAU OF CONSUMER SERVICES
Post Office Box 6142
808 Renaissance Center
Erie, PA 16512

www.insurance.state.pa.us

PITTSBURGH. CLAIMS
MAY 1 2 2003
Ans. _____

Direct Dial: (814) 871-4466
Fax: (814) 871-4888
Consumer Hotline: 1-877-881-6388

May 7, 2003

Amica Insurance Company
Pittsburgh Regional Office
1500 Corporate Drive, Suite 250
Pittsburgh, PA  15317-8574
Attn: David Bennett

RE:    Department File No:  03-407-90546
       Complainant: Jonathan Borden

Dear Mr. Bennett:

Thank you for the update on Mr. Borden's complaint.

When you have completed your investigation, I will need a response that includes the terms of the settlement and the settlement amount paid.  This information is needed to close our file.

Your prompt attention to this matter is appreciated.

Sincerely,

Joseph P. Monaco, Consumer Services Investigator
Erie Regional Office

Encl



PLAINTIFF'S
EXHIBIT
3 29

AM660

**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574



AUTO  HOME  LIFE

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

May 7, 2003

Anthony M. Palise, CPCU
Giordano Associates, Inc.
71 High St.
East Haven, CT  06512

Our File No.: F30200301216
Our Insured: Jonathan Borden and
Amy Borden
Date of Loss: February 16, 2003

Dear Mr. Palise:

This will confirm our discussions at the April 15, 2003 meeting.

We agreed there were items that did not dry clean or launder appropriately. You agreed to include these items in your contents inventory. We also agreed there were items that did clean.

We look forward to your completed contents inventory as well as the Additional Living Expense receipts for the hotel and meal expenses incurred prior to the house rental.

The basement remains in the same condition following the loss. You stated that we will not be responsible for mold or other damage in the basement as a result of it remaining in its current condition.

At our meeting, it was our conclusion the large variation and the estimated damage would be most expeditiously resolved through Appraisal. As we indicated, we would be demanding appraisal.

I have enclosed a copy of our May 2, 2003 letter to our insureds indicating we are proceeding with the Appraisal.

I look forward to hearing from you.

Very truly yours,

David J. Bennett, CPCU, AIC
Amica Mutual Insurance Company
Branch Manager



PLAINTIFF'S
EXHIBIT
3-30

PENGAD 800-831-6989

Web Site: www.amica.com
Offices Countrywide: 800-24-AMICA (800-242-6422)

AM612

**Amica Mutual Insurance Company**
**Amica Life Insurance Company**
**Amica General Agency, Inc.**

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133



AUTO  HOME  LIFE

AppraisalAnthony M. Palise, CPCU
Giordano Associates, Inc.
Page Two

DJB:dcf1, 2

Enclosure

Cc:  Dr. Jonathan Borden and
     Mrs. Amy Borden
     4838 Wolf Road
     Erie, PA  16505

# AMICA MUTUAL INSURANCE COMPANY

Mail: Amica Mutual Insurance Company
1500 Corporate Drive
Suite 250
Canonsburg, PA 15317-8574

FAX: (724) 745-2133

Date: __5/8/03__    No. of pages including cover: __1__

To: __John Schumann__

From: __David J. Bennett__

Comments: __F30200301218, Borden__

Please forward your documentation on the content's loss from Visions Corp.

Also, I need your recommendations on the Coldwell Banker's ALE claim.

Since we have assigned the claim to an appraiser, you may close your file.

The appraiser will attempt to conclude the content's claim.

I appreciate your prompt and thorough work in difficult weather on this claim.

Your extra effort with these insureds is recognized and very much appreciated.

I will let you know the outcome. Thanks for everything John!

*It's been a pleasure working on this difficult claim w/ you*
*thanks*
*David.*

If this transmission is incomplete or the clarity unacceptable, please call 1-888-67-AMICA.



PLAINTIFF'S
EXHIBIT
3-31



AM614



**AUTO   HOME   LIFE**

Amica Mutual Insurance Company
Amica Life Insurance Company
Amica General Agency, Inc.

PITTSBURGH REGIONAL OFFICE
1500 Corporate Drive, Suite 250
Canonsburg, Pennsylvania 15317-8574

Toll Free: 888-67-AMICA (888-672-6422)
Fax: (724) 745-2133

May 20, 2003

Dr. Jonathan Borden and
Mrs. Amy Borden
4838 Wolf Road
Erie, PA  16505

Our File No.: F30200301218
Date of Loss: February 16, 2003

Dear Dr. and Mrs. Borden:

Enclosed is our check for $1,632.71 based upon the enclosed March 17, 2003 invoice for additional living expense services performed at your rental house. Please note the check is made payable to Coldwell Banker.

If these services meet your approval please forward this check to Coldwell Banker. If you have selected a building contractor, I look forward to a copy of his estimate of the dwelling damages.

In follow-up to our May 2, 2003 letter, I look forward to your selection of an appraiser.

I also look forward to your itemized contents inventory and supporting documentation. Please submit the hotel and meal expense receipts incurred prior to the house rental for our consideration.

I look forward to hearing from you.

Very truly yours,

David J. Bennett, CPCU, AIC
Amica Mutual Insurance Company
Branch Manager

DJB:dctl

Enclosure
cc: Giordano and Associates, Inc.
    71 High Street
    East Haven, CT  06512



PLAINTIFF'S
EXHIBIT
332

PENGAD 800-631-6989

Web Site: www.amica.com
Offices Countrywide: 800-24-AMICA (800-242-6422)

**AM1622**

PITTSBURGH R.O.
MAY 23 2003

# MACDONALD ILLIG JONES & BRITTON LLP

ATTORNEYS AT LAW

100 STATE STREET, SUITE 700

ERIE, PENNSYLVANIA 16507-1459

814-870-7600

FAX 814-454-4647

www.macdonaldillig.com

Direct Dial 814-870-7650

E-Mail: tjones@macdonaldillig.com

May 22, 2003

VIA FACSIMILE (1-724-745-2133)
AND REGULAR MAIL

David J. Bennett, CPCU, AIC
Branch Manager
Amica Mutual Insurance Company
Pittsburgh Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, PA 15317-8574

    Re:  Our Clients:    Dr. and Mrs. Jonathan Borden
         Your File No.:  F30200301218
         Date of Loss:   February 16, 2003

Dear Mr. Bennett:

    Please be advised that this Firm will be representing the interests of Dr. and Mrs. Borden in connection with their residential fire loss claim.

    It is my understanding that you have selected as your appraiser Jack Owens, CPCU, of P.O. Box 72, McKean, Pennsylvania 16426. We have chosen as our appraiser Anthony N. Parise, CIC, CPCU, AIC, of Giordano Associates, Inc., 71 High Street, East Haven, Connecticut 06512. Mr. Parise's telephone number is 800-469-7477.

    We anticipate receiving an amended and supplemental damage appraisal, which we should be able to provide to you within a week to ten days.



PLAINTIFF'S
EXHIBIT
3-33

AM625

MacDONALD ILLIG JONES & BRITTON LLP

PITTSBURGH
MAY 23 2003
Ans. _____

May 22, 2003
Page   -2-

Your thoughts with respect to the selection of an umpire would be appreciated. Certainly, we are in a position to provide the names of at least two highly qualified contractors who might act in that capacity.

Your letter of May 2, 2003 references provisions of the policy relating to **neglect** and **duties after loss.** If you feel that in some fashion the Bordens have failed to protect the property and/or not used all reasonable means to save and preserve the property following the loss, we would appreciate being advised to that effect immediately. So far as I am able to determine, all efforts to save and preserve the property and prevent further damage, as well as all efforts to effect temporary necessary repairs, were performed by persons hired by Amica for this purpose.

Finally, it is very surprising to us that Amica has elected to proceed with the appraisal process despite obvious flaws, omissions and errors in its contractor's estimate. This, in our judgment, is strong evidence of bad faith, and we are actively considering the filing of a bad faith cause of action.

Please advise at your next convenience with respect to the selection of an umpire, and whether you would like us to provide you with the names of qualified contractors who might serve in that capacity.

