Plaintiffs' Exhibit 8

Pittsburgh Regional Claims
April 30, 2003

File No.: F30200301218

Re: Jonathan Borden and
    Amy Borden

COVERAGE A:

On April 15, 2003, I met with John Schumann and the insureds' public adjusters at the insureds' residence. The insureds were not present during the meeting.

Initially, I walked through the house with our adjuster and then we walked through the house again with the public adjuster reviewing the differences with the estimate. Specifically, he addressed concerns with the brick veneer claiming that the sub-flooring was charred. He questioned the stability of the front brick veneer due to this issue. Schumann did not feel there was a structural problem. Basically, the public adjuster agreed with Schumann's exterior damage except for the brick veneer.

Most of the difference centers on the interior. There is moderate smoke damage to the addition which does not have a connecting basement. The public adjuster feels that replacement of the entire interior drywall and insulation is required. The public adjuster had punched through several areas of the drywall and pulled the insulation below wiring outlets. The yellow fiberglass insulation did have black lines which would correspond to the location of the wiring. It is the public adjuster's contentions that smoke from the basement has permeated the insulation by following the wiring. This house is over 40 years old and is difficult to say the cause of the markings on the insulation. I did check one sample and I could not smell smoke. The public adjuster felt that differentiating the smell of smoke inside the fire loss was impossible. The adjuster continued to review specifics of the estimate. There is substantial smoke damage under the insured's interior spa.

The basement remains in the same condition it was prior to the loss. Obviously mold has begun to develop. The public adjuster immediately said they had bought the mold in the basement. There was some evidence of mold in the first floor joists in close proximity to the hot source of the fire.

After spending a half a day with the public adjuster, it was apparent that we were not going to be able to bridge the difference between our general adjuster's estimate of $327,999.14 compared to the public adjuster's estimate of $680,492.21. I discussed with our adjuster the issues brought forth by the public adjuster on the areas missed and not included in his estimate. Schumann felt these were small issues and fully expects a supplement up to $20,000.00. These issues were not sufficient to bridge the $300,000.00 difference.

COVERAGE C:


PLAINTIFF'S EXHIBIT 8

AM596

File No.: F30200301218                          -2-                          April 30, 2003

The public adjuster brought samples of the finished dry-cleaning. Much of it was placed in paper bags. Both Schumann and I agreed there was a smell of smoke in much of the items. We then visited the storage unit which contains the completed dry-cleaning. Some of the items did not clean and have stains. It's obvious from my inspection these items will not clean appropriately. There were items that also smelled of smoke and other items that did not smell of smoke. It appeared that the public adjuster was willing to compromise dispite his claim that none of the items were acceptable.

We also viewed the storage of other contents. Some of the contents showed evidence of water damage and did not appear practical to repair. Other items were cleanable. Visions have been authorized by the insured to clean these items and the cleaning has been completed. We will be receiving a bill shortly.

The public adjuster initially claimed none of the items were cleanable. At the time of our meeting, he conceded that many of the items could be cleaned. It was obvious that some of the items stored should be disposed.

The public adjuster provided us with a binder full of receipts for contents. This binder did not include a listing of the contents. I was told they were currently working on this list.

COVERAGE D:

We still have not received the insureds' hotel and meal expenses. We have received a supplemental request from Coldwell Banker for additional expenses related to the rental facility. I have requested Schumann to discuss the issues with Coldwell Banker and provide a recommendation. I spoke with Schumann on April 29, 2003. I was told that he had requested an explanation and breakdown and received basically the same documentation again. I again asked Schumann to provide me with his recommendations.

RECOMMENDATIONS:

1. Proceed with appraisal.

2. Follow-up for the public adjuster's contents inventory.

3. Follow-up with the insured for his hotel and meal expenses incurred prior to house rental.

4. Schumann to address Coldwell Banker's claim.

David J. Bennett

DJB:dcw 1.2

AM597