# AMICA MUTUAL INSURANCE COMPANY

Mail: Amica Mutual Insurance Company
1500 Corporate Drive
Suite 250
Canonsburg, PA 15317-8574

FAX Number: 1-724-745-2133

Date: 4/8/03   No. of pages including cover: 4

To: JOHN SCHUMAN

From: D. BENNETT

Comments: F302003O 1218, Borden

Attached is the 4/6/03 letter from the PA. Please review your calendar for your availability to meet @ the insd's residence.

If this transmission is incomplete or the clarity unacceptable, please call 1-888-67-AMICA.



AM581

# AMICA MUTUAL INSURANCE COMPANY

Mail: Amica Mutual Insurance Company
1500 Corporate Drive
Suite 250
Canonsburg, PA 15317-8574

FAX Number: 1-724-745-2133

Date: 4/8/03   No. of pages including cover: 4

To: PLD - LISA St-Onge

From: D. Bennett

Comments: F3020030/218, Borden

PA's Letter of 4/6/03
Please call to discuss
Thanks

If this transmission is incomplete or the clarity unacceptable, please call 1-888-67-AMICA.



AM582

# GIORDANO ASSOCIATES, INC

*Established 1978*

71 High Street   East Haven, Connecticut 06512   (800) 469-7477   FAX (203) 469-6409

Amica Mutual Insurance Company
Mr. David J. Bennett, CPCU, Branch Manager
Pittsburgh Regional Office
1500 Corporate Drive, Suite 250
Canonsburg, PA 15317-8574

April 6, 2003

RE:   Dr. & Mrs. Borden
      F30200301218

Dear Mr. Bennett,

This is a formal response to your letter dated March 11, 2003, March 17, 2003, March 25, 2003 and March 31, 2003. I will address your concerns in each letter along with explaining the concerns of the insured. We appreciate your efforts to date and hope this letter will help us all proceed to a quick and fair settlement.

BUILDING:

Mr. Schumann presented the insured an estimate with an Actual Cash Value of $295,098.92. I had a discussion with Mr. Schumann concerning that estimate at which time he explained that I should contact Mr. Brian Seifert from Vision Corporation with any questions and concerns during my inspection. Mr. Schumann explained Mr. Seifert owned a local fire restoration company called Vision Incorporated and that he had viewed the damages and agreed to repair the home for the price written. I inspected the home for four days. On the second day I contacted Mr. Seifert and asked him to meet me at the location.

Upon Mr. Seifert's arrival we inspected the home together. Specifically, we addressed concerns of the main house and the smoke penetration into the walls and framing. I proceeded to cut holes in walls, remove outlet covers, expose pipe chases and clearly showed Mr. Seifert heavy smoke penetration into the main home. We then proceeded to the heavily damaged section of the house in which I showed him heavy structural damage within the crawlspace areas, to the floors joist and framing that supports the exterior wall, foyer and living room of the main house. Your letter dated March 11, 2003 indicated that Vision Incorporated was in agreement with your estimate. After our joint inspection Mr. Seifert explained he originally thought Mr. Schumann's estimate was reasonable but after our joint inspection he couldn't repair the home or guarantee a smoke free home

AM583

with the estimate as it is. I explained the Mr. Seibert the scope of repairs that I was proposing and he agreed it was necessary to rid the home of the smoke.

I am sure can understand Dr. & Mrs. Borden's concerns with accepting the actual cash value check. The fact that the repairs are is far excess of the damages estimated by Amica Mutual Insurance and the fact that a local fire restoration company who was called in by Amica Mutual Insurance agreed is enough to raise legitimate concerns. Per the advice of the insured's brother, Mr. Rick Borden, esq. the actual cash value check has been returned. We respectfully request your presents, along with Mr. Seifert at the location to inspect the damages together.

CONTENTS:

Partial Contents list:

The items in the insured's home make this a difficult contents claim to complete without heavy involvement from the insured. There are items on Mr. Schumann's contents list that he estimated to be worth $300 dollars for that the insured paid $3,000 for. Some of the medical books cost upward of $200 each. Please take notice that we are working with the Bordens to complete the list and will leave all items in the house for your review. We will be able to supply you with a partial inventory within 2 weeks and a complete within a month.

We are in receipt of your letter dated March 31, 2003 requesting the items in storage be cleaned. The Bordens and I inspected these items and do not feel they will respond to cleaning. It appears by your letter that Amica is willing to spend the $12,098.40 in an attempt to restore the items. On April 4, 2003 I contacted Mr. Seifert from Vision and explained that it was Amica's request to have the items in storage cleaned. Mr. Seifert explained he did not feel that the items were worth cleaning and he hated to see Amica waste their money. The Bordens do not wish to waste Amica's money either, but also want to cooperate with Amica's request. At this time, per Amica's request, Vision is proceeding with the cleaning of the items in storage. I would suggest an Amica representative contact Vision, who was called in by Amica, to get their opinion before any more expenses are incurred.

Your letter of March 31, 2003 also states that the storage bill will only be paid for two months. Please take notice that the house repairs will take much longer then two months. Also take notice that the insured has requested the items be totaled and disposed of and it is Amica's request the items be cleaned and kept in storage. We strongly disagree with the limitation on storage.

In your letter dated March 25, 2003 you refer to the dry cleaning that was returned to the Bordens. Your letter states that the clothes were cleaned to "Industry Standards" At this time we respectfully request a copy of the industry standards you are referring to. Your letter also indicates that you are in disagreement with the contention that the clothes are not cleaned to satisfactory. Has anyone from Amica or an Amica representative inspected the clothes after they were dry cleaned? I personally did inspected all garments after the cleaning process. Many of the items are clearly smoke stained on the collars and cuffs and still have an odor in the pockets and liners. Before Amica takes such a harsh position of the clothing I would ask that we meet at the location and inspect the cloths together.

I am sure we all agree that the Borden family has suffered a tremendous fire. The damages are very clear and we all have the same common goal and that is to get the claim resolved and restore some peace back into the Borden household. I would suggest that a good faith meeting take place to level set all parties. I would suggest a two day meeting take place starting on Monday April 14, 2003 and ending Tuesday April 15, 2003. Requested attendees Mr. Schumann AIC, Mr. Bennett CPCU, Mr. Seifert from Vision Incorporation, Dr. & Mrs. Borden, Robert A Mayo contents specialist, and myself. On Monday a complete walk through on the building can take place. On the second day we can review the contents at the drycleaners and in the storage unit, along with the items left in the home.

We welcome any other dates that may work better for you Mr. Bennett. Please page me (877) 303-4597 ASAP so we can arrange a meeting.

Thank you for your time and consideration.

Sincerely,

*Anthony Parise*

Anthony N. Parise, CPCU, CIC, AIC