IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | |
|---|---|
| JONATHAN A. BORDEN and<br>AMY P. BORDEN,<br>    Plaintiffs<br><br>      v.<br><br>AMICA MUTUAL INSURANCE<br>COMPANY,<br>    Defendant | )<br>)<br>)<br>)<br>)   NO. 04-175 E<br>)<br>)<br>)<br>) |

## RESPONSES TO DEFENDANT'S
## REQUEST FOR ADMISSIONS TO PLAINTIFFS

AND NOW, come JONATHAN A. BORDEN and AMY P. BORDEN, by and through

their attorneys, MacDonald, Illig, Jones & Britton LLP, and file Responses to Defendant's

Request for Admissions to Plaintiffs as follows:

FIRST REQUEST FOR ADMISSION

The insurance policy specifically sets forth policy conditions applicable to this loss. The

policy conditions provide that the insured/plaintiffs have the following duties after the loss:

**B.**    **Duties After Loss**

In case of a loss to covered property, we have no duty to provide
coverage under this policy if the failure to comply with the
following duties is prejudicial to us. These duties must be
performed either by you, or an insured seeking coverage, or a
representative of either:

1.    Give prompt notice to us or our agent;
2.    Notify the policy in case of loss by theft;



EXHIBIT
A

3.      Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6**. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery and Counterfeit Money under Section I – Property Coverages;

4.      Protect the property from further damage. If repairs to the property are required, you must:

   a.      Make reasonable and necessary repairs to protect the property; and

   b.      Keep an accurate record of repair expenses;

5.      Cooperate with us in the investigation of a claim;

6.      Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7.      As often as we reasonably require:

   a.      Show the damaged property;

   b.      Provide us with records and documents we request and permit us to make copies; and

   c.      Submit to examination under oath while not in the presence of another insured, and sign the same;

8.      Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a.      The time and cause of loss;

   b.      The interest of all insureds and all others in the property involved and all liens on the property;

   c.      Other insurance which may cover the loss;

   d.      Changes in title or occupancy of the property during the term of the policy;

   e.      Specifications of damaged buildings and detailed repair estimates;

f.    The inventory of damaged personal property described in **6.** above;

g.    Receipts for additional living expenses incurred and records that support the fair rental value loss; and

h.    Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

**ADMITTED:** _____ **X\*** _____    **DENIED:** _____ **X\*** _____

**\*It is admitted that the insurance policy contains this language (assuming no typographical errors when the policy language was reprinted here). It is denied that all of the provisions are necessarily relevant, or applicable to, this loss.**

## SECOND REQUEST FOR ADMISSION

After the loss, Amica promptly retained the services of an independent adjuster named John Schumann, who met with the Plaintiffs, took them to dinner, and explained the policy requirements regarding loss presentation.

**ADMITTED:** _____ **X\*** _____    **DENIED:** _____ **X\*** _____

**\*It is admitted that Mr. Schumann was retained by Amica the day after the fire, that he arrived three days after the fire, and that he had dinner with the plaintiffs on one or more occasions. It is also admitted that Mr. Schumann explained some of the procedures and requirements relevant to this loss, but it is denied that all relevant procedures or requirements were adequately explained to the plaintiffs.**

## THIRD REQUEST FOR ADMISSION

Amica's adjuster, John Schumann, wrote a preliminary estimate and submitted it to the Plaintiffs or their representative on or about February 19, 2003.

**ADMITTED:** _____X*_____    **DENIED:** _____X*_____

*It is admitted that Mr. Schumann wrote an estimate. It is denied that the Bordens or their representatives received a copy of the estimate on or about February 19, 2003. The Bordens believe it was at least a week later than that. It is also denied that the estimate was ever described to the Bordens as "preliminary."

## FOURTH REQUEST FOR ADMISSION

On March 23, 2003, the Plaintiffs' public adjuster, Anthony Parise, submitted a seven page letter to John Schumann setting forth various recommendations concerning the scope of repairs. The response did not, however, address the cost of repairs.

