IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

JONATHAN A. BORDEN and )
AMY P. BORDEN, )
    Plaintiffs )
  )
       v. ) NO. 04-175 E
  )
AMICA MUTUAL INSURANCE )
COMPANY, )
    Defendant ) ELECTRONICALLY FILED

**REPLY TO DEFENDANT'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs JONATHAN A. BORDEN and AMY P. BORDEN (hereinafter "Bordens"), by

their attorneys, MacDonald, Illig, Jones & Britton LLP, hereby submit the following Reply to

Proposed Findings of Fact and Conclusions of Law.

This Reply is limited to the Bordens' response to the defendant's allegations of

mis-citations which defendant claims appear in Plaintiffs' Proposed Findings of Fact and

Conclusions of Law:

1.     At page 2, footnote 2 of Defendant's Proposed Findings of Fact and Conclusions

of Law (hereinafter "Defendant's Proposed Findings"), the defendant claims that there is no

support for the allegation that the fire "severely damaged" the Borden home or that the fire

burned for "many hours." To the contrary, the record is rife with support for both contentions.

In addition to the numerous photographs depicting the serious damage to the house, the log notes of the defendant's own adjuster, Mr. Schumann, contained the following description of the damage to the interior of the house:

> **INTERIOR CONSIDERATIONS:**
> As this fire began in the basement below the main level Kitchen, Den and Formal Dining Room, the floor system, interior walls and ceiling joists require replacement to repair these structural areas of obvious damage.   The partially finished basement used as a combination storage/utility and Laundry area also sustained significant damage to the extent that the main thirty-four foot long steel I beam was twisted due to the extreme heat generated in this area during the fire.
> Consequently, any basement wall framing, furring strips and paneling attached to the exterior block walls was completely destroyed along with the Geo-Thermal exchange units and other mechanical elements.   A structural engineer was brought in to evaluate and determine necessary structural considerations pertaining to the repair procedures.
> The remaining interior main-level and second level areas sustained significant smoke and soot damage to drywall ceilings and walls and floor coverings.

(Plaintiffs' Exhibit 3-8).   Moreover, Dr. Borden testified that the fire burned for at least four hours.  (Tr., p. 161).   The defendants also claim there was no damage to the garage, but the testimony was that the firemen actually cut several holes in the garage walls in the course of fighting the fire.  (Tr., p. 391).

2.      At page 4, footnote 3 of Defendant's Proposed Findings, the defendant states that the plaintiffs' citation to page 98 of the trial transcript for the proposition that no employee of Amica visited the scene of the fire until April 15, 2003 is "inaccurate."  To the contrary, it is entirely accurate.  At page 98, Mr. Bennett testified that his first visit to the scene occurred at the meeting at the Borden house on April 15, 2003, and it is undisputed that no other employee of Amica ever visited the scene.

3.      At page 4, footnote 4 of Defendant's Proposed Findings, the defendant claims there is no support for the proposition that Mr. Schumann left Erie on February 27, 2003 without

considering the Bordens' objections and without revising his estimate.  To the contrary, it is crystal clear from the record that Schumann left Erie on either February 27 or 28, 2003.  (Tr., pp. 51-52).  (Mr. Bennett testified that Schumann was in Erie from February 19, 2003 to February 27, 2003; *see also* Plaintiffs' Exhibit 3-1, Mr. Schumann's log notes, which show he completed his work in Erie on February 27, 2003 and was at Mr. Bennett's office in Pittsburgh on February 28th.)

The record is also clear that the Bordens, through Dr. Borden's brother, Rick, challenged the estimate as soon as the Bordens received it.  (See Tr., p. 263-265 and Plaintiffs' Exhibit 3-1, which confirm that on February 27, 2003, Mr. Schumann discussed the estimate with Richard Borden, who complained about certain elements of the estimate.)  Dr. Borden also testified that his brother told him that Mr. Schumann "wasn't willing to acknowledge even the most obvious, and some minor, omissions in the estimate, and indicated that he wasn't willing to negotiate on any part of the estimate."  (Tr., p. 184).

There also can be no dispute that Mr. Schumann never revised his February 27, 2003 estimate.  (See Tr., pp. 72 and 265, wherein both Mr. Bennett and Mr. Schumann admit that Mr. Schumann never changed his February 27, 2003 estimate in any way.)

Thus, contrary to the statement in defendant's Brief, the record supports the fact that Mr. Schumann left Erie on February 27, 2003 without acting on the Bordens' objections and without revising his estimate.