Very truly yours,

MacDONALD ILLIG JONES & BRITTON LLP

By_____
            T. Warren Jones

TWJ/krm
758240/19196.0000C



**Paul K. Geer**

# DiBELLA & GEER, P.C.
## Attorneys At Law

312 Boulevard of the Allies
Pittsburgh, Pennsylvania 15222
Telephone: 412-261-2900  FAX: 412-261-3222
www.dibella-geer.com

May 28, 2003

T. Warren Jones, Esquire
MacDonald Illig Jones & Britton, LLP
100 State Street, Suite 700
Erie, PA 16507-1459

> RE:    Amica Insured:    Jonathan Borden and Amy Borden
>        File No.:         F30200301218
>        Date of Loss:     February 16, 2003

Dear Mr. Jones:

This will acknowledge receipt of your letter of May 22, 2003 to David J. Bennett of Amica Mutual Insurance Company. Amica has retained our firm to represent Amica in this matter.

As discussed in our telephone conversation of May 27th, I only recently reviewed the file and thus do not have a detailed knowledge of what has occurred up to this point. Based upon what I have learned, however, I can respond in part to your letter.

In response to your question about the neglect exclusion in the policy, my client has a serious concern. The insured has a duty to protect the property from further damage. Following the loss, sufficient monies were advanced to your client to permit the cleanup and drying out of the building. For reasons which we do not fully understand, the payment of the undisputed amount of the claims was rejected by your client and/or their public adjuster despite the fact that the payment was made without prejudice to them. If proper drying of water damage following a fire has not occurred, the result could be further damage to the building or the development of health hazards. We would appreciate your advice as to whether the insured has taken measures to preserve and protect the property following the loss and if so, what those measures are. I also want to again confirm the agreement that Amica would not be responsible for mold (or other damage) in the basement which results from it remaining in its post-fire condition.



PLAINTIFF'S
EXHIBIT
3-34
PENGAD 800-631-6989

AM661

### DiBELLA & GEER, P.C.

Please be advised that we would like to send you the undisputed payment and perhaps you can convince your client that there is absolutely no problem or prejudice to the acceptance and negotiation of the check. If so, I will obtain a replacement check as soon as possible.

As we also discussed in our telephone conversation of May 27th, I have some concern as to whether your client's public adjuster, who has been working on this file from the beginning, is in fact "a competent and impartial appraiser". After our telephone conversation, I had the opportunity to do some preliminary research as to whether there was case law on the issue of what is a "competent and disinterested appraiser". In *Central Life Insurance Company v. Aetna Casualty and Surety Company*, 466 N.W. 2d 257 Iowa 1991, the Supreme Court of Iowa ruled that a contingency fee arrangement between an insured and an appointed appraiser renders the appraiser, per se, unfit. Although I found no cases in Pennsylvania interpreting this particular policy language, I believe the Supreme Court of Iowa's reasoning is compelling. An appraiser who has a financial interest in the outcome of the case and will receive a percentage of the final appraisal amount is unlikely to be impartial.

The appraiser appointed by Amica, Jack Owens, has never previously worked for Amica and has done no previous work on this file. I believe his qualifications as a claim adjuster are beyond question or dispute.

In response to your question about the appointment of an umpire, I believe the insurance contract makes that the responsibility of the appraisers.

Amica's decision to demand appraisal is driven largely by the fact that the scope of damages in the two contractors' estimates is in dispute. From review of the photographs, it appears to me that this was a partial loss. Is there any reason why the interior of the building should be gutted and rebuilt? Why should Amica accept a proposed scope of damage presented by your clients and their adjuster which suggests that areas damaged only by smoke and water should be gutted and rebuilt?

In response to our discussion as to whether a meeting between adjusters might be prudent before going through the appraisal process, I discussed this with my client and was advised that one of the reasons that we proceeded with the appraisal in the building was due to the fact that the appraisal was suggested by the representative of the Pennsylvania Insurance Commissioner's office who called in follow up to your clients' complaint. While Amica will not waive its right to appraisal, we have no objection to another meeting between the adjusters. Perhaps this can be scheduled in conjunction with a meeting on the contents loss.

It is my client's intention to handle this claim both expeditiously and fairly. I am bringing these questions to your attention at this time so that we can do whatever

## DiBELLA & GEER, P.C.

is necessary to resolve any issues which exist and move the claim toward resolution.  I look forward to hearing from you.

Very truly yours,

PAUL K. GEER

PKG:jp

cc:    David J. Bennett, CPCU, AIC
       John Schumann
       Jack Owens, CPCU, AIC

AM663

# MacDonald Illig Jones & Britton llp

ATTORNEYS AT LAW

100 STATE STREET, SUITE 700

ERIE, PENNSYLVANIA 16507-1459

814-870-7600

FAX 814-454-4647

www.macdonaldillig.com

Direct Dial 814-870-7650

E-Mail: tjones@macdonaldillig.com

June 5, 2003

T. WARREN JONES
EDWARD W. GOEBEL, JR.
  (REG. PAT. ATTORNEY)
JAMES D. CULLEN
WILLIAM H. BROWN
ROGER H. TAFT
  (ALSO ADMITTED IN NY)
DAVID R. HOLLAND
W. PATRICK DELANEY
JAMES M. ANTOUN
JAMES R. WALCZAK
  (ALSO ADMITTED IN DC)
RUSSELL S. WARNER
MARCIA H. HALLER
JAMES E. SPODEN
  (ALSO ADMITTED IN IL)
DALE R. HUNTLEY

JOHN W. DRASKOVIC
JOHN J. MEHLER
MATTHEW W.
McCULLOUGH
SUSAN FUHRER REITER
RICHARD J. PARKS
  (ALSO ADMITTED IN OH)
MARK J. SHAW
JOHN F. MIZNER
  (ALSO ADMITTED IN NY)
CRAIG R.F. MURPHEY
DANIEL M. MILLER
SHAUN B. ADRIAN
KIMBERLY A. OAKES
ERIC J. PURCHASE
LISA SMITH BECK
STEVEN C. BECKMAN

LAURA POPOFF STEFANOVSKI
JOHN A. LAUER
BRUCE L. DECKER, JR.
WALTER B. DEACON, III
  (ALSO ADMITTED IN WY)
GREGORY F. ZIMMERMAN
ROBERT E. GANDLEY
CATHERINE MOODEY DOYLE
LAURA J. MOTT
REBECCA A. HERMAN
JON L. WOODARD
  (REG. PAT. ATTORNEY)
DAVID F. DIETMAN
GABRIEL J. OROS
KATHLEEN HAYNE
ROBERTSON
SCOTT T. STROUP

JOHN E. BRITTON
  (OF COUNSEL)
JOHN D. WILSON
  (OF COUNSEL)
JOHN J. STROH
  (OF COUNSEL)
NORMAN H. STARK
  (OF COUNSEL)
  -
HENRY A.
MacDONALD
  (1928-1984)
WILLIAM P. ILLIG
  (1945-1989)
FREDERICK F. JONES
  (1939-1977)
IRVING OLDS
MURPHY

VIA FAX (412-261-3222)
AND REGULAR MAIL

Paul K. Geer, Esquire
DiBella & Geer, P.C.
312 Boulevard of the Allies
Suite 300
Pittsburgh, PA 15222

      Re:   Amica Insured:   Jonathan and Amy Borden
            Your File No.:   F30200301218
            Date of Loss:    February 16, 2003
            Policy No.:      6308371183

Dear Mr. Geer:

      This is in response to your letter of May 28, 2003.

      Regarding the undisputed portion of the payment, your offer
to obtain a replacement check is appreciated. The check will be
accepted with the clear understanding that our clients are in no
way prejudiced, with respect to the pursuit of their claim, by
accepting this undisputed payment. The Bordens initially refused
the check because it included the language "actual cash value",
which suggested to them that the check was being tendered in
full satisfaction of Amica's obligations.

      I am meeting with the Bordens, the adjuster, Mr. Parise, and
our consultant building contractor one week from today to review
both estimates. At that same time, our experts will assess the



JUN 6 - 2003

PLAINTIFF'S
EXHIBIT
3-35
PENGAD 800-631-6989

AM664

MacDonald Illig Jones & Britton LLP

June 5, 2003
Page  -2-

issue of whether it is necessary to take additional measures to preserve and protect the property pending the completion of the repairs. You are reminded, however, that Amica engaged Visions to perform those repairs, and never advised the Bordens that it was urgent to take additional protection measures at any time.