**ADMITTED:** _____X*_____    **DENIED:** _____X*_____

*It is admitted that on or about March 23, 2003, Mr. Parise submitted a two-page letter attached to which was a five-page report with a list of deficiencies in Mr. Schumann's estimate. Also attached to Mr. Parise's letter and report was Mr. Parise's estimate for repairs at the dwelling, a 55-page document with a detailed cost of repairs reflecting a total cost of repairs of $680,492.21. Thus, it is denied that the Bordens' representative failed to address the cost of repairs.

## FIFTH REQUEST FOR ADMISSION

The applicable insurance contract contained the following provisions which are relevant to the issues herein:

    C.    **Loss Settlement**

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs are provided in **E.II.** Ordinance or Law under Section I – Property Coverages. Covered property losses are settled as follows:

(4)     For the purpose of settling that loss only, the following applies:

(a)     Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

(i)     The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

(ii)    The necessary amount actually spent to repair or replace the damaged building; or

(iii)   The limit of liability under this policy that applies to the building, increased in accordance with paragraphs **b.(1)** and **b.(2)** of this section.

If the building is rebuilt at a new premises, the cost described in **(i)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

(b)     We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

2.     Paragraph **1.** applies only when loss to the building insured under Coverage **A** exceeds the Coverage **A** Limit

of Liability shown in the Declarations. If loss to the building insured under Coverage **A** does not exceed the Limit of Liability shown in the Declarations, losses will be settled as follows:

a.    Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   (1)    If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (a)    The limit of liability under this policy that applies to the building;

      (b)    The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (c)    The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in **(b)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

   (4)    We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **(1)(a)** and **(1)(b)** above.

      However, if the cost to repair or replace the damage is both:

- 6 -

    (a)    Less than 5% of the amount of insurance in this policy on the building; and

    (b)    Less than $2,500;

we will settle the loss as noted in **2.a.(1)b** and **2.a.(2)** above whether or not actual repair or replacement is complete.

    (5)    You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C. Loss Settlement**, provided you notify us of your intent to do so within 180 days after the date of loss.

4.    Personal property of the following types:

    a.    Coverage **C**; and

    b.    If covered in this policy:

        (1)    Awnings, outdoor antennas and outdoor equipment; and

        (2)    Carpeting and household appliances;

whether or not attached to buildings at replacement cost at the time of the loss.

5.    The method of loss settlement described in **4.** above will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

    a.    Jewelry;

    b.    Furs and garments:

        (1)    Trimmed with fur; or

        (2)    Consisting principally of fur;

c.   Cameras, projection machines, films and related articles of equipment;

d.   Musical equipment and related articles of equipment;

e.   Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

(1)   Pens or pencils;

(2)   Flasks;

(3)   Smoking implements; or

(4)   Jewelry; and

f.   Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Replacement cost loss settlement will not apply to other classes of property separately described and specifically insured.

## Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

a.   Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

b.   Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

c.   Articles not maintained in good or workable condition.

d.   Articles that are outdated or obsolete and are stored or not being used.

## Replacement Cost Loss Settlement Condition

- 8 -

The following loss settlement o condition applies to all property described in Section **I** Condition **C.** Loss Settlement paragraphs **4.** and **5.**:

a.      We will pay no more than the least of the following amounts:

(1)      Replacement cost at the time of loss without deduction for depreciation;

(2)      The full cost of repair at the time of loss;

(3)      The limit of liability that applies to Coverage **C**, if applicable;

(4)      Any applicable special limits of liability stated in this policy; or

(5)      For loss to any item described in **5.a.-f.** above, the limit of liability that applies to the item.

b.      If the cost to repair or replace the property described in **4.** and **5.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

c.      You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this section provided you notify us of your intent to do so within 180 days after the date of loss.

**ADMITTED:** _____**X\***_____      **DENIED:** _____**X\***_____

**\*It is admitted that the insurance policy contains this language (assuming no typographical errors when the policy language was reprinted here). It is denied that all of the provisions are necessarily relevant, or applicable to, this loss.**

## SIXTH REQUEST FOR ADMISSION

The fire caused a partial loss to the Bordens' home.