4.      At page 7, footnote 8 of Defendant's Proposed Findings, defendant correctly states that Transcript p. 191 contains no reference to testimony regarding the Bordens' concern that Amica was threatening to withdraw coverage if repairs were not started immediately.  However, it is clear that at the same time Amica delivered the first check based on Mr. Schumann's

estimate, it sent a letter which could easily be construed as a threat to withdraw coverage.  See

Plaintiffs' Exhibit 3-15, which was a letter from Amica to the Bordens dated March 11, 2003,

which contained the initial check but which also referred the Bordens to the following provision

of their policy:

> **B.    Duties After Loss**
>
> In case of loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.
>
> *   *   *
>
> 4.    Protect the property from further damage.  If repairs to the property are required, you must:
>
>> a.    Make reasonable and necessary repairs to protect the property; …

(Plaintiffs' Exhibit 3-15).

Dr. Borden testified that he was "alarmed" upon receiving this letter.  (Tr., p.

189).  Thus, it is fair to infer that the Bordens believed Amica was threatening to withdraw

coverage if the Bordens did not accept the initial check and begin repairs immediately.

5.    At page 9, footnote 10 of Defendant's Proposed Findings, the defendant criticizes

the plaintiffs for including disputed facts in their Proposed Findings.  The defendant ignores the

fact that Your Honor is the fact finder, and both plaintiffs and defendant are merely suggesting

findings, based on the testimony and fair inferences to be drawn therefrom.  Plaintiffs suggest

that Mr. Parise's recall of conversations with Mr. Seifert are accurate, as established by

Mr. Parise's credible demeanor and testimony and his contemporaneous records.  Neither party

called Mr. Seifert to testify – it seems that Amica would have more to gain from his testimony

than the plaintiffs in light of the fact that Mr. Schumann repeatedly relied on Mr. Seifert's

"agreement" with his estimate to support his position. If Mr. Seifert really agreed with Mr. Schumann's estimate, Amica would have called him to testify to that fact.

The defendant also claims that the plaintiffs have incorrectly cited Mr. Bennett as saying that Mr. Seifert acknowledged Mr. Schumann's estimate was too low. To the contrary, Plaintiffs' Proposed Findings simply assert that Mr. Parise told Mr. Bennett that Mr. Seifert had admitted he believed Mr. Schumann's estimate was inadequate. There can be no dispute that the record confirms that Mr. Parise told Mr. Bennett that. (Tr., p. 93 and Plaintiffs' Exhibit 3-18).

6.      At page 9, footnote 11 of Defendant's Proposed Findings, the defendant concedes that the plaintiffs accurately state that Mr. Parise requested the meeting at the house, but they claim the citations to the transcript are inaccurate. To the contrary, the citation to page 402 of the transcript is entirely accurate, and page 96 was cited also because, on that page, Mr. Parise identifies his letter of April 6, 2003 in which he proposed the meeting. So, the defendant's criticisms are, again, misplaced.

7.      At page 11, footnote 13 of Defendant's Proposed Findings, the defendant claims that the plaintiffs have wrongly summarized the testimony regarding who invoked the appraisal process. Mr. Bennett's testimony speaks for itself:

> Q.      Did you give the Bordens a chance to demand appraisal first?
>
> A.      They had every chance at any point in time to do it, sure.
>
> Q.      Did you tell them, we're thinking about appraisal, do you want to invoke the appraisal clause?
>
> A.      No.

(Tr., p. 110).

8.      At page 14, footnote 14 of Defendant's Proposed Findings, the defendant criticizes the plaintiffs' Proposed Finding No. 94, which states, "Parise recommended that Amica

bring in another contractor to review the estimates, because Parise thought it would be obvious to any competent contractor that Schumann's estimate was low."  The plaintiffs cited page 410 of the Trial Transcript for that proposition.  Admittedly, the testimony on that page deals only tangentially with the issue, but it is clear from later testimony that Parise did, in fact, make the recommendation described.  (See pp. 445-446 of the Trial Transcript.)

Respectfully submitted,

*/s/ Craig Murphey*
Craig Murphey
Pa. Bar ID No. 53324
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7665
FAX (814) 454-4647
cmurphey@mijb.com

Attorneys for Plaintiffs
  Jonathan A. Borden and Amy P. Borden

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon all other parties appearing of record by First-Class United States Mail sent on _____, 2006.

_____

958441

- 6 -