I am somewhat curious about the question which you asked on the second page of your letter as follows: "Why should Amica accept a proposed scope of damage presented by your clients and their adjuster which suggests that areas damaged only by smoke and water should be gutted and rebuilt?" It would appear to me that to ask the question is to answer it. This is Amica's Platinum policy; and it purports to provide for replacement cost of that part of the building damaged, with materials of like kind and quality. Simply stated, therefore, it would seem that areas damaged by smoke and water should be "replaced." This is precisely the sort of problem which caused my clients to become concerned about whether Amica is acting in good faith.

Following our phone conversation, and my receipt of your letter, I had a call from John Schumann, who prepared the repair estimate for Amica. While I was somewhat surprised to be contacted directly by Mr. Schumann, I was certainly glad to hear from him. He advised during our brief phone discussion that he had been instructed by Amica to further review this matter in order to determine whether his repair estimate was adequate under the circumstances. I advised Mr. Schumann of our meeting scheduled for June 12, 2003, and told him we would be in touch shortly after that meeting to further discuss the claim. Should I make those arrangements through your office, or am I able to be directly in touch with Mr. Schumann?

Finally, while I have reviewed the case law relating to the selection of an appraiser, I don't think we have a need to resolve that issue immediately. Of course, if we can't get this matter resolved amicably, we'll make a prompt decision regarding our appraiser.

AM665

MacDONALD ILLIG JONES & BRITTON LLP

June 5, 2003
Page  -3-


        I'll look forward to hearing from you in the near future.
We are pleased that it is Amica's intention to handle this claim
both expeditiously and fairly as your correspondence suggests.

                        Very truly yours,

                        MacDONALD ILLIG JONES & BRITTON LLP



                        By_____
                             T. Warren Jones

TWJ/krm
760661/19196.0000C

cc:  Dr. and Mrs. Jonathan Borden
     5011 Wolf Road
     Erie, PA 16505
     **VIA REGULAR MAIL**

AM666

# MACDONALD ILLIG JONES & BRITTON LLP

ATTORNEYS AT LAW

100 STATE STREET, SUITE 700

ERIE, PENNSYLVANIA 16507-1459

814-870-7600

FAX 814-454-4647

www.macdonaldillig.com

Direct Dial 814-870-7650

E-Mail: tjones@macdonaldillig.com

June 16, 2003

ARREN JONES
WARD W. GOEBEL, JR.
(REG. PAT. ATTORNEY)
JAMES. D. CULLEN
WILLIAM R. BROWN
ROGER H. TAFT
(ALSO ADMITTED IN NY)
DAVID B. HOLLAND
W. PATRICK DELANEY
JAMES M. ANTOUN
JAMES R. WALCZAK
(ALSO ADMITTED IN DC)
RUSSELL S. WARNER
MARCIA H. HALLER
JAMES B. SPODEN
(ALSO ADMITTED IN IL)
DALE R. HUNTLEY

JOHN W. DRASKOVIC
JOHN J. MEHLER
MATTHEW W.
McCULLOUGH
SUSAN FUHRER REITER
RICHARD J. PARKS
(ALSO ADMITTED IN OH)
MARK J. SHAW
JOHN F. MIZNER
(ALSO ADMITTED IN NY)
CRAIG R.P. MURPHEY
DANIEL M. MILLER
SHAUN B. ADRIAN
KIMBERLY A. OAKES
ERIC J. PURCHASE
LISA SMITH BECK
STEVEN C. BECKMAN

LAURA POPOFF STEFANOVSKI
JOHN A. LAUER
BRUCE L. DECKER, JR.
WALTER R. DEACON, III
(ALSO ADMITTED IN WY)
GREGORY P. ZIMMERMAN
ROBERT E. GANDLEY
CATHERINE MOODEY DOYLE
LAURA J. MOTT
REBECCA A. HERMAN
JON L. WOODARD
(ENG. PAT. ATTORNEY)
DAVID F. DIETEMAN
GABRIEL J. OROS
KATHLEEN HAYNE
ROBERTSON
SCOTT T. STROUPE

JOHN E. BRITTON
(OF COUNSEL)
JOHN D. WILSON
(OF COUNSEL)
JOHN J. STROH
(OF COUNSEL)
NORMAN H. STARK
(OF COUNSEL)
-
HENRY A.
MacDONALD
(1926-1984)
WILLIAM F. ILLIG
(1246-1989)
FREDERICK P. JONES
(1999-1977)
IRVING OLDS
MURPHY

**VIA FAX (412-261-3222)**
**AND REGULAR MAIL**

Paul K. Geer, Esquire
DiBella & Geer, P.C.
312 Boulevard of the Allies
Suite 300
Pittsburgh, PA 15222

> Re:  **Amica Insured:**   **Jonathan and Amy Borden**
> **Your File No.:**   **F30200301218**
> **Date of Loss:**   **February 16, 2003**
> **Policy No.:**   **6308371183**

Dear Mr. Geer:

Somewhat to my surprise, I've not heard from you in response to my fax of June 5, 2003, a copy of which is attached.

I met with our clients and damage experts on June 12, 2003, as I indicated we would do in my earlier correspondence. Immediately following that meeting, I phoned Mr. Schumann to advise him that we would be happy to meet with him on June 25, 2003 and/or June 26, 2003, in Erie, to review both the building and contents claims. We took the liberty of contacting Mr. Schumann directly since he had previously contacted me, and I did not yet have a response from you to my June 5, 2003 correspondence.

It is my understanding that the meeting arrangements will be confirmed and finalized by Mr. Schumann and the Bordens' representative, Mr. Anthony Parise. Also in attendance at the meeting, at least as it relates to the residence itself, will be Mr. David Haller, the Bordens' building contractor. Mr. Haller



PLAINTIFF'S
EXHIBIT
3-36

PENGAD 800-631-6989

AM667

MacDONALD ILLIG JONES & BRITTON LLP

June 16, 2003
Page -2-

will have available at the meeting the rebuilding, restoration and replacement estimates which he is presently compiling.

Prior to the meeting, we would appreciate hearing from you regarding the company's position on the measure of damage in this instance. Specifically, we'd like your thoughts with respect to Amica's obligation to "replace" materials damaged in the fire. Frankly, I have read and re-read the pertinent provisions of the policy, and I remain mystified by the following comment in your letter to me of May 28, 2003: "Why should Amica accept a proposed scope of damage presented by your clients and their adjuster which suggests that areas damaged only by smoke and water should be gutted and rebuilt?"

Obviously, the answer to your question, in our view, is that this is precisely what Amica is required to do by the terms of its own policy! Frankly, this is one of the reasons that we presently are contemplating filing a bad faith action. (There are other reasons, as well.) However, we also believe that everyone should be on the same page regarding the measure of damage by the time of the next meeting with Mr. Schumann.

Also, at your next convenience, I'd like to know more about the process which Amica utilized to select Visions to do the temporary repairs. In other words, what did Amica do to assure itself that Visions was a capable, qualified and well-regarded building contractor experienced in the construction of "high-end" residential dwellings?

I'll look forward to hearing from you prior to our next meeting.

Very truly yours,

MacDONALD ILLIG JONES & BRITTON LLP

By_____
                T. Warren Jones

TWJ/krm
Enclosure
762347/19196.0000C

AM668

MacDonald Illig Jones & Britton llp

June 16, 2003
Page  -3-


cc:  Dr. and Mrs. Jonathan Borden
     5011 Wolf Road
     Erie, PA 16505
     (with enclosure)

     Anthony N. Parise, CIC, CPCU, AIC
     Giordano Associates, Inc.
     71 High Street
     P.O. Box 469
     East Haven, CT 06512
     (with enclosure)

     David J. Bennett, CPCU, AIC (Your File No. F30200301218)
     Branch Manager
     Amica Mutual Insurance Company
     Pittsburgh Regional Office
     1500 Corporate Drive, Suite 250
     Canonsburg, PA 15317-8574
     (with enclosure)


AM669



Paul K. Geer

## DiBELLA & GEER, P.C.
### Attorneys At Law

312 Boulevard of the Allies
Pittsburgh, Pennsylvania 15222
Telephone: 412-261-2900  FAX: 412-261-3222
www.dibella-geer.com

June 16, 2003

**VIA FACSIMILE**

T. Warren Jones, Esquire
MacDonald Illig Jones & Britton, LLP
100 State Street, Suite 700
Erie, PA 16507-1459

     RE:    Amica Insured:    Jonathan Borden and Amy Borden
            File No.:          F30200301218
            Date of Loss:    February 16, 2003

Dear Mr. Jones:

        I would like to expedite the scheduling of the meeting discussed in previous correspondence. Since you have called into question the contractor retained by my client, we have decided to retain a second contractor in order to obtain a second opinion regarding the scope and cost of damages. We would like to have our new contractor visit the scene at the same time that the meeting is to be held with Mr. Schumann. Mr. Jones unfortunately, is leaving on vacation on June 25th. We would like to schedule the meeting as soon as possible. John Schumann and Dan Jones are both available Thursday and Friday of this week, Monday and Tuesday of next week are also possibilities. Please let me know which dates are convenient for your representatives.