**ADMITTED:** _____ **X*** _____      **DENIED:** _____ **X*** _____

**\*The Bordens are uncertain of what defendant means by "partial loss." It is admitted that the estimate prepared by Mr. Parise was for a cost of repair less than the amount it would cost to demolish and rebuild the home.**

## SEVENTH REQUEST FOR ADMISSION

Plaintiffs made a claim for total loss of all personal property in their home.

**ADMITTED:** _____      . **DENIED:** _____ **X** _____

## EIGHTH REQUEST FOR ADMISSION

On March 11, 2003, Amica sent the Bordens a check in the amount of $295,098.92 representing an undisputed actual cash value of the building, less the $1,000.00 deductible.

**ADMITTED:** _____ **X*** _____      **DENIED:** _____ **X*** _____

**\*It is admitted that a check in this amount was sent with a letter of this date, but the check was described as representing "the Actual Cash Value of the dwelling repairs less your $1,000 deductible." The word "undisputed" does not appear in the letter.**

## NINTH REQUEST FOR ADMISSION

The check set forth in Request No. 8 above did not have any notation on it indicating that this was a check submitted in "full and final payment."

**ADMITTED:** _____      **DENIED:** _____

**\*The plaintiffs cannot admit or deny this allegation because they do not recall the specific language on the check and they do not have a copy of it.**

## TENTH REQUEST FOR ADMISSION

The Plaintiffs rejected the check in the amount of $295,098.92 which represented the undisputed actual cash value of the building, less the $1,000.00 deductible.

ADMITTED: _____X*_____    DENIED: _____X*_____

*It is admitted that the check was rejected because it was a grossly inadequate amount given the size of the loss. It is denied that the check represented an "undisputed" amount, for the reasons set forth at paragraph 9 above.

## ELEVENTH REQUEST FOR ADMISSION

In March of 2003, Amica tendered to Plaintiffs the sum of $39,945.38 as a partial contents payment. There was no language on this check which indicated that it was a final payment. The Plaintiffs rejected this check.

ADMITTED: _____X*_____    DENIED: _____

*It is admitted that the check was rejected because it was a grossly inadequate amount given the size of the loss. The plaintiffs cannot admit or deny the remainder of the allegations because they do not recall the specific language on the check and they do not have a copy of it.

## TWELFTH REQUEST FOR ADMISSION

Following the fire, Amica provided a rented house for the Bordens at its expense and also purchased new furniture for the rented house for the Bordens' use.

ADMITTED: _____X*_____    DENIED: _____

*The plaintiffs located the rental house and, with Mr. Schumann's assistance, identified furnishing for the house. Pursuant to its obligations under the insurance policy, Amica paid the rent and for the furniture.

## THIRTEENTH REQUEST FOR ADMISSION

As of mid-April 2003, the repair estimates for the building supplied by insureds' public adjuster and Amica's contractor revealed substantial discrepancies. A meeting was held on April 15, 2003 to discuss the differences. At the April 15, 2003 meeting, the parties were unable to resolve their differences regarding estimated damage.

**ADMITTED:** _____X_____     **DENIED:** _____

## FOURTEENTH REQUEST FOR ADMISSION

The insurance policy provides for an appraisal in the event the parties failed to agree on the amount of the loss. The appraisal provision states:

**E.    Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1.    Pay its own appraiser; and

2.    Bear the other expenses of the appraisal and umpire equally.

**ADMITTED:** _____X*_____     **DENIED:** _____

**\*It is admitted the policy contains this language (assuming no typographical errors when the language was reprinted here).**

- 12 -

## FIFTEENTH REQUEST FOR ADMISSION

On May 2, 2003, Amica sent the Plaintiffs a letter invoking the appraisal provision and advising them of the appointment of Mr. Jack Owens as Amica's appraiser. In the same letter, Amica advised the Bordens of its concern regarding their failure to clean up the damage to the basement despite the insurance coverage made available to the Plaintiffs to do so. A copy of the letter of May 2, 2003 is attached as Exhibit 1.