        It is still our intention to move promptly and expeditiously toward an appraisal if the issues which have arisen cannot be agreed upon. I would appreciate it if you would address the issues concerning your appraiser which we discussed in my letter of May 28, 2003 so that the appraisal process can move forward.

        I will respond to the other issues in your letters under separate cover.

        Very truly yours,

        *Paul K. Geer/jp*

        PAUL K. GEER

PKG:jp
cc:    David J. Bennett, CPCU, AIC
       Mr. John Schumann
       Mr. Dan Jones

PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT
3-37

AM670



Paul K. Geer

# DiBELLA & GEER, P.C.
## Attorneys At Law

312 Boulevard of the Allies
Pittsburgh, Pennsylvania 15222
Telephone: 412-261-2900  FAX: 412-261-3222
www.dibella-geer.com

July 23, 2003

VIA FACSIMILE

T. Warren Jones, Esquire
MacDonald Illig Jones & Britton, LLP
100 State Street, Suite 700
Erie, PA 16507-1459

> RE:   Amica Insured:   Jonathan Borden and Amy Borden
>         File No.:           F30200301218
>         Date of Loss:    February 16, 2003

Dear Mr. Jones:

I recently spoke with our contractor, Dan Jones. It appears that the scope of damage to the building is broader than what was previously estimated by Amica's representatives. During the course of my conversation with Mr. Jones, he inquired as to whether your adjuster or contractor obtained any subcontractors' bids. If so and you are willing to share those estimates, Mr. Jones would like to consider them in his estimate.

Mr. Jones advises me that he believes his estimate will be complete by the end of the month. In the interim, I am in agreement that we continue to hold off on the appraisal.

Very truly yours,

PAUL K. GEER

PKG:jp



PLAINTIFF'S EXHIBIT
3-38
PENGAD 800-631-6989

AM686

## DiBELLA & GEER, P.C.

bcc:    David J. Bennett, CPCU, AIC

AM687

# MacDonald Illig Jones & Britton LLP

ATTORNEYS AT LAW

100 STATE STREET, SUITE 700

ERIE, PENNSYLVANIA 16507-1459

814-870-7600

FAX 814-454-4647

www.macdonaldillig.com

Direct Dial 814-870-7650

E-Mail: tjones@macdonaldillig.com

WARREN JONES
EDWARD W. GOEBEL, JR.
(LEO. PAT. ATTORNEY)
JAMES D. CULLEN
WILLIAM D. BROWN
ROGER H. TAFT
(ALSO ADMITTED IN NY)
DAVID J. HOLLAND
W. PATRICK DELANEY
JAMES M. ANTOUN
JAMES A. WALCZAK
(ALSO ADMITTED IN OH)
RUSSELL S. WARNER
MARCIA H. HALLER
JAMES E. SPODEN
(ALSO ADMITTED IN IL)
DALE E. HUNTLEY

JOHN W. DRASKOVIC
JOHN J. MEHLER
MATTHEW W. McCULLOUGH
SUSAN FUHRER REITER
RICHARD J. PARKS
(ALSO ADMITTED IN OH)
MARK J. SHAW
JOHN F. MIZNER
(ALSO ADMITTED IN NY)
CRAIG R.P. MURPHEY
DANIEL M. MILLER
SHAUN B. ADRIAN
KIMBERLY A. OAKES
ERIC J. PURCHASE
LISA SMITH RECH
STEVEN C. BECKMAN
THOMAS A. PENDLETON

LAURA POPOFF STEFANOVSKI
JOHN A. LAUER
BRUCE L. DECKER, JR.
WALTER B. DEACON, III
(ALSO ADMITTED IN NY)
GREGORY P. ZIMMERMAN
ROBERT S. GANDLEY
CATHERINE MOODEY DOYLE
LAURA J. MOTT
REBECCA A. NIEMAN
JON L. WOODARD
(REG. PAT. ATTORNEY)
DAVID F. DIETZMAN
GABRIEL J. ORDS
KATHLEEN HAYNE
ROBERTSON

JOHN B. BRITTON
(OF COUNSEL)
JOHN D. WILSON
(OF COUNSEL)
JOHN J. STROH
(OF COUNSEL)
NORMAN H. STARK
(OF COUNSEL)
-
HENRY A.
MacDONALD
(1920-2004)
WILLIAM F. ILLIG
(1916-2000)
FREDERICK F. JONES
(1946-1999)
IRVING OLDS
MURPHY

July 31, 2003

**VIA FACSIMILE (412-261-3222)**
**AND REGULAR MAIL**

Paul K. Geer, Esquire
DiBella & Geer, P.C.
312 Boulevard of the Allies
Suite 300
Pittsburgh, PA 15222

> Re:  Amica Insured:   **Jonathan and Amy Borden**
> Loss Address:   **4838 Wolf Road, Erie, PA 16505**
> Your File No.:   **F3020030121B**
> Date of Loss:   **February 16, 2003**
> Policy No.:   **6308371183**

Dear Mr. Geer:

In response to my letter of July 28, 2003, I received considerable information from both Mr. Parise and Mr. Haller regarding subcontractor issues. Copies of that information are attached for your benefit.

If you have further questions or concerns, don't hesitate to be in touch.

Very truly yours,

MacDONALD ILLIG JONES & BRITTON LLP

By_____
T. Warren Jones

TWJ/krm/770171/19196.0000
Enclosures

PLAINTIFF'S EXHIBIT 3-39

PENGAD 800-631-6989

AM693

MacDonald Illig Jones & Britton LLP

July 31, 2003
Page  -2-


cc:  Jonathan Borden, M.D.
     5011 Wolf Road
     Erie, PA 16505
     (with enclosures)

     Richard M. Borden
     32 Lakeview Drive
     West Hartford, CT 06117
     (with enclosures)

     Anthony N. Parise, CIC, CPCU, AIC
     Giordano Associates, Inc.
     71 High Street
     P.O. Box 469
     East Haven, CT 06512

     David J. Haller
     David J. Haller Construction
     4845 West Lake Road
     Erie, PA 16505

AM694



**DAVID J. HALLER**
CONSTRUCTION INC.

JUL 31 2003

# Fax

| To: | T. Warren Jones | **From:** David |
|---|---|---|
| **Fax:** | 454-4647 | **Pages:** )) |
| **Phone:** | | **Date:** 7/31/2003 |
| **Re:** | Borden | **CC:** |

☐ **Urgent** ☐ **For Review**    ☐ **Please Comment**    x **Please Reply**

● **Comments:**

David

JUL 31 2003

# J. E. Griesbober Plumbing Hydronics
## 857 Ruth Avenue
## Erie, Pennsylvania 16509
## (814) 864-9883

June 1, 2003

Mr. David J. Haller
David J. Haller Construction, Inc.
4241 Neptune Drive
Erie, Pennsylvania 16506

Dear Mr. Haller:

On Thursday May 29, 2003 I inspected the plumbing at the above address. My intent was to determine the cost to re-plumb the house as needed to restore it to its previous conditions. I had previously worked in this home on at least 3 occasions but not in the last 9 years.

My inspection was limited to the East-end of the house and the 5 bathrooms located there. In every case there was severe smoke damage. At best only a few plumbing fixtures could be reused at a cost less than replacing them. In most cases smoke and or water damage would dictate the complete demolition of the bathrooms.

I can say with some degree of confidence that the water heaters and the gas line will have to be replaced in their entirety. The water lines are probably suspect in any area that received significant heat. The plastic waste lines will probably need to be replaced with very few exceptions.

The kitchen plumbing is a total loss.

I was unable to look at the plumbing in the West-end or garage areas. They were inaccessible and I do not have an up to date print.