ADMITTED: _____X*_____    DENIED: _____

**\*It is admitted that a letter was sent on the alleged day, and that Exhibit 1 is an accurate reproduction of the letter. The remainder of this allegation is neither admitted nor denied because the letter speaks for itself.**

## SIXTEENTH REQUEST FOR ADMISSION

At the point when Amica demanded an appraisal on the building, over two and one-half months had passed since the fire occurred. The Bordens had not provided Amica with a contents claim nor a building estimate from a contractor willing to repair the premises.

ADMITTED: _____X*_____    DENIED: _____X*_____

**\*It is admitted that the appraisal demand came on or about May 2, 2003. It is denied that the Bordens had not submitted a contents claim (indeed, Amica had already made an offer on the contents claim), although it is admitted that the contents claim was not yet complete. It is admitted that the Bordens had not provided an estimate from a proposed builder (nor had Amica obtained an estimate from a qualified building contractor, and the policy did not require the Bordens to do so).**

## SEVENTEENTH REQUEST FOR ADMISSION

At the point when Amica demanded an appraisal on the building, the basement of the structure where the fire had originated had not been cleaned or repaired.

**ADMITTED:** _____X_____    **DENIED:** _____

## EIGHTEENTH REQUEST FOR ADMISSION

In response to Amica's demand for an appraisal and notification that Amica was concerned about neglect of the premises following the fire, the Bordens retained counsel who advised Amica that the Bordens were "actively considering the filing of a bad faith cause of action."

**ADMITTED:** _____    **DENIED:** _____

*This allegation is neither admitted nor denied because it is inappropriately phrased for a Request for Admission. The retention of counsel was not a "response" to the demand for appraisal, but rather occurred because of the questionable handling of the claim to that point. Numerous letters were exchanged between the parties and it is inappropriate to take language out of context and seek "admissions." Although not stated, plaintiffs presume the defendant is referring to a letter from the Bordens' attorney dated May 22, 2003. A copy of the letter is attached hereto as Exhibit A, and it is admitted that it was sent.

## NINETEENTH REQUEST FOR ADMISSION

In response to Amica's demand for an appraisal, the Bordens appointed their public adjuster, Anthony Parise, as a "competent and impartial appraisal."

**ADMITTED:** _____X*_____    **DENIED:** _____

*As indicated in the Borden's attorney's letter of May 22, 2003, Mr. Parise was appointed as their appraiser. The defendant objected to his appointment, and the Bordens evinced a willingness to reconsider

Mr. Parise's appointment, but the case was eventually resolved before appraisal so no reconsideration was necessary.

## TWENTIETH REQUEST FOR ADMISSION

Anthony Parise's public adjusting firm had previously signed a contract with the Bordens which provided that the public adjusting firm was to be paid on a contingency fee basis.

**ADMITTED:** _____X_____     **DENIED:** _____

## TWENTY-FIRST REQUEST FOR ADMISSION

In or before June of 2003, the Plaintiffs retained a contractor to estimate the repair cost of the building.

**ADMITTED:** _____X_____     **DENIED:** _____

## TWENTY-SECOND REQUEST FOR ADMISSION

Amica requested a copy of the estimate provided to the Bordens by their contractor.

**ADMITTED:** _____     **DENIED:** _____X*_____

**\*The plaintiffs recall a request for subcontractor's estimates obtained by plaintiffs' contractor, which were submitted to defendant, but they do not recall a request for their contractor's estimate. Regardless, the Borden's had nothing to provide the defendant because the Borden's contractor never reduced his estimate to writing. Moreover, the contractor's estimate was for an amount greater than Mr. Parise's estimate, which had already been rejected by the defendant.**

## TWENTY-THIRD REQUEST FOR ADMISSION

The Bordens did not produce a copy of their contractor's estimate prior to the settlement of the claim.