Any time you try to restore damage of this magnitude you get into costs that equal or exceed what it would have cost to do it from scratch. Demolition and testing of items to be saved, raises the price. From what I have seen and based on houses I have recently plumbed in the same neighborhood and price range, I estimate the repair and replacement of the plumbing system to be approximately $35,000.00 with a wholesale fixture allowance of $15,000.00.

Without accurate prints of what was there or a good list of specifications, this is as accurate I can be with the costs.

Sincerly,

Jim Griesbober
Owner

AM696



# Dave Cardo Electric

Commercial ● Industrial ● Residential
1236 Timber Ridge Drive
Erie, Pennsylvania 16509
(814) 864-3639

DAVE HALLER CONSTRUCTION
4241 NEPTUNE DRIVE
ERIE, PA. 18506

SUBJECT: BORDEN RESIDENCE                       6-12-03

I CONDUCTED A WALK-THRU FOR A ELECTRICAL ESTIMATE OF THE
PROPERTY LOCATED AT 4838 WOLF ROAD TO RE-STORE IT TO ITS
CONDITION PRIOR TO THE FIRE THE HOUSE MUST BE TOTALLY RE-WIRED

WIRING CONCELLED IN THE WALLS CAN NOT BE INSPECTED UNLESS THE
DRYWALL AND INSULATION IS REMOVED. LIGHTING FIXTURES SUCH AS
RECESSED LIGHTS MUST BE REPLACED. RECESSED LIGHTS HAVE
FACTORY INSTALLED THERMAL OVERLOADS AND THE SAFE OPERATION
OF THESE CAN NOT BE ASSUMED DUE TO THE INTENSE HEAT
GENERATED BY THE FIRE.

I WILL NOT GUARANTEE THE INTEGRITY OR GUARENTEE ANY WORK
ASSOCIATED WITH REPAIRING THE EXISTING ELECTRICAL SYSTEM
UNLESS THE HOUSE IS TOTALLY RE-WIRED.

ESTIMATE TO RE-WIRE IS AS FOLLOWS:
INSTALL NEW 400 AMP UNDERGROUND SERVICE WITH 2- 200 AMP MAIN
BREAKER PANELS.  NEW GROUND SYSTEM.

RE-WIRE APPROXIMATELY 292 DEVICES AND LIGHTING OUTLETS. INSTALL
NEW CALL SYSTEM FOR HANDI CAPPED AREA

AS PER THE ABOVE FOR $23,980.00.

ABOVE PRICE DOES NOT INCLUDE PENELEC FEES. YOU SHOULD ALSO
INCLUDE A LIGHTING ALLOWANCE OF $8000.00.

SINCERELY,

DAVE CARDO ELECTRIC

TOTAL P.01

AM697

**Proposal**
Pella Window & Door Company
5044 Peach Street
Erie, PA 16509
Delivery Confirmation 800-222-8771) Brian 127
Phone: 814-866-6569/800-352-0257 Fax: 814-866-2660

**Customer:**

DAVID HALLER

Bus. Phone: ( ) -
Bus. Fax: ( ) -
Cellular: ( ) -

**Project/Ship To:**

Quick Quote Project

4838   WOLFE   RD.

Owner:
Bus. Phone:
Home Phone:

**Proposal:**

| | |
|---|---|
| Date | 06/17/2003 |
| No. | QUICKQUOTE |
| Alternate No. | 38 |
| Need Date | 00/00/00 |
| Sales Rep. Name | |
| Prepared by | |
| Payment Terms | |
| Architect | |

**Comments:**

**Districk View   Item   Qty.   Description**

| | | | | Unit Price | Extended |
|---|---|---|---|---|---|
| Item# 10 | Qty: 1 | 7281 Vent/Fixed XO Sliding French Door, Frame:71-1/4 X 80-1/8: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld Temp IG Glazing, Champ Sliding Screen 2/4 panel, Champ Int Hdwr w/Champ Footbolt, Fins (per design) | | 1,645.48 | 1,645.48 |
| Location: | | | | | |
| R.O: 6'0" X 6' 8-5/8" | | | | 1,645.48 | 1,645.48 |
| WallCond: 4-9/16" | | | | | |

Notes:

| | | | | | |
|---|---|---|---|---|---|
| Item# 15 | Qty: 1 | 7281 Fixed/Vent OX Sliding French Door, Frame:71-1/4 X 80-1/8: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld Temp IG Glazing, Champ Sliding Screen 2/4 panel, Champ Int Hdwr w/Champ Footbolt, Fins (per design) | | 1,645.48 | 1,645.48 |
| Location: | | | | | |
| R.O: 6'0" X 6' 8-5/8" | | | | 1,645.48 | 1,645.48 |
| WallCond: 4-9/16" | | | | | |

Notes:

Proposal - Page 1 of 6

AM698

Proposal for Customer

Project: Quick Quote Project

Quote No.: QUICKQUOTE

Alternate No.: 88

**Outside View**

| Item: | Qty: | Description | Unit Price | Extended |
|---|---|---|---|---|
| **Item# 20**<br>Location:<br>R.O.: 3' 8-3/4" X 4' 5-3/4"<br>WallCond: 4-9/16" | Qty: 3 | **2-wide Casement**<br>A: Left Hinge Casement, Frame:22 X 53: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Right Hinge Casement, Frame:22 X 53: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 765.85 | 2,297.55 |
| **Item# 25**<br>Location:<br>R.O.: 2' 4-1/2" X 3' 6-3/4"<br>WallCond: 4-9/16" | Qty: 1 | Right Hinge Casement, Frame:27-3/4 X 42: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 360.23 | 360.23 |
| **Item# 30**<br>Location:<br>R.O.: 4' 3-3/4" X 5' 7-1/4"<br>WallCond: 4-9/16" | Qty: 1 | **2-wide Casement**<br>A: Left Hinge Casement, Frame:25-1/2 X 66-1/2: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Right Hinge Casement, Frame:25-1/2 X 66-1/2: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 897.96 | 897.96 |
| **Item# 35**<br>Location:<br>R.O.: 12' 8" X 5' 7-1/2"<br>WallCond-1: 3-11/16"<br>WallCond-2: 3-11/16"<br>WallCond-3: 3-11/16" | Qty: 1 | **45 degree bay window**<br>A: Left Hinge Casement, Frame:23 X 67-1/2: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>**Unit Value Added Items:** 3-UNIT GT 3 11/16" & LE 5 3/16" APP - Qty 1<br>B: Fixed Casement, Frame:89 X 67-1/2: Architect Series Classic, Clad, Model 1, White, 1" InsulShld/Clr Temp 6mm Glazing, Fins (per design)<br>C: Right Hinge Casement, Frame:23 X 67-1/2: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>D: 3D DEG PREFAB BAY | 2,701.33 | 2,701.33 |

Notes:

Notes:

Notes:

Notes:

AM699

P.5    814-838-8475    David J. Haller    181:09 03 31 Jul

Proposal for Customer

Project: Quick Quote Project:

Quote No.: QUICKQUOTE

Alternate No.: 88

| Outside View | Item | Qty. | Description | Unit Price | Extended |
|---|---|---|---|---|---|
| | Item# 40<br>Location:<br>R.O: 2' 8-3/4" X 1' 9-3/4"<br>WallCond: 3-11/16" | Qty: 1 | Left Hinge Awning, Frame:33 X 21: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 388.16 | 388.16 |
| | Item# 45<br>Location:<br>R.O: 8'0" X 6' 8-5/8"<br>WallCond: 4-9/16" | Qty: 1 | 9681 Fixed/Vent OX Sliding French Door, Frame:95-1/4 X 80-1/8: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld Temp IG Glazing, Champ Sliding Screen 2/4 panel, Champ Int Hdwr w/Champ Footbolt, 3/4" Rem Trad (muntin pattern: 4Wx3H), Fins (per design) | 1,874.26 | 1,874.26 |
| | Item# 50<br>Location:<br>R.O: 2' 0-3/4" X 6' 0-3/4"<br>WallCond: 4-9/16" | Qty: 2 | Fixed Clad Frame, Frame:24 X 72: Support Products, Clad, Shape 1Z Rectangle, Model 2, White, 5/8" InsulShld IG Glazing, 3/4" Rem Trad Spec (muntin pattern: 2Wx6H), Fins (per design) | 390.53 | 781.06 |
| | Item# 55<br>Location:<br>R.O: 4' 5-3/4" X 7' 2"<br>WallCond: 4-9/16" | Qty: 1 | Half Springline w/ Left Half Springline Sidelight<br>A: 17" x 70" Fixed—used with In-swing Entry Door Sidelight,<br>Frame:15-1/2 X 85-1/2: Support Products, Wood, Half Springline, Model 2, Primed Wood, Primed Steel, 1" Temp Decorative Glass-Guinevere Glazing, 2" Brickmould (per design), Oak Sill<br>B: 70" x 70" Left Hinge In-swing Entry Door, Frame:37-1/2 X 85-1/2: Support Products, Wood, Half Springline, Model 2, Primed Wood, 1" Temp Decorative Glass-Guinevere Glazing, Primed Steel, Latch Bore with Deadbolt, 2-3/4" Backset, Brasstone Zinc Dichromate Hinges, 2" Brickmould (per design), Oak Sill | 1,401.55 | 1,401.55 |