ADMITTED: _____ X* _____    DENIED: _____ X* _____

**\*It is admitted that no estimate was produced, but it is denied that any written estimate was ever obtained. See the response at paragraph 22 above.**

## TWENTY-FOURTH REQUEST FOR ADMISSION

The Bordens submitted a claim for contents to Amica in late June of 2003, over four months after the fire.

ADMITTED: _____ X* _____    DENIED: _____ X* _____

**\*It is admitted that the Bordens submitted a detailed contents claim in June, 2003, but it is denied that a claim for personal property damage had not been submitted before that date -- indeed Amica made an offer on the contents claim in March, 2003.**

## TWENTY-FIFTH REQUEST FOR ADMISSION

On or about August 12, 2003, Amica sent a copy of the revised estimate prepared by G.S. Jones & Sons which included repairs to the dwelling in the amount of $540,788.42. In addition, landscaping damage was included for a total estimate of $542,598.42. Amica submitted a check in the amount of $154,508.92 which represented the actual cash value of the repairs less the previous payment of $295,098.92 which was based upon the G.S. Jones depreciation schedule. Amica also promised to issue a check for the balance after the Bordens completed repairs.

ADMITTED: _____ X* _____    DENIED: _____

*The referenced letter was dated August 13, 2003.

## TWENTY-SIXTH REQUEST FOR ADMISSION

On August 25, 2003, Amica paid the Plaintiffs $189,438.76 representing a partial payment of the Borden's contents loss. A copy of the letter of August 25th which sets forth the specific breakdown for the payments is attached as Exhibit 2.

ADMITTED: _____ X* _____    DENIED: _____

*The referenced letter was dated August 27, 2003.

## TWENTY-SEVENTH REQUEST FOR ADMISSION

On or about September 9, 2003, Amica paid the Bordens an additional $22,959.55 for 30 additional contents items.

ADMITTED: _____ X _____    DENIED: _____

## TWENTY-EIGHTH REQUEST FOR ADMISSION

Throughout the year 2003, Amica continued to pay $2,000.00 per month in rental for the substitute residence of the Bordens, who did not initiate repairs to the structure.

ADMITTED: _____ X* _____    DENIED: _____ X* _____

*It is admitted that the Bordens did not initiate repairs until they started demolishing the structure in December 2003. The claim was not settled until April 2004. It is admitted that the house rental was $2,000.00 monthly beginning in October 2003, but it was $1,800.00 per month prior to that.

## TWENTY-NINTH REQUEST FOR ADMISSION

On October 30, 2003, the Plaintiffs' public adjuster provided written material in support of their contents claim. This included a claim in the amount of $94,178.49 and a proposed agreement that depreciation should be applied to the entire contents list on a 25% basis rather than on an item-by-item basis.

**ADMITTED:** _____X_____    **DENIED:** _____

**\*The Borden's do not currently have access to information adequate to admit or deny this allegation.**

## THIRTIETH REQUEST FOR ADMISSION

In January of 2004, the Plaintiffs advised Amica that they had decided to demolish the building instead of repairing it.

**ADMITTED:** _____X\*_____    **DENIED:** _____

**\*The plaintiffs' plan as of December 2003 was to demolish the house and rebuild in the same location.**

## THIRTY-FIRST REQUEST FOR ADMISSION

Amica continued paying the additional living expense cost to the Bordens through March of 2004 – 14 months after the fire occurred.