Notes:

Notes:

Notes:

Notes:

AM700

Proposal for Customer

Project: Quick Quote Project

Quote No.: QUICKQUOTE

Alternate No.: 88

**Outside View**

| Item | Qty | Description | Unit Price | Extended |
|---|---|---|---|---|
| Item# 60<br>Location:<br>R.O: 4' 5-3/4" X 7' 2"<br>WallCond: 4-9/16" | Qty: 1 | Half Springline w/ Right Half Springline Sidelight<br>Half Springline w/ Right Half Springline Sidelight<br>A: 3'0" x 7'0" Right Hinge In-swing Entry Door, Frame:37-1/2 X 85-1/2: Support Products, Wood, Half Springline, Model 2, 1" Temp Decorative Glass-Guinevere Glazing, Primed Steel, Latch Bore with Deadbolt, 2-3/4" Backset, Brasstone Zinc Dichromate Hinges, 2" Brickmould (per design), Oak Sill<br>B: 12" x 7'0" Fixed--used with In-swing Entry Door Sidelight, Frame:15-1/2 X 85-1/2: Support Products, Wood, Half Springline, Model 2, Primed Wood, Primed Steel, 1" Temp Decorative Glass-Guinevere Glazing, 2" Brickmould (per design), Oak Sill | 1,401.55 | 1,401.55 |

Notes:

| Item | Qty | Description | Unit Price | Extended |
|---|---|---|---|---|
| Item# 65<br>Location:<br>R.O: 2' 4-1/2" X 4' 8"<br>WallCond: 4-9/16" | Qty: 1 | Left Hinge Casement, Frame:27-3/4 X 55-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 410.69 | 410.69 |

Notes:

| Item | Qty | Description | Unit Price | Extended |
|---|---|---|---|---|
| Item# 70<br>Location:<br>R.O: 18' 3-1/4" X 5' 6-3/4"<br>WallCond-1: 3-11/16"<br>WallCond-2: 3-11/16"<br>WallCond-3: 3-11/16" | Qty: 1 | Casement Composite<br>A: Left Hinge Casement, Frame:23 X 66-3/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>Unit Value Added Items: 3/8" MULL WITH PLYWOOD REINFORCER-BRN - Qty 2, 3-UNIT GT J 11/16" & LE 5 3/16" APP - Qty 1<br>B: Fixed Casement, Frame:71-3/4 X 66-3/4: Architect Series Classic, Clad, Model 1, White, 1" InsulShld/Clr Temp 6mm Glazing, Fins (per design)<br>C: Right Hinge Casement, Frame:23 X 66-3/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 1,878.19 | 1,878.19 |

Notes:

| Item | Qty | Description | Unit Price | Extended |
|---|---|---|---|---|
| Item# 75<br>Location:<br>R.O: 2' 4-1/2" X 3' 5"<br>WallCond: 4-9/16" | Qty: 1 | Right Hinge Casement, Frame:27-3/4 X 40-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 356.57 | 356.57 |

Notes:

Proposal for Customer                    Project: Quick Quote Project                    Quote No.: QUICKQUOTE

Alternate No.: 86

| Outside View | Item | Qty | Description | Unit Price | Extended |
|---|---|---|---|---|---|
| | **Item# 80**<br>Location:<br>R.O.: 4' 4-3/4" X 4' 6-1/2"<br>WallCond: 4-9/16" | Qty: 4 | **2-wide Casement**<br>A: Left Hinge Casement, Frame:26 X 53-3/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Right Hinge Casement, Frame:26 X 53-3/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 802.48 | 3,209.92 |
| Notes: | | | | | |
| | **Item# 85**<br>Location:<br>R.O.: 6' 6-3/4" X 5' 5-3/4"<br>WallCond: 4-9/16" | Qty: 1 | **3-wide Casement**<br>A: Left Hinge Casement, Frame:26 X 65: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Fixed Casement, Frame:26 X 65: Architect Series Classic, Clad, Model 1, White, 5/8" InsulShld IG Glazing, Fins (per design)<br>C: Right Hinge Casement, Frame:26 X 65, Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 1,271.08 | 1,271.08 |
| Notes: | | | | | |
| | **Item# 90**<br>Location:<br>R.O.: 3' 2-1/4" X 6' 10"<br>WallCond: 4-9/16" | Qty: 1 | 3'0" x 6'8" Left Hinge In-swing Entry Door, Frame:37-1/2 X 81-1/2; Support Products, Clad, Twin Half Springline, Model 2, White, 1" Temp Decorative Glass-Guinevere Glazing, Primed Steel, Latch Bore, 2-3/4" Backset, Brasstone Zinc Dichromate Hinges, Composite Sill, Fins (per design) | 869.50 | 869.50 |
| Notes: | | | | | |
| | **Item# 95**<br>Location:<br>R.O.: 2' 10-1/4" X 6' 10"<br>WallCond: 4-9/16" | Qty: 1 | 2'8" x 6'8" Left Hinge In-swing Entry Door, Frame:33-1/2 X 81-1/2; Support Products, Clad, Twin Half Springline, Model 2, White, 1" Temp Decorative Glass-Guinevere Glazing, Primed Steel, Latch Bore, 2-3/8" Backset, Brasstone Zinc Dichromate Hinges, Composite Sill, Fins (per design) | 869.50 | 869.50 |
| Notes: | | | | | |

AM702

Proposal for Customer        Project: Quick Quote Project        Quote No.: QUICKQUOTE        Alternate No.: 88

| Outside View | Item # | Qty. | Description | Unit Price | Extended |
|---|---|---|---|---|---|
| | Item# 100<br>Location:<br>R.O: 4'1-3/4" X 4'5"<br>WallCond: 4-9/16" | Qty: 1 | **2-wide Casement**<br>A: Left Hinge Casement, Frame:24-1/2 X 52-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Right Hinge Casement, Frame:24-1/2 X 52-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 787.86 | 787.86 |
| | Item# 105<br>Location:<br>R.O: 3'1-3/4" X 4'6"<br>WallCond: 4-9/16" | Qty: 4 | **2-wide Casement**<br>A: Left Hinge Casement, Frame:18-1/2 X 53-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Right Hinge Casement, Frame:18-1/2 X 53-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 751.18 | 3,004.72 |
| | Item# 110<br>Location:<br>R.O: 2' 0-3/4" X 2' 0-3/4"<br>WallCond: 4-9/16" | Qty: 1 | Fixed-used w/Casement Transom, Frame:24 X 24: Architect Series Classic, Clad, Model 1 , White, 5/8" InsulShld IG Glazing, Fins (per design) | 249.29 | 249.29 |
| | Item# 115<br>Location:<br>R.O: 4'6" X 4'0"<br>WallCond: 4-9/16" | Qty: 1 | **2-wide Casement**<br>A: Left Hinge Casement, Frame:17-3/4 X 47-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Fixed Casement, Frame:17-3/4 X 47-1/4: Architect Series Classic, Clad, Model 1 , White, 5/8" InsulShld IG Glazing, Fins (per design)<br>C: Right Hinge Casement, Frame:17-3/4 X 47-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 1,008.91 | 1,008.91 |

Notes:

Notes:

Notes:

Note:

AM703

Proposal for Customer

Project: Quick Quote Project

Quote No.: QUICKQUOTE

Alternate No.: 88

| Outside View | Item# | Qty | Description | Unit Price | Extended |
|---|---|---|---|---|---|
| | Item# 120<br>Location:<br>R.O: 7'4-3/4" X 6'3-3/4"<br>WallCond: 4-9/16" | Qty: 2 | **Springline with Casement Flankers**<br>A: Left Hinge Casement, Frame:21 X 54: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Fixed--used w/Casement Circlehead, Frame:36 X 77: Support Products, Clad, Shape 03 Full Springline, Model 2, White, 1" InsulShld IG Glazing, Fins (per design)<br>C: Right Hinge Casement, Frame:21 X 54: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 1,710.73 | 3,421.46 |
| | Item# 125<br>Location:<br>R.O: 7'0" X 3'11"<br>WallCond: 4-9/16" | Qty: 1 | **3-wide Casement**<br>A: Left Hinge Casement, Frame:27-3/4 X 46-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Fixed Casement, Frame:27-3/4 X 46-1/4: Architect Series Classic, Clad, Model 1, White, 5/8" InsulShld IG Glazing, Fins (per design)<br>C: Right Hinge Casement, Frame:27-3/4 X 46-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 1,103.33 | 1,103.33 |
| | Item# 130<br>Location:<br>R.O: 6'0" X 6'8-5/8"<br>WallCond: 4-9/16" | Qty: 1 | 7281 Inactive/Active In-Swing French Door, Frame:71-1/4 X 80-1/8:<br>Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld Temp IG Glazing, Aluminum Hinged Screen w/white handle, Brass Hardware/Handle, 3/4" Rem Trad (muntin pattern: 3Wx3H), Fins (per design) | 2,356.81 | 2,356.81 |
| | Item# 135<br>Location:<br>R.O: 6'0" X 6'8-5/8"<br>WallCond: 4-9/16" | Qty: 1 | 7281 Active/Inactive In-Swing French Door, Frame:71-1/4 X 80-1/8:<br>Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld Temp IG Glazing, Aluminum Hinged Screen w/white handle, Brass Hardware/Handle, 3/4" Rem Trad (muntin pattern: 3Wx5H), Fins (per design) | 2,356.81 | 2,356.81 |

Notes:

Notes:

Notes:

Notes:

AM704

Proposal for Customer

Project: Quick Quote Project

Quote No.: QUICKQUOTE

Alternate No.: 88

**Outside View: Item**

| Item | Qty. | Description | Unit Price | Extended |
|---|---|---|---|---|
| Item# 140<br>Location:<br>R.O: 3' 5-3/4" X 4' 6-3/4"<br>WallCond: 4-9/16" | Qty: 1 | Left Hinge Casement, Frame:41 X 54: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champ Hardware w/Butt Hinges, Roto Opnr/Lk Hdle/Restrictd Opng Butt Hinges, Fins (per design) | 782.16 | 782.16 |
| Item# 145<br>Location:<br>R.O: 3' 5-3/4" X 4' 6-3/4"<br>WallCond: 4-9/16" | Qty: 1 | Right Hinge Casement, Frame:41 X 54: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champ Hardware w/Butt Hinges, Roto Opnr/Lk Hdle/Restrictd Opng Butt Hinges, Fins (per design) | 782.16 | 782.16 |
| Item# 150<br>Location:<br>R.O: 4' 11-3/4" X 3' 9"<br>WallCond: 4-9/16" | Qty: 1 | 2-wide Casement<br>A: Left Hinge Casement, Frame:29-1/2 X 44-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design)<br>B: Right Hinge Casement, Frame:29-1/2 X 44-1/4: Architect Series Classic, Clad, Model 2, White, 5/8" InsulShld IG Glazing, Champagne Screen, Champagne Hardware, Fins (per design) | 765.85 | 765.85 |

Notes:

Notes:

Notes:

**Thank You For Your Interest In Pella Products**

ALL PRICES ARE GOOD FOR 30 DAYS FROM DATE OF QUOTE.

| | | |
|---|---|---|
| Taxable Subtotal | | $ 40,881.56 |
| PA1 | at 6.00% | 2,452.89 |
| None | at 0.00% | 0.00 |
| None | at 0.00% | 0.00 |
| Non-taxable Subtotal | | 0.00 |
| Total | | $ 43,334.45 |
| Deposit Received | | $ 0.00 |

Pella Sales Representative Signature

Customer Signature

Date

Date

Proposal - Page 8 of 8

AM705

Jul 31 03 09:20a    David J. Haller    814-838-8475    p.11

# GIORDANO ASSOCIATES, INC

*Established 1978*

71 High Street    East Haven, Connecticut 06512    (800) 469-7477 FAX (203) 469-6409

July 30, 2003

Macdonald, Illig, Jones & Britton
Attorney Terry Jones
100 State Street
Erie, PA 16507

814 870-7650
814 870-7655

RE: Dr. Borden

Dear Attorney Jones:

I am in receipt of your recent correspondence concerning the sub-contractors. Please note that Giordano Associates did not hire or use any sub-contractors to assist in the preparation of the claim. If you review our building estimate you will notice I refer to the sub-contractor. In this case I relied on the sub-contractor's estimate supplied by Visions Inc. I explained to Amica's new consultant, that I was unsure of the scope and numbers supplied by the sub-contractors and I felt it necessary for them to researched and verified. Considering it is agreed at this point that Visions Inc and Amica's scope is inadequate this raises questions as to vitality of the sub-contractors estimates.

One particular sub contractor that I discussed with their consultant and Amica was the geo-thermo system. I pointed out that the sub-contractor clearly stated that the estimate did not include the pipe existing or returning to the house. This pipe runs under a concrete slab, which is the floor for the family room, and then under a large patio area. If this pipe is damage the expenses associate with its replacement are large. I suggested at the time that the pipes be tested. The pipes can be located and capped. They can pressurize the pipe with 60lbs of air and monitor how much air pressure is coming out the other side. This test should stay under pressure for 24 hrs. If there is a drop in pressure then the pipes are no good and need to be addressed.

A second area of concern that I discussed with the consultant and Amica was the foundation and basement floor. The foundation walls are showing signs of heat cracks. There is no clear way to test the blocks. Since there is temporary electric to the house I suggest that a mason be brought in the

AM706

sandblast the foundation and see how the block reacts. If this causes the block to fail then we have our answer.

A third area of concern that I discussed with their consultant and Amica was the potential for mold in the main house. I would suggest a hygienist be brought in to test this portion of the house, including the garage. These are areas where Amica's first estimate would not allow us to open or check appropriately. I know there is mold in the "wing portion" of the house however this area is being totally removed, therefore I do not see it as an issue.

I would not want to hold up the main building estimate. What I would like to see happen is the basic estimate received ASAP. This will give me time to visit the house and review. Simultaneously, the above testing can take place and then can be addressed accordingly.

Please let me know if there is anything else I can assist with. At this time I will await direction from you on how to proceed.


Thank you for your time and consideration.


Sincerely,


Anthony N. Parise, CIC, CPCU, AIC

**AM707**

# MacDonald Illig Jones & Britton llp

ATTORNEYS AT LAW

100 STATE STREET, SUITE 700

ERIE, PENNSYLVANIA 16507-1459

814-870-7600

FAX 814-454-4647

www.macdonaldillig.com

Direct Dial 814-870-7650

E-Mail: tjones@macdonaldillig.com

T. WARREN JONES
EDWARD W. COBBEL, JR.
(REG. PAT. ATTORNEY)
JAMES. D. CULLEN
WILLIAM B. BROWN
ROGER H. TAFT
(ALSO ADMITTED IN NY)
DAVID B. HOLLAND
W. PATRICK DELANEY
JAMES M. ANTOUN
JAMES R. WALCZAK
(ALSO ADMITTED IN DC)
RUSSELL S. WARNER
MARCIA H. HALLER
JAMES B. SPODEN
(ALSO ADMITTED IN IL)
DALE R. HUNTLEY

JOHN W. DRASKOVIC
JOHN J. MEHLER
MATTHEW W. McCULLOUGH
SUSAN FUHRER REITER
RICHARD J. PARKS
(ALSO ADMITTED IN OH)
MARK J. SHAW
JOHN F. MIZNER
(ALSO ADMITTED IN NY)
CRAIG R.F. MURPHEY
DANIEL M. MILLER
SHAUN E. ADRIAN
KIMBERLY A. OAKES
ERIC J. PURCHASE
LISA SMITH BECK
STEVEN C. BECKMAN
THOMAS A. PENDLETON