**ADMITTED:** _____X\*_____    **DENIED:** _____

**\*The claim was not settled until April 2004.**

## THIRTY-SECOND REQUEST FOR ADMISSION

The Bordens' claims against Amica were resolved in approximately December of 2003. Attached as Exhibit 3 is a copy of the Release executed by the Bordens. The Release confirms all the payments made to the Bordens by Amica. The amounts paid total $880,156.34 and are divided by coverage as follows:

Payments

| | |
|---|---|
| Coverage A – Dwelling | $472,629.90 |
| Coverage B – Other Structures | 1,815.00 |
| Coverage C – Personal Property | 364,666.62 |
| Coverage D – Loss of Use | 41,044.82 |
| **Total Payments to Date** | $880,156.34 |

ADMITTED: _____X*_____    DENIED: _____X*_____

**\*It is admitted that Exhibit 3 is an accurate copy of the Release, which was signed by the plaintiffs on April 5, 2004. It is admitted that this is an accurate summary of the payments. It is denied that the claim was "resolved" in December 2003. The last contents payment was issued February 27, 2004, and, as noted, the release was signed April 5, 2004.**

## THIRTY-THIRD REQUEST FOR ADMISSION

On February 17, 2003, Dr. Borden expressed to John Schumann his concerns about the competence and/or qualification of Brian Seifert of Visions Corporation. Mr. Schumann assured Dr. Borden that he would investigate the possibility of using other contractors, and indicated that Dr. Borden did not have to use Visions.

ADMITTED: _____    DENIED: _____X*_____

**\*Dr. Borden has yet to be deposed and will explain his recollections at the deposition if asked to do so.**

## THIRTY-FOURTH REQUEST FOR ADMISSION

At no time has Amica offered any payment to the Bordens in full and final settlement of all claims.

**ADMITTED:** _____    **DENIED:** _____

*This allegation is neither admitted nor denied because the plaintiffs do not understand it. The underlying claim has been settled, fully and finally, with certain payments and an enforceable promise to pay having been made by the defendant.

## THIRTY-FIFTH REQUEST FOR ADMISSION

Even the request for a policy release which was made after the Bordens had been paid over $800,000.00 permitted the Bordens to make an additional claim for repair cost if they replaced the building and also permitted them to pursue a claim for extra contractual damages.

**ADMITTED:** _____X*_____    **DENIED:** _____

*The plaintiffs have been provided nothing by Amica other than what the plaintiffs are entitled to from the insurance policy they bought from Amica.

## THIRTY-SIXTH REQUEST FOR ADMISSION

Jonathan Borden suffered no physical injury as a result of the fire or Amica's handling of the insurance claim.

**ADMITTED:** _____X*_____    **DENIED:** _____

*However, Jonathan Borden has suffered emotional distress as a result of both the fire and the defendant's handling of the claim.

- 20 -

## THIRTY-SEVENTH REQUEST FOR ADMISSION

Amy Borden suffered no physical injury as a result of the fire or Amica's handling of the insurance claim.

ADMITTED: _____X_____    DENIED: _____

**\*However, Amy Borden has suffered emotional distress as a result of both the fire and the defendant's handling of the claim.**

## THIRTY-EIGHTH REQUEST FOR ADMISSION

Jonathan Borden suffered no out-of-pocket financial loss for medical or psychiatric treatment of any type as a result of Amica's handling of their insurance claim.

ADMITTED: _____X_____    DENIED: _____

## THIRTY-NINTH REQUEST FOR ADMISSION

Amy Borden suffered no out-of-pocket financial loss for medical or psychiatric treatment of any type as a result of Amica's handling of their insurance claim.

ADMITTED: _____X_____    DENIED: _____

## FORTIETH REQUEST FOR ADMISSION

The Plaintiffs retained Giordano & Associates at a cost of 8% of all payments received from Amica, plus costs and expenses.

ADMITTED: _____X_____    DENIED: _____

## FORTY-FIRST REQUEST FOR ADMISSION

The Plaintiffs engaged Giordano & Associates to act as their public adjuster before any dispute had arisen between the Plaintiffs and Defendant.

**ADMITTED:** _____     **DENIED:** _____ X _____

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon all other parties appearing of record by Overnight Mail sent on May 2, 2005.

Respectfully submitted,

_____

T. Warren Jones
PA Bar. ID No. 06548
Craig Murphey
PA Bar ID No. 53324
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7600

Attorneys for Plaintiffs
Jonathan A. Borden and Amy P. Borden

881574