LAURA POPOFF STEFANOVSKI
JOHN A. LAUER
BRUCE L. DECKER, JR.
WALTER B. DEACON, III
(ALSO ADMITTED IN NY)
GREGORY P. ZIMMERMAN
ROBERT E. GANDLEY
CATHERINE MOODEY DOYLE
LAURA J. MOTT
REBECCA A. HERMAN
JON L. WOODARD
(REG. PAT. ATTORNEY)
DAVID P. DIETZMAN
GABRIEL J. OROS
KATHLEEN HAYNE
ROBERTSON
SCOTT T. STROUPE
MATTHEW W. FUCHS

JOHN E. BRITTON
(OF COUNSEL)
JOHN D. WILSON
(OF COUNSEL)
JOHN J. STROH
(OF COUNSEL)
NORMAN H. STARK
(OF COUNSEL)
-
HENRY A. MacDONALD
(1928-1984)
WILLIAM P. ILLIG
(1946-1969)
FREDERICK F. JONES
(1909-1977)
IRVING OLDS MURPHY
(1953-1984)
PETER G. SCHAAF
(RETIRED)

October 20, 2003

**VIA FACSIMILE (412-261-3222)**
**AND REGULAR MAIL**

Paul K. Geer, Esquire
DiBella & Geer, P.C.
312 Boulevard of the Allies
Suite 300
Pittsburgh, PA 15222

> Re:  **Amica Insured:**   Jonathan and Amy Borden
> **Loss Address:**    4838 Wolf Road, Erie, PA 16505
> **Your File No.:**   F30200301218
> **Date of Loss:**    February 16, 2003
> **Policy No.:**      6308371183

Dear Paul:

It was very nice to see you at the Pitt Law Alumni Dinner on Saturday. The only problem with events of that sort, though, is that they remind me I'm getting old.

Attached is the material from Mr. Parise which I indicated would be forthcoming. While Mr. Parise's correspondence does not include dollar figures, it was his suggestion that perhaps everyone could get together in the near future to try to resolve both the building and contents claims as quickly as possible. I anticipate receiving something on the contents within the next couple of days.

I'll be in the office and generally available for the entire week. Bright and early on Tuesday morning, the 28th, we'll be shoving off for South Carolina, and I won't be back in the office until the following Tuesday. Actually, it will be

**AM717**



PLAINTIFF'S
EXHIBIT
340
PENGAD 000-631-6989

OCT 21 2003

MacDONALD ILLIG JONES & BRITTON LLP

October 20, 2003
Page  -2-

Wednesday, since I have a day trip to Indianapolis on Tuesday.
Offhand, however, I can't think of any reason my client would
need to have me present at a settlement conference, in any
event.

Please be in touch at your next convenience to discuss
getting the parties together to work out an agreement.

I'll look forward to talking with you further about this
when you have an opportunity to give me a call.

Very truly yours,

MacDONALD ILLIG JONES & BRITTON LLP

By _____
                T. Warren Jones

TWJ/krm
Enclosure
784646/19196.0000

cc:  Jonathan Borden, M.D.
     5011 Wolf Road
     Erie, PA 16505
     (without enclosure)

     Anthony N. Parise, CIC, CPCU, AIC
     Giordano Associates, Inc.
     71 High Street
     P.O. Box 469
     East Haven, CT 06512
     (without enclosure)

     Richard M. Borden
     32 Lakeview Drive
     West Hartford, CT 06117
     (without enclosure)

# GIORDANO ASSOCIATES, INC

*Established 1978*

71 High Street    East Haven, Connecticut 06512    (800) 469-7477  FAX (203) 469-6409

Macdonald, Illig, Jones & Britton
Attorney Terry Jones
100 State Street
Erie, PA 16507

RE: Dr. Borden

Dear Attorney Jones:

I have reviewed the building estimate submitted on behalf of Amica Insurance which was prepared by G.S. Jones. I found the estimate to be more logical and detailed then Amica's first offer. Below are some areas of concern. I went room by room to make it easier to follow.

*Basement General:*

- Plastic sump pump pit, with hosing, and pump. If part of plumbing estimate I need detailed breakdown to verify.
- With the extent of heat and items melted to the floor I would like to keep the basement floor open for inspection once the debris is removed. The floor will require exposy sealing to rid it of smell, even under the carpet.
- Locksets on doors

*Left front basement-Finished:*

- With the extent of heat and items melted to the floor I would like to keep the basement floor open for inspection once the debris is removed. The floor will require exposy sealing to rid it of smell, even under the carpet.

*Crawl Spaces:*

- Replace vapor barriers on the dirt floors.
- Replace the smoke detectors.

*Steps to kitchen:*

- Sub floor on landing
- Oak floor on landing
- Base trim on landing
- There is a sill around the entire wall perimeter, which is the top of the basement brick wall. This had a top plate piece of finished pine with a chair rail tight to the bottom.
- Wall insulation 2 walls

*Kitchen:*

- There was a 2 pc base trim (3.5 plus a shoe)
- Beams were wrapped in a pine 1 x 10 on sides and a 1 x 8 on bottom (see my estimate for measurements). I assume the figure in the estimate is for the beam only.
- Cased opening
- Scaffold and drywall charge to sheetrock the skylight chase.
- Painting charge for skylight chase
- Does countertop price include counter tops? The tops are Corian and the price does not appear to include them.
- The appliances were all built in. Need to add top quality appliance plus all electrical and plumbing hook ups: Dishwasher, 2 wall ovens, cabinet hanging microwave, Water purifier (Kenmore), electric Stove 32 inch, Refrigerator with water and ice.
- No allowance for kitchen sink. If part of a plumbing bid item need to see breakdown to verify.
- All cabinets and draws had child safety latches installed.
- Size walls before papering.
- Crown molding
- Curtain rods installation.
- Locksets on doors.
- There is no allowance for the kitchen sink. I see the piping allowance but no fixtures

**AM720**

*Mudroom:*

- There was a small closet at the end of the mud room on the right. The closet is on page 14 of my estimate and missing from this estimate.
- There is a 2 pc base trim
- Locksets on doors.
- Heat registers
- 2 Bifold doors on closet (pantry)
- Exterior doors there are 2
- Pantry shelving was 5/8 cabinet grade. There was 28 lf and a closet pole

*Powder Room:*

- This room was wallpapered with a border not painted.
- There is a 2 pc base trim
- Heat registers
- Medicine cabinet
- Locksets

*Garage:*

- Disagree with partial sheet rock
- Garage door not addressed
- Ceiling is textured if only doing partial ceiling we need to scrape and prep balance
- Closet Doors are unfinished wood and will retain the odor. These are bifolds
- Closet shelving is unfinished wood as well. 5/8 cabinet grade
- Exterior door

*Studio:*

- Cathedral ceiling requires scaffolding
- Beams were wrapped in a pine 1 x 10 on sides and a 1 x 8 on bottom (see my estimate for measurements). I assume the figure in the estimate is for the beam only.
- Heat registers

*Sewing Room:*

- Wall paper border
- In closet there is a wood box (believed to be) mahogany box to give the stairs coming up enough head room. This is custom built with cabinet grade material

*Family Room:*

- The Patio door is an Anderson. The side lites are not stationary; however are 2 full length casements. I believe the allowance is to low.
- No Allowance for the wet bar sink fixture. I see the piping allowance but no fixtures

*Dining Room:*

- The walls are all hanging for the flooring system was burnt out. This are is not over the crawl space like the LR, however over the open basement. All the walls need re-framing. If the ceiling joist are going to be salvaged there needs to be some heavy bracing and shoring allowances.
- Cased opening

*Entrance Hall:*

- On one wall (approximately 12 x 8) there is a hand painted mural of a bookcase. This is not on the estimate.
- Door bell

*Rear Exercise Room:*

- Entrance door is a 36" solid, painted. door with 4 gold hand and kick plates, handi-cap locksets and dead bolts. The allowance in the estimate needs to be reviewed.
- Draperies were not considered as building unless they were permanently fixed to the building **and** matched the décor as if they were made for the room. This room had 3 cloth blinds and valance that matched the above description. These are not on our contents presentation.
- Smoke detectors
- Heat registers
- Don't agree with the window refinish